IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:19-cv-00467-BO

| | |
|---|---|
| **JUSTIN J. WHITE**, <br><br> **Plaintiff**, <br><br> v. <br><br> **VANCE COUNTY, NORTH CAROLINA, VANCE COUNTY SHERIFF'S OFFICE, PETER WHITE**, in his official and individual capacities, **LAWRENCE D. BULLOCK**, in his official and individual capacities, **WELDON WALLACE BULLOCK**, in his official and individual capacities. <br><br> **Defendants**. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL AND SANCTION DEFENDANTS

### I. INTRODUCTION

Plaintiff, Justin White, by his undersigned counsel, hereby respectfully submits this Memorandum in Support of his Motion to Compel Defendant to fully respond to plaintiff's First Set of Interrogatories, Document Requests and Request for Admissions to Defendants (collectively "Discovery") and sanction Defendants. This memo sets forth the basis for an Order compelling Defendants to promptly produce all outstanding discovery.

### II. STATEMENT OF FACTS

On October 23, 2019, Plaintiff filed his Complaint based on race and employment discrimination, along with indignities due to perceived sexual orientation effectuated by Defendants while employed at Vance County Sheriff's Office ("VCSO"). In addition, Plaintiff asserted that VCSO terminated him in violation of federal civil rights in retaliation of his reports of race and employment discrimination.

Plaintiff was a dedicated law enforcement officer who considered it an honor to have served Vance County. On April 7, 2020, this Court issued a Scheduling Order (the "Order"). Pursuant to the Order, Parties made their initial disclosures by May 4, 2020, and are currently undergoing discovery. On May 8, 2020, Plaintiff requested a more complete insurance binder that identified Defendants' surety company and notice address. No response was provided by Defendants. (Attached hereto as Exhibit A). Instead, on May 13, 2020, Defendants' counsel *mailed* Plaintiff's counsel a letter, complaining of a missing wet signature in the middle of COVID-19.

Nevertheless, the litigation continued and Plaintiff identified surety information. The Court also ordered that all additional parties be added and all amendments to the Complaint be made by August 4, 2020. Plaintiff's proposed amendments were within the time frame of the Order and exactly on August 4, 2020, without the benefit of receiving requested discovery from Defendants and despite Defendants' ignoring Plaintiff's multiple attempts to meet and confer about discovery and other matters.

Months before filing such amendment, on June 1, 2020, Plaintiff's counsel informed Defendants' counsel that in connection and response to the state of emergency that was declared by Governor Roy Cooper and the ever growing pandemic and deaths as a result thereof, Plaintiff's counsel preferred and necessitated electronic means of communication, not letters or paper documents. As such, on June 1, 2020, Plaintiff's counsel informed Defendants' counsel that such request was made to offset the chance that Plaintiff's counsel would expose her vulnerable children to the unknown and deadly effects of COVID-19. Defendants exhibited no compassion for Plaintiff's transparency and did not even bother to respond. (Attached hereto as Exhibit B).

Additionally, Plaintiff's counsel also informed Defendants' counsel that due to the wake of COVID-19 that she was not in the office on a regular basis, but, similarly, working remotely as his colleagues in his office and other law offices and places of employment across the country. Plaintiff's counsel presumed that her reasonable request would be accommodated as electronic communication

has become one of the best practices to slow and prevent the spread of COVID-19; however, Defendants' counsel did not respond.

Later, on June 24, 2020, Plaintiff's counsel sent discovery in the form of Interrogatories, Request for Production of Documents, and Request for Admissions were served on Defendants by electronic means, again to which Defendants' counsel failed to respond. (Attached hereto as Exhibit C). On that same date, Plaintiff made another inquiry to Defendants about the assignment of mandatory mediation and ideas of how to meet the Court's requirement, and Defendants, again, failed to respond whatsoever.

Following up on July 30, 2020, Plaintiff requested, by way of email addressed to Defendants' counsel, that the Answers to Interrogatories, Response to the Request for Production of Documents, and Response to the Request for the Admissions be promptly supplied. (Attached hereto as Exhibit D). Plaintiff also sent Defendants his expert report and indicated that he had an economist to opine on economic damages. And again, Defendants' counsel failed to respond in any way to Plaintiff's request.

In fact, to date, Plaintiff has not received responses to our discovery requests from any Defendants in this matter, not even his own employment record that Defendants have indicated that they would provide.

Given Defendants' intolerable delay and failure to provide any discovery, and the narrow time left before the close of discovery that conflicts with the holiday schedule, Plaintiff seeks judicial intervention to resolve this matter, as efforts to employ basic communication with Defendants have not been fruitful and wholly ignored by Defendants.

**III.    ARGUMENT**

Defendants have unreasonably interfered with the progression of this legal action and refused to provide the very basic answers to discovery and other communications. As such, Defendants have violated Rule 37 of the Federal Rules of Civil Procedure, the Local Alternative Dispute Resolution Rules of Practice and Procedure and several professional cannons that govern interactions between attorneys. Plaintiff is attempting to address the issues and progress the litigation, but at this stage,

Court intervention is needed and necessary to align this matter to traditional forms of communication and litigation.

### A. Defendants' conduct is a violation of Rule 37 of the Federal Rules of Civil Procedure.

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010). The decision to grant or deny a motion to compel is generally an issue within the broad discretion of the trial court. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

### i. Defendants have been nonresponsive.

Throughout the litigation, Defendants have failed to respond to overtures necessary to advance the litigation and discovery process. Defendants, however, continue to send paper documents to Plaintiff— to the exclusion of electronic communications—in the midst of the COVID-19 pandemic and displacement of persons. Communication between counsel is integral to comply with Rule 26 of the Federal Rules of Civil Procedure. A primary purpose of the discovery process is to narrow issues relevant to trial and to avoid unnecessary delays that waste the Court's time. It is especially paramount for all parties to exercise best-faith practices for judicial efficiency which allows Courts to decide cases on their merits. COVID-19 has caused wide-spread disruption in the ordinary course of business across industries, especially the legal industry. Courts across the country have asked attorneys to maintain

flexibility whenever possible to prevent the spread of COVID-19. This court in particular, has carefully balanced the need to keep the business of the court fluid, while paying close attention to the recommendations of health professionals.

In following the orders and recommendations of both the Governor of North Carolina and other health professionals, Plaintiff's counsel had requested that she and opposing counsel communicate through electronic means. Defendant's failure to communicate—along with his preferred method of paper communication—increases the likelihood of COVID-19's spread.

Plaintiff's counsel presumed that there would be no issue with her reasonable request as her opposing counsel's law office, like many law offices across the county, has gone to a hybrid or work-from-home structure. Knowing this, Defendants' counsel could have reasonably anticipated that Plaintiff's counsel would want to use electronic means to transfer legal documentation whenever possible. Defendants' counsel has failed to honor her request by failing to respond to the request itself, along with subsequent emails containing discovery materials. Defendants' counsel refusal to respond prompted Plaintiff's counsel to seek relief in the form of this motion to compel.

With each snail mail delivery, Defendant exposes Plaintiff's counsel, along with her family at risk. Plaintiff's counsel is a parent who has found herself as many parents having to balance the demands of a profession and the demands of the educational and welfare needs of children. This parental effort is made while maintaining strict safety standards in a global pandemic. More specifically, this Court should further take notice of the disparate impact that the current global pandemic has had on female legal practitioners. Lawyers and judges already inhabit a tight knit community, and it is our responsibility to ensure the safety of our brothers and sisters to the best of our ability. The various state and federal bars and courts have issued dozens of orders and guidelines to that effect for the good of our clients, our community, and our society. Part of this responsibility means acknowledging when a challenge like a pandemic, affecting all, visits disproportionate inequity upon our different persons within our community.

Women, in particular, are often primary caregivers, responsible for households full of individuals, many of whom may be immunocompromised, when there are no daycares and schools are not in session. They are forced to be teachers, principals, nurses, mothers, practitioners, and entrepreneurs sequentially and simultaneously. The burdens upon them are amplified further when they are responsible for a small law firm without the support structure of larger organizations. Plaintiff's counsel and others in her profession are more than capable of rising to these challenges, but that does not change the fact that these are extraordinary times with extraordinary dangers visited primarily upon specific classes of advocates. When such individuals as Plaintiff's counsel adapt their practice to meet these varied and unique challenges, the Court and the opposing counsel should be willing to bend, where reasonable and appropriate, to the necessities of the times.

Defendants counsel's failure to respond makes the litigation process nearly impossible, especially since it is likely that Defendants' counsel is communicating with other counsel through electric means. Plaintiff request that Defendants be ordered to stop these stall tactics and communicate electronically similar to lawyers across the county. Indeed, even the Court communicates with attorneys electronically.

### ii. *Defendants have failed to mediate in good faith.*

Rule 101.1d of the Local Alternative Dispute Resolution Rules of Practice and Procedure – U.S. District Court for the Eastern District of North Carolina ("Local ADR Rules") requires that the parties mediate and in the process thereof, select a mediator and a date to mediate. Defendants are in violation.

On several occasions, and in an attempt to abide by the Court's order to mediate, Plaintiff's counsel has contacted Defendants' counsel. Defendants' counsel however made his intention that settlement was unlikely known and has since acted consistent with that manner. On each occasion that Plaintiff's counsel has contacted Defendants' counsel, he has failed to respond. But Defendants are not exempt from mediation and have made no motion to be exempt. *Id*. Rule 101.1a (e) ("A general assertion that

a case is not likely to settle or that settlement possibilities are remote may not in the court's discretion adequately justify exemption."). Defendants can either file a motion to be excused from mediation or cooperate.

Indeed, the parties cannot even begin the mediation process because Defendants' lack of response to the matter; as such, Plaintiff's counsel requests that the Court direct Defendants' counsel to respond to dates and other matters related to mediation.

### *iii. Defendants have failed to respond to any discovery requests.*

Fed. R. Civ. P. 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

To date, Defendants' counsel has failed to respond to Plaintiffs' request for discovery. To be certain, Defendants did not just provide incomplete responses, Defendants provided no response whatsoever, not even an objection to the many discovery requests that have been sent to them.

Defendants' actions have caused unwarranted delay. Had Defendants simply stated that they did not agree to electronic communications—in the wake of COVID-19, Plaintiff would have proceeded differently. Instead, Defendant used its nonresponsiveness as a means to obtain leverage—and then claimed that Plaintiff has been dilatory while leaving their communication preference in the balance.

Because of Defendants' dilatory conduct, Plaintiff was forced to amend the complaint without the benefit of discovery, including Plaintiff's own personnel file that has been requested on multiple occasions to no availment. Indeed, there are many legal arguments that will need to be addressed based on how Defendants respond to discovery request and some are anticipatory, as Defendants have already made certain positions known to Plaintiff that Plaintiff has opposed. For example, it is Defendants' position that they do not have to disclose employment records and discriminatory complaints filed

against them—that is not true pursuant to *Giglio v. United States*, 405 US 150 (1972), Title VII and other notions of fair play.

Defendants' counsel failure to respond to discovery requests slows down the litigation process. Plaintiff requests this court to grant this motion to compel to move litigation in this case forward. Compelling Defendants' counsel to respond to Plaintiff's discovery overtures will allow for the prompt narrowing of issues pertinent for trial and prevent judicial delay.

### *B. Defendants' conduct is a violation of professionalism.*

Defendants' counsel's conduct offends traditional notions of civility towards counsel and the Court. Rule 3.3. of the North Carolina Professional Rules of Conduct Provides that:

> (a) A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . .

*See* Rule 3.3, Canons of Ethics and Rules of Professional Conduct, N.C. State Bar, G.S. 84-23.

Defendants have presented the Court with mistruths. Defendants indicate that there has been no exchange of discovery. But there has been. On June 24, 2020, Plaintiff sent seven rounds of discovery requests. Defendants failed to respond. Plaintiff also sent Defendant's expert report on July 30, 2020, and informed Defendants that additional time was required to obtain a second expert. Typical to its traditional behavior, Defendants failed to respond.

North Carolina Courts hold that, "a trial attorney may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives.'" *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (*quoting State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967)); *see also* Gen. R. Pract. Super. and Dist. Ct. 12, 1999 Ann. R. N.C. 10 ("All personalities between counsel should be avoided. The personal history or peculiarities of counsel on the opposing side should not be alluded to. Colloquies between counsel should be avoided."; "The conduct of the lawyers before the court and with other lawyers should be characterized by candor and fairness."); *see also State v. Rivera*, 350 N.C. 285, 291 ("trial courts must

not tolerate, comments in court by one lawyer tending to disparage the personality or performance of another. Such comments tend to reduce public trust and confidence in our courts and, in more extreme cases, directly interfere with the truth-finding function by distracting judges and juries from the serious business at hand").

Without speaking a single word, Defendants' counsel has engaged in dismissive and abusive conduct towards Plaintiff's counsel. Defendants' counsel has—for months—refused to respond to overtures to communicate with him about the pending matter. He has not responded to communications related to mediation—even though this Court ordered mandatory mediation. He has not responded to discovery requests—even though required to under the Federal Rules of Civil Procedure. He has provided the Court with mistruths about discovery and other related processes. Indeed, Plaintiff's counsel has asked Defendants' counsel about discovery to no response. By contrast, when someone other than Plaintiff's counsel contacts Defendants' counsel, he or is colleague responds almost immediately. (Attached hereto is Exhibit ____). This behavior has gone on long enough and is taking a toll on the advancement of the litigation.

Plaintiff's counsel notes that this behavior did not begin until Defendants' counsel did not get his way with the scheduling order. At such time, Defendants' counsel informed Plaintiff's counsel that there would be no settlement—even before the Court ordered a mediator. And Defendants' counsel has continued to act in a manner consistent with his statement without any reservation.

Plaintiff's counsel requests that this lack of responsiveness and lack of civility stop immediately, as it is inconsistent with the notion that attorneys are to be professional with one another at all times, even if they oppose one another's position.

### IV. CONCLUSION

For the reasons identified above, Justin White requests that the Court **GRANT** Plaintiff's motion to compel discovery.

Respectfully submitted this 24th day of August 2020.

/s/ Sharika M. Robinson

SHARIKA M. ROBINSON,
North Carolina Bar No.: 44750
THE LAW OFFICES OF SHARIKA M ROBINSON, PLLC
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561 6771
Telefax: (704) 561-6773
*Counsel for Plaintiff Justin J. White*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2020, the foregoing was served on the following by electronic mail:

Christopher Geis (Chris.Geis@wbd-us.com)

ATTORNEY FOR DEFENDANTS

This, 24th day of August 2020.

/s/ Sharika M. Robinson
SHARIKA M. ROBINSON,
North Carolina Bar No.: 44750
The Law Offices of Sharika M. Robinson, PLLC
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561 6771
Telefax: (704) 561-6773
srobinson@sharikamrobinsonlaw.com
*Counsel for Plaintiff Justin J. White*