IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:19-CV-00467-BO

| | |
|---|---|
| JUSTIN J. WHITE,<br><br>        Plaintiff,<br><br>v.<br><br>VANCE COUNTY, NORTH CAROLINA,<br>VANCE COUNTY SHERIFF'S OFFICE,<br>PETER WHITE, in his official and individual<br>capacities, LAWRENCE D. BULLOCK, in<br>his official and individual capacities,<br>WELDON WALLACE BULLOCK, in his<br>official and individual capacities, and<br>WESTERN SURETY COMPANY, a division<br>of CNA SURETY,<br><br>        Defendants. | **ANSWER OF DEFENDANTS TO<br>FIRST AMENDED COMPLAINT** |

NOW COME the defendants, by and through counsel, and, responding to the allegations in the plaintiff's First Amended Complaint, answer and allege as follows:

### DEFENDANTS' INTRODUCTORY STATEMENT

The plaintiff, a black sheriff's deputy, used excessive force on a black woman and broke her arm during an arrest. This use of force was investigated by a black sheriff's captain, and the plaintiff was fired by a black sheriff, under whom served a black chief deputy. The plaintiff alleges that his firing was the result of racial discrimination and has sued the captain, the sheriff, and the chief deputy, notwithstanding that that this was the fourth consecutive law enforcement job from which the plaintiff was fired. The defendants deny the plaintiff's allegations and answer below.

<u>**Introduction**</u>

1.    The first two sentences of paragraph 1 state neither facts nor legal conclusions, are not relevant to this lawsuit, do not belong in a pleading, and do not require a response, but, to the extent that a response is required, the allegations are denied.  As to the remainder of the allegations in paragraph 1, it is admitted that former Sheriff Peter White and the plaintiff are black.  It is admitted that the plaintiff complained that he was subjected to race discrimination, but it is denied that he was subjected to race discrimination in an agency where nearly all senior officers are and were black, and this allegation is absurd on its face and without any factual basis.  It is further denied that former Sheriff White engaged in retaliation against the plaintiff or anyone else.  It is admitted that the plaintiff was justifiably fired on October 24, 2018, for poor performance, and that he used excessive force on a black woman, who suffered a broken bone in her arm during an arrest.  However, it is denied that the plaintiff was fired for any pre-textual reason.  It is admitted that the plaintiff's termination was reported, as required by law, to the North Carolina Sheriffs' Education and Training Standards Commission, which is a part of the North Carolina Department of Justice and which certifies all deputy sheriffs in the state, and that the report of his termination speaks for itself; however, it is denied that the Report of Separation, Form F-5, a copy of which is attached to this Answer as **Exhibit "A," states** that that the plaintiff used excessive force; therefore, this allegation is denied.  It is denied that the defendants' conduct was wrongful or malicious; denied that the plaintiff was subjected to disparate treatment, a hostile work environment, or retaliation; and denied that the defendants violated any of the plaintiff's statutory, common-law, or constitutional rights under state or federal law.  Except as otherwise admitted, the allegations of paragraph 1 are denied.

2

## Jurisdiction and Venue

2.      The allegations of paragraph 2 are admitted, but it is denied that the defendants are liable to the plaintiff in any way.

3.      The allegations of paragraph 3 are admitted, but it is denied that a Government Employee Rights Act claim is a proper claim to be asserted against the defendants and further denied that the defendants are liable to the plaintiff in any way.

4.      The allegations of paragraph 4 are admitted, but it is denied that the defendants are liable to the plaintiff in any way.

5.      The allegations of paragraph 5 are admitted, but it is denied that the defendants are liable to the plaintiff in any way.

6.      Admitted.

7.      Admitted.

8.      Admitted.

## Parties

9.      Admitted upon information and belief.

10.     Defendant Vance County **has been dismissed from this action by order of the Court**.   Nevertheless, the plaintiff has named it as a defendant again and this requires the defendants to respond to this allegation:  It is admitted that defendant Vance County has the legal capacity to be sued, but it is denied that it is an organization of townships; rather, it is admitted that, under long-standing North Carolina law, counties are constituent parts and sub-divisions of the state.  It is further denied, based on long-standing North Carolina law, that a county may be sued for the acts or omissions of the sheriff or his deputies, and thus denied that Vance County is a proper defendant in this case.   It is admitted that counties in North Carolina provide administrative support to sheriffs, but denied that counties are responsible for a sheriff's policies

3

and procedures, including in Vance County, and denied that this makes them liable for the acts or omissions of a sheriff or his deputies. The remainder of the allegations of paragraph 10 are denied.

11.     Defendant Vance County Sheriff's Office **has been dismissed from this action by order of the Court**. Nevertheless, the plaintiff has named it as a defendant again and this requires the defendants to respond to this allegation: It is admitted that Article VII, Section 2, of the North Carolina Constitution requires the election of a sheriff in each county, but denied that it refers to or mandates the creation of a county sheriff's office. It is admitted that the North Carolina Sheriffs' Education and Training Standards Commission exists pursuant to Chapter 17E of the North Carolina General Statutes and is responsible for the certification of deputy sheriffs and training of sheriffs and deputy sheriffs. The remainder of the allegations of paragraph 11 are denied. It is specifically denied that the doctrine of respondeat superior has any application to an entity without the legal capacity to be sued.

12.     The allegations of paragraph 12 are admitted, and it is further admitted that defendant Sheriff White completed his term of office in December 2018 and is no longer the sheriff of Vance County.

13.     It is admitted that defendant Lawrence D. Bullock was the chief deputy and second in command to the sheriff and was appointed by Sheriff White, but denied that he continues to serve as a deputy sheriff or as chief deputy. It is admitted that he was responsible for supervising operations in the sheriff's office on behalf of the sheriff, that he supervised all sheriff's officers except the sheriff, and that he is being sued in his individual and official capacities. The remainder of the allegations of paragraph 13 are denied.

14.     Admitted.

15.     It is denied that defendants Lawrence Bullock and Weldon Wallace Bullock have or had, or were required to have, any official bonds, but the remainder of the allegations of paragraph 15 are admitted.

16.     It is denied that CNA Surety is a defendant and denied that defendants Lawrence Bullock and Weldon Wallace Bullock have or had, or were required to have, any official bonds, but it is admitted that CNA Surety is the parent company of Western Surety Company.  Except as otherwise admitted, the allegations of paragraph 16 are denied.

17.     It is denied that defendants Lawrence Bullock and Weldon Wallace Bullock have or had, or were required to have, any official bonds, but the remainder of the allegations of paragraph 17 are admitted.

18.     The allegations of paragraph 18 are denied.

## Facts

19.     It is admitted that Vance County has several departments, but it is denied that the Vance County Sheriff's Office is a subdivision or department of the county government; rather, the Office of Sheriff is a separate unit of local government.

20.     Admitted.

21.     Admitted.

22.      It is admitted that the plaintiff was appointed as a Vance County sheriff's deputy on June 5, 2017, by Sheriff White and that this appointment was terminated on October 24, 2018, but denied that he was hired by Vance County or the Vance County Sheriff's Office or given a two-year employment contract or any employment contract.  It is denied that the plaintiff was a senior patrol deputy, but admitted that he served as a patrol deputy and sometimes was senior to other deputies in his squad on certain shifts.  It is denied that the plaintiff was a supervisor or acting supervisor.  It is admitted that Argretta Reid Johen was the Human Resources Director for Vance

5

County, but denied that she or anyone else executed an employment contract with the plaintiff or had actual or apparent authority to do so. Under North Carolina law, deputy sheriffs are appointed by and serve at the will of the sheriff, and it is denied that Vance County had, or could have had, any role in the employment/appointment relationship between the sheriff and his deputies. It is admitted that Argretta Reid Johen wrote a letter to the plaintiff on June 5, 2017, informing him of his appointment as a sheriff's deputy, but it is denied that this letter constituted a contract and denied that it was, or could have been, executed as such. Except as otherwise admitted, the allegations of paragraph 22 are denied.

23.   Admitted.

24.   Admitted.

25.   Admitted.

26.   Admitted.

27.   The allegations of paragraph 27 are denied and are contradicted by the chart contained in paragraph 28. It is also denied that Durwood Campbell is now a lieutenant or holds the position alleged. It is further denied that lieutenants supervise squads; rather, it is admitted that lieutenants supervise sergeants, who supervise squads.

28.   The chart presented in paragraph 28 is inaccurate in several respects; therefore, the allegations in paragraph 28 are denied. It is specifically denied that squads are immediately below the head of the patrol division. However, it is admitted that Sheriff White, who is black, held the top position in the sheriff's office; that the chief deputy, who was black, held the No. 2 position; and that, immediately below the chief deputy were the heads of divisions, including the head of the patrol division, who was black and held the rank of captain.

6

29.     It is admitted that the quoted passage is from Section 17E-1 of the North Carolina General Statutes, not "Section 17E," and that the statute speaks for itself.

30.     It is admitted that the quoted passage is from Section 17E-1 of the North Carolina General Statutes, not "Section 17E," and that the statute speaks for itself.

31.     It is admitted that the quoted passage in paragraph 31 is accurately quoted from Section 17E-1 of the North Carolina General Statutes, and that the statute speaks for itself.

32.     Admitted.

33.     Admitted.

34.     The allegations of paragraph 34 are without a factual basis, absurd on their face, and denied.

**VCSO Allegedly Discriminates Against Black Sheriff Deputies**

35.     The allegations of paragraph 35, including sub-parts (a) through (f) and all sub-paragraphs contained therein, are denied.

36.     Denied.

37.     The allegations of paragraph 37 are denied, except it is admitted that the sheriff, the chief deputy, and several captains were the upper management of the sheriff's office and are black.

**Mr. White's Employment Was Directly Impacted by VCSO's Alleged  Discrimination (Disparate Treatment)**

38.     The allegations of paragraph 38, including sub-parts (a) through (m), are denied.

39.     Denied.

40.     Denied.

**Lieutenant Campbell Allegedly Exhibits Racial Animus Towards Black Sheriff Deputies, Citizens and Suspects (Hostile Work Environment and Disparate Treatment)**

41.     Denied.

7

42. The allegations of paragraph 42, including sub-parts (a) through (f), are denied, but it is admitted that the plaintiff used racially charged words toward Lieutenant Campbell and addressed him as "white boy."

43. It is admitted that Lieutenant Campbell and other deputies, including the plaintiff, chased and apprehended suspects, but the remainder of the allegations of paragraph 43 are denied.

44. Denied.

45. Denied.

46. Denied.

47. It is admitted that parents of a child came to the sheriff's office to exchange their child in the presence of sheriff's deputies because the father was under a domestic violence protective order and had a history of aggressive and intimidating behavior, but the remainder of the allegations of paragraph 47 are denied.

48. Denied.

49. Denied.

50. Denied.

51. The defendants are without knowledge or information sufficient to form a belief as to the truth as to whether such an affidavit exists; therefore, this allegation is denied. The remainder of the allegations of paragraph 51 are denied, and it is specifically denied that Lieutenant Campbell treated black individuals disrespectfully or differently than white individuals. Except as otherwise admitted, the allegations of paragraph 51, including sub-paragraphs (a) through (c), are denied.

52. The defendants are without knowledge or information sufficient to form a belief as to the truth of whether Deputy Green made the statement alleged in paragraph 52; therefore, this

allegation is denied. The remainder of the allegations of paragraph 52 are denied, and it is specifically denied that Lieutenant Campbell treated or treats black individuals disrespectfully or differently than white individuals.

53. Denied.

**Supervisors Allegedly Openly Harass Mr. White and Call Him Gay**
**(Hostile Work Environment and Disparate Treatment)**

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. It is admitted that the plaintiff complained that someone placed a purple unicorn hat in his mailbox and showed said item to others, but the defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 58 and, therefore, said allegations are denied.

59. The allegations of paragraph 59 are denied, except it is admitted that the plaintiff mentioned the unicorn hat to Sergeant Roberson.

60. Denied.

**Lieutenant Campbell Transfers Mr. White to Another Shift**
**(Hostile Work Environment and Disparate Treatment)**

61. It is admitted that, in November 2017, the plaintiff was transferred from Sergeant Robertson's squad to Sergeant Alexander's squad in part because the plaintiff could not get along with the officers on Sergeant Robertson's squad. It is admitted that Lieutenant Campbell told the plaintiff about a new Basic Law Enforcement Training class that would start in January 2018, but denied that he told him that this had anything to do with the plaintiff's transfer. Except as otherwise admitted, the allegations of paragraph 61 are denied.

9

62.     The allegations of paragraph 62 are admitted, and it is further admitted that the plaintiff's transfer to a different shift was in part because he was certified and the shift to which he was transferred required another certified deputy to balance the shifts with an equal number of certified and uncertified deputies.

63.     Denied.

64.     The allegations of paragraph 64 are denied. It is specifically denied that the plaintiff and Deputy White were able to get along or work together without incident.

65.     Denied.

66.     The allegations of paragraph 66 are denied, but it admitted that the plaintiff went straight to Sheriff White with his complaint.

67.     It is admitted that the plaintiff made factually unsupported allegations about his transfer to Sheriff White. Except as otherwise admitted, the allegations of paragraph 67 are denied.

68.     Denied.

69.     It is admitted that Captain Watkins, Lieutenant Campbell, Sergeants Roberson and Alexander, and Deputy Wayne met sometime in or around January 2018 to discuss the plaintiff's transfer to another shift; and, further:

        a.     the allegations of sub-paragraph (a) are admitted;

        b.     the allegations of sub-paragraph (b) are admitted;

        c.     the allegations of sub-paragraph (c) are denied;

        d.     the allegations of sub-paragraph (d) are denied; and

        e.     the allegations of sub-paragraph (e) are denied.

70.     The allegations of paragraph 70 are denied, except it is admitted that Sheriff White did not rescind the transfer of the plaintiff.

10

## Mr. White Allegedly Refuses to Discriminate in His Policing and VCSO Retaliates (Retaliation)

71.    It is admitted that the plaintiff was involved in ill-advised traffic stops, but the rest of the allegations of paragraph 71 are denied.

### a.    Traffic Incident Involving Mexican-Hispanic Man:

72.    It is admitted that the plaintiff was dispatched to an automobile collision involving a man in one car, who was at fault, and two women in another car, but the remainder of the allegations of paragraph 72 are denied.

73.    It is admitted that the plaintiff declined to charge the male driver even though he was clearly at fault.

74.    It is admitted that, when the women saw Sheriff White and reported the collision to him, Sheriff White realized that the plaintiff had failed to take any reasonable action, including calling for assistance from officers who could investigate and issue citations.  Except as otherwise admitted, the allegations of paragraph 74 are denied.

75.    It is admitted that, when Sheriff White realized the plaintiff's failure and that a significant amount of time had elapsed since the collision, he instructed the plaintiff to charge the driver.  It is further admitted that the plaintiff complained that he could not do so because he did not have a citation book, but the sheriff instructed him to take out criminal summonses and described to him the difference between charging motorists for clear, obvious, and major traffic violations and minor ones, such as failure to use a turn signal or speeding.  Except as otherwise admitted, the allegations of paragraph 75 are denied.

76.    Admitted.

11

### b.    Traffic Incident Involving White Woman:

77.    It is admitted that, in January 2018, the plaintiff took out criminal summonses to charge a white woman with traffic violations, but the defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 77 and, therefore, said allegations are denied.

78.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78 and, therefore, said allegations are denied.

79.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 and, therefore, said allegations are denied.

80.    Admitted.

81.    The allegations of paragraph 81 are admitted.  It is further admitted that Lieutenant Campbell received the complaint from Sgt. Alexander and did not know the woman's race.

82.    The allegations of paragraph 82 are denied, except it is admitted that Lieutenant Campbell told the plaintiff again that his primary job was not the routine enforcement of minor traffic laws because this was Sheriff White's stated preference.

83.    Denied.

84.    It is admitted that the plaintiff failed to grasp the difference between charging drivers who caused collisions and citing drivers for minor traffic violations, regardless of their race, but it is denied that Sheriff White or Lieutenant Campbell directed him to engage in discriminatory, unethical, or unprofessional behavior.  It is further admitted and alleged that Sheriff White, who served 24 years as a North Carolina State Highway Patrol trooper and retired with the rank of major, had a better grasp of how sheriff's deputies should handle traffic violations than the plaintiff.  Except as otherwise admitted, the allegations of paragraph 84 are denied.

85. The allegations of paragraph 85 are denied, but it is admitted that Lieutenant Campbell reviewed the report of the woman's complaint.

86. It is admitted that the plaintiff repeatedly filed baseless complaints, but the remainder of the allegations of paragraph 86 are denied. It is specifically denied that Lieutenant Campbell, who worked at the pleasure of Sheriff White, who is black, instructed the plaintiff to engage in discriminatory policing or engaged in any discriminatory actions, and further denied that there was any need for Sheriff White to curtail things that did not occur or exist.

### Lieutenant Campbell Allegedly Begins to Establish a Paper Trail to Create the False Narrative that Mr. White is Insubordinate (Further Retaliation and Pretext)

87. The allegations of paragraph 87 are denied. It is, however, admitted that Sheriff White suspended the plaintiff on February 20, 2018, for five days for conduct unbecoming of an officer, which was a result of his disrespect to a superior officer and failure to follow orders, and it is further admitted that Chief Deputy Lawrence Bullock delivered the written suspension notice to the plaintiff.

88. The allegations of paragraph 88 are admitted, except it is denied that the race of the woman was mentioned in the suspension notification or played any role in the suspension.

89. The allegations of paragraph 89 are denied, except it is admitted that Sheriff White suspended the plaintiff for five days without pay.

90. Denied.

91. It is admitted that the plaintiff signed the suspension notice, but the remainder of the allegations of paragraph 91 are denied. It is unclear what the plaintiff means by "treat of termination," but the plaintiff was not threatened with termination if he did not sign the notice.

92. It is admitted that the plaintiff received a written performance evaluation from Sergeant Alexander on June 1, 2018, and that the terms of the evaluation speak for themselves. It

13

is further admitted that the evaluation noted that the plaintiff had "been reprimanded and written up several times for his attitude and work ethics," that he was "very insubordinate towards his [s]upervisors," and that he "sometimes [spoke] to the citizens and other co-workers with a very nasty attitude." Except as otherwise admitted, the allegations of paragraph 92 are denied.

93.     It is admitted that the plaintiff was asked to sign the evaluation, that he declined to do so, and that he asked why the evaluation contained negative material about his performance.

94.     It is admitted that, at the plaintiff's request, Sheriff White asked Sergeant Welborn and Sergeant Alexander to review the plaintiff's evaluation twice more and that they adjusted the plaintiff's scores by one point in two categories, which raised his overall score to the standard for deputies. Except as otherwise admitted, the allegations of paragraph 94 are denied.

95.     It is admitted that, during his brief period of employment, the plaintiff had never received a poor performance rating, but it is denied that his performance had been praised; rather, it is admitted that his performance was poor and that he had been counseled for the same. Except as otherwise admitted, the allegations of paragraph 95 are denied.

96.     The allegations of paragraph 96, including sub-parts (a) through (e), are denied.

97.     The allegations of paragraph 97 are denied.

**Sheriff White Allegedly Instructs Mr. White to Drop His Race Written
Discrimination Complaints
(Retaliation)**

98.     It is admitted that on June 15, 2018, the plaintiff sent Sheriff White two letters, the contents of which speak for themselves, in which he complained about various matters, including alleged racial discrimination, Lieutenant Campbell, and his employee appraisal. It is further admitted that the plaintiff sent a copy of these letters to Argretta Reid Johen, the director of the county's human resources department, and that Sheriff White responded to the plaintiff in letters

14

dated July 13 and July 19, 2018. Except as otherwise admitted, the allegations of paragraph 98 are denied.

99. It is admitted that the plaintiff filed a written appeal of his employee performance evaluation with Sheriff White on June 15, 2018. Except as otherwise admitted, the allegations of paragraph 99 are denied.

100. It is admitted that Argretta Reid Johen forwarded the plaintiff's written complaints to Sheriff White and that, at various times, the plaintiff spoke with the sheriff and Chief Deputy Bullock. Except as otherwise admitted, the allegations of paragraph 100 are denied.

101. The allegations of paragraph 101, including sub-parts (a) and (b), are denied.

102. The allegations of paragraph 102, including sub-parts (a) and (b), are denied.

103. Denied.

104. It is denied that Lieutenant Campbell suspended the plaintiff, but it is admitted that Sheriff White did so and that only the sheriff could issue suspensions. It is admitted that Sheriff White did not rescind the suspension and declined to investigate unsubstantiated allegations. Except as otherwise admitted, the allegations of paragraph 104 are denied.

**Mr. White Files an EEOC Charge**

105. The allegations of paragraph 105 are denied, though it is admitted that the plaintiff filed his first EEOC charge on September 2, 2018, and alleged racial and gender discrimination.

106. Admitted.

107. It is admitted that the EEOC concluded its investigation without finding support for the plaintiff's charge of discrimination and issued the plaintiff a right-to-sue letter, as it was required to do. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations as to when the plaintiff received this letter; therefore, this allegation is denied. Except as otherwise admitted, the allegations of paragraph 107 are denied.

15

## VCSO Allegedly Further Retaliates and
## Begins to Search for a Reason to Terminate Mr. White

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 114 and, therefore, said allegations are denied.

115.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 115 and, therefore, said allegations are denied. However, it is denied that the plaintiff was fired for filing complaints.

116.    Denied.

## Alleged Retaliatory and Pretextual Discharge

117.    Denied.

118.    It is admitted that the plaintiff claimed that, on October 21, 2018, he saw a driver committing traffic violations, but the defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of paragraph 118 and, therefore, said allegations are denied.

119.     It is admitted that the plaintiff made a radio call to dispatch to determine registration information for the owner of the vehicle who he claimed had committed traffic violations, and further admitted that the plaintiff falsely claimed that he sought warrant information

16

on the registered owner of the vehicle when a recording of his call to the dispatch center showed that he did not. Except as otherwise admitted, the allegations of paragraph 119 are denied.

120. Admitted.

121. It is admitted that the plaintiff later checked and discovered that the driver of the car, with whom he had spoken when they were stopped at a gas station, had two outstanding warrants for non-violent felonies and further admitted that it was proper for the plaintiff to decide to serve said warrants. Except as otherwise admitted, the allegations of paragraph 121 are denied.

122. The allegations of paragraph 122 are denied. It is specifically denied that the plaintiff requested a warrant check on the driver on the police radio and specifically denied that it is improper for an officer to serve non-violent felony warrants alone.

123. It is denied that Sergeant Welborn told the plaintiff to serve the warrants, but admitted that Sergeant Welborn told the plaintiff that, if he wanted to serve the warrants, he could do so without assistance. Except as otherwise admitted, the allegations of paragraph 123 are denied.

124. The allegations of paragraph 124 are denied, but it is admitted that the plaintiff served the warrants alone.

125. The allegations of paragraph 125 are denied, except it is admitted that the woman on whom the plaintiff was serving warrants has a large physique.

126. It is admitted that the plaintiff slammed the woman to the ground and handcuffed her, and that she broke a bone in her arm during the arrest, but the remainder of the allegations of paragraph 126 are denied.

127. It is admitted that the woman reported that the plaintiff assaulted and harassed her and broke her arm, that paramedics determined that she had suffered a broken arm, and that she

17

was treated for a broken arm at the hospital and did in fact suffer a broken arm, but the remainder of the allegations of paragraph 127 are denied.

128.    It is admitted that, after the woman complained about the plaintiff's use of force on her, Captain Bullock investigated the allegations at the direction of Sheriff White, but the remainder of the allegations of paragraph 128 are denied.

129.    It is admitted that Captain Bullock concluded that the plaintiff had used excessive force, but the remainder of the allegations of paragraph 129 are denied.  It is specifically denied that Captain Bullock, who interviewed the plaintiff, failed to allow the plaintiff to be heard, and specifically denied that his conclusion about the plaintiff's use of force was erroneous.

130.    Admitted.

131.    Denied.

### VCSO Prior Use of Force Determinations

132.    The one sentence contained in paragraph 132 is an incomplete sentence, and thus it is unclear what the plaintiff alleges, but to the extent that it requires a response, any allegation contained therein is denied.

133.    It is admitted that Sheriff White's staff conducted other investigations involving the use of force, but denied that officers were not disciplined for using excessive force.  Except as otherwise admitted, the allegations of paragraph 133 are denied.

134.    Denied.

135.    Denied.

### Defendants' Alleged Retaliation and Continued Interference with Plaintiff's Prospective Employment

136.    Denied.

18

137.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 137 and, therefore, said allegations are denied.

138.    It is admitted that law enforcement officers are required to be certified by the state, but the defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of paragraph 138 and, therefore, said allegations are denied.

139.    It is denied that the Vance County Sheriff's Office sent the internal affairs investigation report to the North Carolina Sheriffs' Education and Training Standards Division, but it is admitted that it sent use-of-force reports, incident reports, and other materials concerning the excessive force in question to said Division in May 2019, as requested by said Division.  The defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of paragraph 139 and, therefore, said allegations are denied.

140.    Denied.

141.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 141 and, therefore, said allegations are denied.

142.    The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 142 and, therefore, said allegations are denied.

143.    It is denied that the North Carolina Special Police would not know and did not know that the plaintiff sued the defendants, since the lawsuit is a public record and easily available to any employer conducting a background check of a potential employee.  Further, if the plaintiff did not inform any prospective employer of his lawsuit and the circumstances surrounding it, he lacked candor with said employer. As to the remainder of the allegations of paragraph 143, the defendants are without knowledge or information sufficient to form a belief as to the truth of said allegations and, therefore, said allegations are denied.

19

144.     It is denied that the defendants participated in any "concerted effort to keep Mr. White off the force," but the defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of paragraph 144 and, therefore, said allegations are denied.

145.     The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 145 and, therefore, said allegations are denied.

146.     Denied.

147.     It is denied that the Vance County Sheriff's Office reported that the plaintiff was terminated for excessive force even though he was, and it is further denied that the Vance County Sheriff's Office marked on the plaintiff's F-5 form that he was untruthful, even though the plaintiff was untruthful.  As to an "F5(A)" form, it is denied that there is any such form for deputy sheriffs. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 147 and, therefore, said allegations are denied.

148.     Denied.

149.     Denied.

**Damages**

150.     Denied.

151.     It is denied that the defendants or any Vance County sheriff's officer damaged the plaintiff; rather, it is alleged that, if the plaintiff has been unable to obtain employment in law enforcement, it is because of his own conduct and work history, which includes being fired from four consecutive law-enforcement jobs.  As to the specific factual allegations of sub-parts (a) through (c) of paragraph 151, the defendants are without knowledge or information sufficient to form a belief as to the truth of said allegations and, therefore, said allegations are denied. Except as otherwise admitted, the allegations of paragraph 151 are denied.

20

152.     The defendants are without knowledge or information sufficient to form a belief as to the truth of when the plaintiff was scheduled to lose his deputy sheriff certification and so this allegation is denied.  It is further denied that the defendants acted maliciously or illegally, denied that anyone except Sheriff White fired the plaintiff, and denied that it was improper or illegal to fire an officer for using excessive force.  It is admitted that, as required by law, the sheriff, in his official capacity, ensured that the F5 form sent to the State of North Carolina about the plaintiff's service accurately disclosed that there was an internal investigation about the plaintiff's performance of his duties and to say otherwise would have been false.  Except as otherwise admitted, the allegations of paragraph 152 are denied.

153.     Denied.

154.     Denied.

155.     Denied.

156.     Denied.

## 42 U.S.C. § § 1981, 1983
## (Invoked in Counts I, II and III)

157.     It is admitted that the language of 42 U.S.C. § 1981 speaks for itself.

158.     Admitted upon information and belief.

159.     Denied.

160.     It is admitted that black deputy sheriffs and white deputy sheriffs have the same rights under § 1981, but it is denied that the plaintiff's rights were violated or that he had an employment contract with the Vance County Sheriff's Office.

161.     It is admitted that the language of 42 U.S.C. § 1983 speaks for itself.

162.     Admitted.

## Count I
## Violation of 42 U.S.C. § 1983
## Disparate Treatment Under 42 U.S.C. § 1981
## (Against All Defendants)

163.     The defendants incorporate their responses to paragraphs 1 through 162 herein.

164.     Denied.

165.     Denied, including sub-parts (a) through (n).

166.     Denied.

167.     Denied.

168.     The allegations of paragraph 168 are denied.  It is specifically denied that the plaintiff, who was interviewed by Captain Bullock, was not given an opportunity to be heard and further denied that he was entitled to any such hearing.

169.     Denied.

170.     Denied.

171.     Denied.

172.     Denied.

173.     Denied.

174.     Denied.

175.     Denied.

176.     Denied.

## Count II
## Violation of 42 U.S.C. § 1983
## Hostile Work Environment Under 42 U.S.C. § 1981
## (Against All Defendants)

177.     The defendants incorporate their responses to paragraphs 1 through 176 herein.

178.     Denied, including sub-parts (a) through (n).

179.     Denied, including sub-parts (a) through (d).

22

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    Denied.

185.    Denied.

186.    Denied.

187.    Denied.

**Count III**
**Violation of 42 U.S.C. § 1983**
**Unlawful Retaliation Under 42 U.S.C. § 1981**
**(Against All Defendants)**

188.    The defendants incorporate their responses to paragraphs 1 through 187 herein.

189.    Denied.

190.    Denied, and further denied that the doctrine of respondeat superior has any application to a claim under 42 U.S.C. §§ 1981 and 1983.

191.    Denied.

192.    Denied.

193.    Denied, and specifically denied that the investigation, which was conducted the day after the incident, was not "prompt."

194.    Denied.

195.    Denied.

196.    Denied.

197.    Denied.

198.    Denied.

199.    Denied.

**Count IV**
**Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.***
**The Government Employees Rights Act of 1991, 42 U.S.C. 2000e-16a *et seq***
**Disparate Treatment**
**(Against All Defendants)**

200.    The defendants incorporate their responses to paragraphs 1 through 199 herein.

201.    Denied.

202.    Denied.

203.    Denied.

**Count V**
**Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.***
**The Government Employees Rights Act of 1991, 42 U.S.C. 2000e-16a *et seq***
**Hostile Work Environment**
**(Against All Defendants)**

204.    The defendants incorporate their responses to paragraphs 1 through 203 herein.

205.    Denied.

206.    Denied.

207.    Denied.

**Count VI**
**Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.***
**The Government Employees Rights Act of 1991, 42 U.S.C. 2000e-16a *et seq***
**Retaliation**
**(Against All Defendants)**

208.    The defendants incorporate their responses to paragraphs 1 through 207 herein.

209.    Denied.

210.    Denied.

211.    The allegations of paragraph 211 are denied because the plaintiff was fired for using excessive force on a black woman and breaking her arm during an arrest.

212.    Denied.

24

**Breach of Contract**
**(Against the County and VCSO Defendants and Sheriff White)**

213. The defendants incorporate their responses to paragraphs 1 through 212 herein.

214. The allegations of paragraph 214 are denied. The **plaintiff again falsely states** that "Defendants contend that [plaintiff] Mr. White's employment as a sheriff's deputy was a contract with Sheriff White[.]" (Amd. Compl., Count VII, n. 4, p. 38.) The defendants' original Answer stated both that "the defendants were not a party to any contractual relationship with the plaintiff because no contractual relationship existed or could have existed" and that "[i]t is denied that any contract between the plaintiff and any of the defendants existed, and any such contract would have been void and _ultra_ _vires_ under N.C. Gen. Stat. § 159-28(a)." (Answ. ¶ 206 and 8th Aff. Def.)

215. It is denied that a contractual relationship existed between the plaintiff and any defendant and thus paragraph 215, as it applies to the plaintiff and the defendants, is denied.

216. The allegations of paragraph 216 are denied. It is denied that a county has any role, standing, or duty in the official relationship that exists between a sheriff and his appointed deputy sheriffs, and it is specifically denied that Vance County and the plaintiff had, or could have had, any contractual or employer-employee relationship of any kind. It also specifically denied that the Vance County Sheriff's Office is a legal entity with the capacity to be sued or that it could or did enter into any such contractual relationship with the plaintiff.

217. Denied, and denied that any agreement existed with the county or any defendant.

218. Denied, and denied that any agreement existed with the county or any defendant.

219. Denied, and denied that any agreement existed with the county or any defendant.

220. Denied, and denied that any agreement existed with the county or any defendant.

221. Denied, and denied that any agreement existed with the county or any defendant.

222. Denied, and denied that any agreement existed with the county or any defendant.

223.     Denied, and denied that any agreement existed with the county or any defendant.

**Count VIII**
**Tortious Interference with Employment and Related Opportunities**
**(Against Individual Defendants[1])**

224.     The defendants incorporate their responses to paragraphs 1 through 223 herein.

225.     Denied.

226.     It is admitted that defendants Weldon Wallace Bullock and Lawrence Bullock were not parties to any contractual relationship with the plaintiff, but the remainder of the allegations of paragraph 226 are denied.

227.     Denied.

228.     Denied.

229.     Denied.

230.     Denied.

231.     Denied.

232.     Denied.

233.     Denied.


**Count IX**
**Tortious Interference with Prospective Economic Advantage**
**(Against Individual Defendants)**

234.     The defendants incorporate their responses to paragraphs 1 through 233 herein.

235.     The allegations of paragraph 235 are denied.  The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that the plaintiff attempted to enter into any contracts with other law enforcement agencies; therefore, this

---

[1] Footnote 5 in the Amended Complaint falsely asserts the defendants' contention as to any contractual relationship between the plaintiff and the defendants.  See paragraph 214, above.

26

allegation is denied. It is also denied, based on the plaintiff's four previous consecutive firings from jobs in law enforcement, that he would have been able to secure another job in the field.

236.   Denied.

237.   Denied.

238.   Denied.

239.   Denied.

**Count X**
**Intentional Infliction of Emotional Distress**
**(Against Individual Defendants)**

240.   The defendants incorporate their responses to paragraphs 1 through 239 herein.

241.   Denied.

242.   Denied.

243.   Denied.

244.   Denied.

245.   Denied.

246.   Denied.

247.   Denied.

248.   Denied.

249.   Denied.

250.   Denied.

251.   Denied.

252.   Denied.

253.   Denied.

254.   Denied.

255.    Denied.

## Count XI
## Negligent Infliction of Emotional Distress
## (Against Individual Defendants)

256.    The defendants incorporate their responses to paragraphs 1 through 255 herein.

257.    Denied.

258.    The allegations of paragraph 258 are admitted, but it is denied that the defendants engaged in any harassment of the plaintiff based on his race, which is the same as that of the individual defendants.

259.    It is admitted that all persons owe others a duty of reasonable care, but denied that the defendants breached any duty toward the plaintiff.

260.    Denied.

261.    Denied.

262.    Denied.

263.    Denied.

264.    Denied.

## Count XII
## Wrongful Discharge Under the Equal Employment Practice
## N.C. Gen. Stat. § 143-422.2
## (Against Individual Defendant Sheriff White)

265.    The defendants incorporate their responses to paragraphs 1 through 264 herein.

266.    Denied.

267.    Denied.

268.    Denied.

269.    Denied.

270.    Denied.

28

## Count XIII
### Negligent Retention and Negligent Supervision
### (Against Individual Defendants Sheriff White and Chief Deputy Bullock)

271.    The defendants incorporate their responses to paragraphs 1 through 270 herein.

272.    Denied, and specifically denied that Lieutenant Campbell engaged in any discriminatory conduct toward the plaintiff.

273.    It is denied that Lieutenant Campbell engaged in racism or discrimination toward the plaintiff or anyone else, and thus denied that the individual defendants were or could have been aware of these things, which did not exist. It is also denied that the individual defendants retained Lieutenant Campbell, but admitted that Sheriff White, who has the sole authority for the hiring and firing of deputy sheriffs, retained Lieutenant Campbell as a deputy sheriff. Except as otherwise admitted, the allegations of paragraph 273 are denied.

274.    Denied.

275.    Denied.

## Count XIV
### Ratification
### (Against Individual Defendants Sheriff White and Chief Deputy Bullock)

276.    The defendants incorporate their responses to paragraphs 1 through 275 herein.

277.    The allegations of paragraph 277 are denied, and it is further denied that Lieutenant Campbell engaged in unlawful, improper, or tortious conduct or that the defendants ratified any such conduct.

278.    The allegations of paragraph 278 are denied, and it is further denied that Lieutenant Campbell engaged in any discriminatory conduct.

279.    The allegations in paragraph 279 contain an incomplete, nonsensical sentence that requires no response, but to the extent that any response is required the allegations are denied.

29

280.    The allegations in paragraph 280 contain an incomplete, nonsensical sentence that requires no response, but to the extent that any response is required the allegations are denied.

**Count XV**
**Defamation/Libel**
**(Against Individual Defendants)**

281.    The defendants incorporate their responses to paragraphs 1 through 280 herein.

282.    Denied.

283.    Denied.

284.    Denied.

285.    Denied.

286.    Denied.

**Count XVI**
**Punitive Damages**
**(All Defendants)**

287.    The defendants incorporate their responses to paragraphs 1 through 286 herein.

288.    Denied.

289.    Denied.

**Prayer for Relief**

It is denied that the plaintiff is entitled to any relief whatsoever in this matter.

**Jury Trial Demanded**

The defendants request a trial by jury on any triable issues should any such issues remain after summary judgment is entered.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

The Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Second Affirmative Defense

The defendants plead insufficiency of process and insufficiency of service of process and, therefore, lack of personal jurisdiction, as to one or more defendants pursuant to Rules 12(b)(2), (4), and (5) of the Federal Rules of Civil Procedure.

### Third Affirmative Defense

The plaintiff's claims against the individual defendants are barred by qualified immunity, public official immunity, and/or sovereign/governmental immunity.

### Fourth Affirmative Defense

As a matter of law, counties in North Carolina do not hire or train sheriff's deputies, no employment relationship exists between counties and deputies, and counties cannot be liable for the acts or omissions of a sheriff or his deputies; thus, defendant Vance County is not a proper defendant in this lawsuit. Further, Vance County was dismissed as a defendant by this Court in a previous ruling and should not be listed as such in the Amended Complaint.

### Fifth Affirmative Defense

Under North Carolina law, deputy sheriffs serve in an at-will employment relationship with, and at the pleasure of, the sheriff and may be terminated for any lawful reason, and the plaintiff was lawfully terminated.

### Sixth Affirmative Defense

The Vance County Sheriff's Office does not have the legal capacity to be sued and must be dismissed from this action; further, it was dismissed as a defendant by this Court in a previous ruling and should not be listed as such in the Amended Complaint.

31

### Seventh Affirmative Defense

As a matter of state and federal law, the plaintiff may not recover punitive damages from Vance County, the Vance County Sheriff's Office, or the defendants in their official capacities and therefore said claims should be dismissed.

### Eighth Affirmative Defense

It is denied that any contract between the plaintiff and any of the defendants existed, and any such contract would have been void and _ultra vires_ under N.C. Gen. Stat. § 159-28(a).

### Ninth Affirmative Defense

Count XIV, the plaintiff's claim for "ratification," must be dismissed because there is no such tort under North Carolina law.

### Tenth Affirmative Defense

The plaintiff is estopped from asserting claims against Vance County and the Vance County Sheriff's Office, which have been dismissed by a previous order of this Court.

### Eleventh Affirmative Defense

The plaintiff's defamation claims fail because the defendants are entitled to a qualified privilege for any statements made pursuant to a legal duty, because truth is a complete defense to said claims, because any statement made was made in the good-faith belief of its truthfulness and without actual malice, because the plaintiff is a public official about whom no statement was made with actual malice, because all statements were made only to interested persons and were not published to the general public, and because any statement was made pursuant to the defendants' First Amendment rights to express personal opinions.

WHEREFORE, having answered the plaintiff's First Amended Complaint, the defendants request that the plaintiff have and recover nothing from the defendants; that the First Amended

Complaint be dismissed with prejudice; that the defendants recover their costs, including reasonable attorney's fees; and, further, the defendants request trial by jury, if necessary, for all issues triable by jury, and for other such relief as this Court deems just, equitable, and proper.

Respectfully submitted, this 20th day of January, 2021.

/s/ Christopher J. Geis
WOMBLE BOND DICKINSON (US) LLP
CHRISTOPHER J. GEIS
N.C. State Bar No. 25523
ERIN H. EPLEY
N.C. State Bar No. 50690
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Email: Chris.Geis@wbd-us.com
         Erin.Epley@wbd-us.com
*Attorney for defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of North Carolina, is attorney for defendants in this matter, and is a person of such age and discretion as to be competent to serve process.

I hereby certify that on January 20, 2021, I electronically filed the foregoing **ANSWER OF DEFENDANTS TO FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such to the following CM/ECF participant:

Sharika M. Robinson
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561-6771
Facsimile: (704) 561-6773
*Attorney for Plaintiff*

/s/ Christopher J. Geis
Christopher J. Geis
N.C. State Bar No. 25523
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: Chris.Geis@wbd-us.com
*Attorney for Defendants*