IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:19-cv-00467-BO

| | |
|---|---|
| JUSTIN J. WHITE, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>VANCE COUNTY, NORTH CAROLINA; )<br>VANCE COUNTY SHERIFF'S OFFICE; )<br>PETER WHITE, in his official and individual )<br>capacities; LAWRENCE D. BULLOCK, in his )<br>official and individual capacities; )<br>WELDON WALLACE BULLOCK, in )<br>his official and individual capacities, )<br>and WESTERN SURETY COMPANY )<br>a division of CNA SURETY. )<br>)<br>    Defendants. ) | **MEMORANDUM OF LAW<br>IN SUPPORT OF DEFENDANTS'<br>PARTIAL MOTION TO DISMISS** |

## NATURE OF THE CASE

The plaintiff, a former Vance County sheriff's deputy, filed this lawsuit on October 23, 2019, alleging that he experienced harassment and racial discrimination at the Vance County Sheriff's Office. (D.E. No. 1.) Plaintiff moved to amend his complaint on August 4, 2020 (D.E. No. 32.), seeking to add Western Surety and current Vance County Sheriff Curtis Brame as defendants. (D.E. No. 32.) Plaintiff also moved to amend his complaint to add state law tort claims for tortious interference with prospective economic advantage, negligent and intentional infliction of emotional distress, wrongful discharge, and defamation. (D.E. No. 32.) The Court granted in part and denied in part, allowing plaintiff to add the two new defendants and the claims asserted, but denying the employment-related claims against Sheriff Brame. (D.E. No. 52.)

On December 31, 2020, plaintiff filed his Amended Complaint (D.E. No. 55), which now serves as the operative complaint. Notably, plaintiff's Amended Complaint does not name Sheriff Brame as a defendant. Id. Nonetheless, the Amended Complaint asserts, among other things, claims for (1) disparate treatment, hostile work environment, and retaliation in violation of 42 U.S.C. § 1981 and § 1983 against all defendants; (2) disparate treatment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Government Employees Rights Act of 1991, 42 U.S.C. § 2000e-16a, against all defendants (*id.* ¶¶ 200-212); (3) breach of contract against the individual defendants (*id.* ¶¶ 213-223); (4) ratification against former sheriff Peter White and former chief deputy Lawrence Bullock (*id.* ¶¶ 276-280); and (5) punitive damages against all defendants (*id.* ¶¶ 287-289). The defendants move to partially dismiss these claims for the reasons discussed below.

## STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Rather, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.2d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 570).

As the Fourth Circuit has explained:

> The Supreme Court has held that a complaint must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. To discount such unadorned conclusory allegations, a court considering a motion to

> dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth. This approach recognizes that naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief.

Id. (quoting Twombly, 550 U.S. at 555, 557, and Iqbal, 556 U.S. at 679, (internal quotation marks omitted).

Furthermore, Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant against whom a claim has been brought can challenge a pleading's sufficiency under Rule 8 by moving the court pursuant to Rule 12(b)(6) to dismiss the pleading for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. Iqbal, 556 U.S. at 678-79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'—'that the pleader is entitled to relief.' " (quoting Fed. R. Civ. P. 8(a)(2)); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (" 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.' " (quoting Twombly, 550 U.S. at 557)). Further, "[w]hen evaluating a motion to dismiss, a court considers the pleadings and any materials attached or incorporated into the complaint. A court also may consider a document submitted by a moving party if it is integral to the complaint and there is no dispute about the document's authenticity without converting the motion into one for summary judgment." *Self v. Nationstar Mortg. LLC*, No. 2:19-CV-3-D, 2019 WL 4734412, at *4 (E.D.N.C. Sept. 26, 2019).

## STATEMENT OF FACTS

Plaintiff Justin White ("plaintiff") was a deputy at the Vance County Sheriff's Office from June 5, 2017, to October 24, 2018. (D.E. No. 55 ¶ 22.) During this period, plaintiff, who is black, alleges that the defendants former Vance County sheriff Peter White, former Vance County chief deputy Lawrence Bullock, and former Vance County captain Weldon Bullock ("defendants"), who are all also black, subjected him to disparate treatment, a hostile work environment, racial harassment, and retaliation. Id. Specifically, Plaintiff alleges that he complained of such discrimination to former sheriff White, and that former sheriff White instructed him to drop these complaints or face termination. Id. ¶¶ 98-104. On or around August 10, 2018, plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), asserting race and gender discrimination. Id. ¶¶ 105-107. Two months later, on or around October 23, 2018, former sheriff White fired plaintiff for using excessive force during an arrest in which plaintiff broke the arm of a black woman. See Answ. ¶ 1. Plaintiff alleges that the excessive force investigation was merely a pretextual reason used to justify his termination, and that he was ultimately fired for filing complaints of discrimination. (D.E. No. 55 ¶¶ 128-29, 212.)

## ARGUMENT

For the reasons discussed herein, the defendants move to dismiss the following claims: (1) all claims asserted against defendants Lawrence Bullock and Weldon Bullock in their official capacities; (2) plaintiff's claims under Title VII against all defendants in their individual capacities; (3) plaintiff's claims under the Government Employees Rights Act; (4) plaintiff's breach of contract claims against defendants Lawrence Bullock and Weldon Bullock; (5) plaintiff's claim for ratification; and (6) plaintiff's claims for punitive damages against all defendants in their official capacities.

## I. All Claims Asserted Against Defendants Lawrence Bullock and Weldon Bullock in Their Official Capacities Should Be Dismissed as Duplicative of the Same Official Capacity Claims Asserted Against Sheriff White.

As noted in the case caption, Plaintiff has sued defendants Lawrence Bullock and Weldon Bullock in both their official and individual capacities. Plaintiff has also sued former Vance County sheriff Peter White in both capacities. The defendants now move to dismiss all official capacity claims, under both federal and state law, alleged against Lawrence Bullock and Weldon Bullock because it is well-settled under both federal and state law that suits against officers in their official capacities "represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Social Services, 436 U.S. 658, 690 n. 55 (1978). See also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (an official capacity claim against a governmental official is merely a suit against the entity for which the officer is employed); Boyd v. Roberson County, 169 N.C. App. 460, 466, 621 S.E.2d 1, 5 (2005) ("The official capacity claims in this case [against sheriff and detention officers] are . . . actually claims against the office of the Sheriff of Roberson County."); Jones v. Houston, 2010 WL 3835147, *14 n. 3 (E.D.N.C. Sept. 28, 2010) (citing Boyd and stating that "[a] claim against a sheriff and his deputy in their official capacities is really one claim against the office of the sheriff.").

Accordingly, the official capacity claims against Lawrence Bullock and Weldon Bullock are duplicative of the official capacity claims against former sheriff Peter White and should be dismissed as such. Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) (dismissing official capacity claims against deputy as redundant with claims against the sheriff).

This applies to both Title VII and § 1983 claims, as well. A plaintiff "may not bring a Title VII claim against an individual in his official capacity if the claim is duplicative of the claim against the public employer." Parks v. N. Carolina Dep't of Pub. Safety, 2014 WL 32064, at *4

5

(E.D.N.C. Jan. 6, 2014). Additionally, under § 1983, claims against officials in their official capacities are merely another way of bringing suit against the entity which the official works. See Moore v. City of Creedmoor, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997).

In North Carolina, the office of sheriff is a distinct legal entity. Worrell v. Bedsole, 1997 WL 153830, * 5 (4th Cir. Apr. 3, 1997). Under North Carolina law, deputy sheriffs are employees of the sheriff. See Peele v. Provident Mut. Life Ins. Co., 90 N.C. App. 447, 449, 368 S.E.2d 892, 894, rev. den. 323 N.C. 366, 373 S.E.2d 547 (1988). Accordingly, plaintiff's official capacity claims against defendants Lawrence Bullock and Weldon Bullock are duplicative of claims against their fellow defendant, former sheriff Peter White, and are redundant and unnecessary for the relief plaintiff seeks. Thus, the official capacity claims against the Bullocks should be dismissed.

## II. Plaintiff's Claims Under Title VII Should Be Dismissed Against the Defendants in Their Individual Capacities Because Title VII Does Not Provide a Remedy Against Individuals Who Do Not Qualify as "Employers."

Counts IV, V, and VI allege claims under both Title VII of the Civil Rights Act of 1964 and the Government Employees Rights Act of 1991 ("GERA"). (D.E. No. 55 ¶¶ 200-212). However, both Title VII and the GERA cannot both serve as a remedy. Crain v. Butler, 419 F. Supp. 2d 785, 788 (E.D.N.C. 2005).

Whether a plaintiff is entitled to recovery under Title VII or the GERA turns on whether the plaintiff qualifies as an "employee" under Title VII because Title VII specifically excludes certain individuals from "employee" status. Id. This distinction is discussed in greater detail below, but, in short, the GERA governs individuals who do not qualify as an "employee" under Title VII. Id. As such, the GERA serves as the proper avenue for recovery for individuals who are excluded from coverage under Title VII. Id.

6

Based on the footnote on the third page of the Amended Complaint, it appears that plaintiff intends to plead claims under both Title VII and GERA. (D.E. No. 55 at 3). Thus, defendants move to dismiss these claims on the basis that plaintiff cannot recover under both Title VII and the GERA, and also because both claims fail as a matter of law for the reasons below.

The defendants first turn to plaintiff's Title VII claims. Plaintiff asserts various claims for violations under Title VII of the Civil Rights Act of 1964 against all three individual defendants, including claims for disparate treatment, hostile work environment, and retaliation. (D.E. No. 55 ¶¶ 200-212).

First, these claims should be dismissed against former chief deputy Lawrence Bullock and former captain Weldon Bullock in their individual capacities as "Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'" Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999) (citing Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1999) (holding that supervisors cannot be held liable in their individual capacity under Title VII because they do not fit within the definition of an "employer"). Moreover, this Court has routinely dismissed Title VII claims against employees who hold supervisory positions, but are not employers. See, e.g., Amos v. Welles, No. 4:18-CV-28-D, 2018 WL 5305537, at *1 (E.D.N.C. Oct. 25, 2018); Campbell v. Speedway, LLC, No. 5:18-CV-64-BO, 2018 WL 8332684, at *1 (E.D.N.C. May 21, 2018) ("Defendant Yelverton has moved to dismiss on the grounds that Title VII does not provide for individual liability. This is true. Supervisors are not liable in their individual capacities for Title VII violations."), appeal dismissed, 740 F. App'x 331 (4th Cir. 2018); Stancil v. Rex Hosp., No. 5:12-CV-812-D, 2013 WL 3873228, at *1 (E.D.N.C. July 25, 2013) (dismissing "supervisor" who was "not a proper defendant under Title VII"); Boyd v. Koch Foods, No. 5:10-CV-349-D, 2011 WL 2413844, at *3 (E.D.N.C. June 10, 2011). Accordingly,

7

plaintiff's claims under Title VII against the Bullocks in their individual capacities should be dismissed.

Second, only former sheriff White, in his official capacity, may be regarded as an "employer" within the meaning of Title VII. See, e.g., Efird v. Riley, 342 F.Supp.2d 413, 420 (M.D.N.C. 2004) (in a Title VII dispute, "the sheriff, rather than the department or associated county, may be held liable for employment law violations within the department."). Specifically, Title VII defines an "employer" as "a person engaged in an industry effecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . " 42 U.S.C. § 2000e(b). Based on this language, only former sheriff White in his official capacity may be liable under Title VII, and, thus, plaintiff's claims against him in his individual capacity should be dismissed. Bowman v. Reid, No. 5:14CV179-RLV, 2015 WL 4508648, at *4 (W.D.N.C. July 24, 2015), aff'd sub nom. Gosnell v. Catawba Cty., 646 F. App'x 318 (4th Cir. 2016).

In sum, the defendants move to dismiss plaintiff's Title VII claims against them in their individual capacities on the basis that Fourth Circuit precedent expressly prohibits individual capacity claims under Title VII against defendants who are not "employers." Baird ex. rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (holding that Title VII does not provide for suits against individual defendants); see also Lissau v. S. Food Serv. Inc., 159 F.3d 177, 180 (4th Cir. 1998) ("[E]very circuit that has confronted this issue . . . has rejected claims of individual liability . . . We join these courts and reiterate that supervisors are not liable in their individual capacities for Title VII violations."); Ward v. Coastal Carolina Health Care, P.A., 597 F.Supp.2d 567, 570 (E.D.N.C. 2009) ("[I]ndividual employees . . . are not liable in their individual capacities for Title

VII violations because such individuals are not 'employers' under Title VII."). Accordingly, any claims under Title VII against the defendants in their individual capacities should be dismissed.

### III. Plaintiff's Claims Under the GERA Should Be Dismissed Because the Plaintiff Failed to Follow the Requirements Under Said Statute to Seek Relief First Through the EEOC and the United States Court of Appeals, and Because Plaintiff Is Not Among the Class of Individuals Permitted to Seek Relief Under the GERA.

First, plaintiff's claims under the GERA should be dismissed based on the fact that plaintiff has failed to comply with the appeals process under the Act. Specifically, "the GERA mandates that a plaintiff first seek administrative relief with the [Equal Employment Opportunity Commission] and then appeal any adverse administrative decision to the United States Court of Appeals." Crain, 419 F. Supp. 2d at 788. Thus, assuming, *arguendo*, that the plaintiff is entitled to relief under the GERA, he has failed to first seek administrative relief under this Act with the EEOC and has likewise failed to appeal any adverse administrative decision to the United States Court of Appeals. Based on this mandate, these claims should be dismissed as this Court is not the proper court to decide plaintiff's claims under GERA. Id.

Notwithstanding plaintiff's failure to comply with the GERA's mandates for administrative relief, plaintiff's claims under this Act also fail because plaintiff's position as a patrol deputy does not satisfy the criteria for exclusion from "employee" status under Title VII, as discussed below.

Title VII allows only certain individuals to pursue remedies under the GERA and through its administrative procedures. See 42 U.S.C. §§ 2000e(f), 2000e-16. More specifically, individuals who do not qualify as "employees" under Title VI are allowed to, and in fact must, pursue remedies under the GERA and its administrative and judicial processes. Crain v. Butler, 419 F. Supp. 2d 785, 787 (E.D.N.C. 2005). At a sheriff's office, patrol officers, like the plaintiff, are low in the chain of command and do not qualify among those allowed to sue under the GERA.

9

As a result, the plaintiff is considered an "employee" under Title VII and therefore he cannot proceed under the GERA.

"[A] plaintiff's status as an employee under Title VII is a question of federal, rather than of state, law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." Curl v. Reavis, 740 F.2d 1323, 1327 (4th Cir. 1984) (quoting Calderon v. Martin County, 639 F.2d 271, 272-73 (5th Cir. 1981). Ultimately, Title VII defines an employee as "an individual employed by an employer," 42 U.S.C. § 2000e(f), "but exclude[s] several categories of individuals from 'employee' status." Crain v. Butler, 419 F. Supp. 2d 785, 788 (E.D.N.C. 2005). These excluded individuals who must pursue remedies under the GERA include "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." Id. (citing 42 U.S.C. § 2000e(f)). In short, this language creates three distinct categories of individuals hired by elected state officers who must pursue remedies under the GERA: "(1) members of the officer's personal staff; (2) appointees on the policy making level; and (3) immediate advisers to the officer concerning the 'exercise of the constitutional or legal powers of the office.'" Crain, 419 F. Supp. 2d at 788 (citing 42 U.S.C. § 2000e(f)). The plaintiff is not among those individuals and thus cannot proceed under the GERA.

North Carolina deputy sheriffs are not elected officials, so whether the plaintiff may pursue remedies under the GERA turns on whether he fits into one of these categories. Here, there is no evidence that plaintiff was ever called upon to make policy for the Vance County Sheriff's Office or to act as an immediate advisor to former sheriff White. As such, the only exception relevant to

10

this analysis is whether plaintiff is considered a member of former sheriff White's personal staff. See Chism v. N. Carolina Gen. Assembly, No. 5:15-CV-348-FL, 2016 WL 3920211, at *3 (E.D.N.C. July 15, 2016) (finding that the plaintiff's position as the Director of Fiscal Research for the General Assembly fell within the category of an appointee "on the policy making level" as her position was appointed by elected officials and involved significant exercise of discretionary power and required meaningful input into governmental decision-making). However, it is clear that, as a patrol deputy, plaintiff does not so qualify.

The "personal staff" category is construed narrowly. Id; see also Owens v. Rush, 654 F.2d 1370, 1375 (10th Cir. 1981) (exception applies "only to those individuals who are in *highly intimate and sensitive positions of responsibility on the staff of the elected official*.") (emphasis added). When the case involves a sheriff's office, the Fourth Circuit considers specific criteria in determining whether an individual falls within this "personal staff" exclusion. Crain, 419 F. Supp. 2d at 790; Cromer v. Brown, 88 F.3d 1315, 1323 (4th Cir. 1996) (establishing factors for consideration). Specifically, the Fourth Circuit considers the following:

(1) Whether promotion of the employee is solely up to the sheriff;
(2) Whether the employee occupies a position *high* in the chain of command;
(3) Whether the employee has a highly intimate working relationship with the sheriff;
(4) Whether the employee contributes to the making of policy decisions in the sheriff's department;
(5) Whether the position in question was created pursuant to state law and compensated pursuant to state law or whether the position was funded from the sheriff's discretionary budget;
(6) What the full range of the individual's duties were;
(7) Whether the individual worked on the sheriff's campaigns; and
(8) Whether the employee worked under the direction of the sheriff or someone else.

Crain, 419 F. Supp. 2d at 790 (citing Cromer, 88 F.3d at 1323).

For example, in Townsend v. Shook, 323 F. App'x 245, 250 (4th Cir. 2009), the court found that the plaintiff's role as chief deputy sheriff created an intimate and sensitive position of trust between the plaintiff and the sheriff, and, as such, plaintiff fell under Title VII's exclusion of

11

protection for the "personal staff" of an elected official. Specifically, the court found that as a chief deputy, the plaintiff was second in command of the sheriff's office, that she "wielded the authority to issue commands and directives" in the name of the sheriff, and that she served as the acting sheriff in the sheriff's absence. Id. Additionally, in her role as chief deputy, the plaintiff was also the policy administrator for the sheriff's office, which required heavy involvement in drafting policy and ensuring that such policies were carried out. Id. Similarly, she was responsible for handing all internal investigations, drafting and administering the office budget, and chairing the hiring committee. Id. Despite the fact that the sheriff had the sole power to hire or fire her, the totality of the circumstances confirmed that her position as chief deputy was "quintessentially one that excluded her from coverage under Title VII based on her position's highly intimate working relationship with the sheriff." Id.

The Fourth Circuit has determined that low-level officers, such as a road deputies and correction officers, are not considered members of the sheriff's "personal staff." See United States v. Gregory, 818 F.2d 1114, 1117 (4th Cir. 1987) (reversing a district court conclusion that a road deputy fell within the "personal staff" exception of Title VII on the bases that (1) road deputies "function primarily as typical policeman who administer the laws and 'policies' of their superiors; (2) there was "no evidence that road deputies are called upon to render advice to the sheriff respecting his policy decisions or the proper exercise of his powers;" and because (3) road deputies at this particular sheriff's office were not high within the chain of command and did not occupy "a highly intimate and sensitive status vis-à-vis the sheriff"); see also Brewster v. Barnes, 788 F.2d 985 (4th Cir. 1986) (holding that the position of a corrections officer did not fall within the "personal staff" exemption"); Curl, 740 F.2d at 1328 (concluding that a dispatcher-matron and secretary to the sheriff's office was not a member of the sheriff's "personal staff").

Here, plaintiff's former position as a patrol deputy, identical to the road deputy in Gregory, 818 F.2d at 1117, does not fall within the "personal staff" exception of Title VII. First, there is no dispute that that plaintiff, like all North Carolina sheriffs' deputies, served at the pleasure of the sheriff, and that former sheriff Peter White had the sole ability to hire, fire, and promote his deputies. Unlike a chief deputy, plaintiff's position as a patrol deputy was not high within the chain of command or one which allowed him any responsibility or involvement in rendering advice to the sheriff regarding policy decisions. This is evidenced by the chain of command chart in plaintiff's Amended Complaint, (D.E. No. 55 ¶ 28), which illustrates his lower-level status as a patrol deputy in comparison to other officers who held the ranks above him of chief deputy, captain, lieutenant, sergeant, and even corporal.

Additionally, plaintiff's position as a patrol deputy did not involve a highly intimate working relationship with former sheriff White. Instead, plaintiff worked most closely with his fellow patrol deputies, and was directly supervised by individuals other than former sheriff White. Last, there is no evidence that plaintiff worked on any of former sheriff White's campaigns. Plaintiff does not allege that he worked on any of former sheriff White's campaigns, and there is no evidence that he did. In fact, plaintiff was hired in 2017 and former sheriff White never ran for sheriff after that. Taken in totality, it is clear that plaintiff, in his position as a patrol deputy, was not a member of former sheriff White's "personal staff." As such, he cannot pursue remedies under the GERA, and these claims should be dismissed.

### IV. Plaintiff's Breach of Contract Claim Against Defendants Lawrence Bullock and Weldon Bullock Should Be Dismissed Because No Contractual Relationship Exists Between Plaintiff and These Defendants, Who Were Not the Plaintiff's Employer.

Count VII of plaintiff's cause of action is a breach of contract claim against defendants Peter White, Lawrence Bullock, and Weldon Bullock. (D.E. No. 55 ¶¶ 213-223).

A breach of contract claim under North Carolina law has two elements: (1) the existence of a valid contract, and (2) breach of the terms of that contract. Bigelow v. Sassafras Grove Baptist Church, 247 N.C. App. 401, 404, 786 S.E.2d 358, 362 (2016).

In his Amended Complaint, plaintiff alleges that he had a two-year contract with the Vance County Sheriff's Office. (D.E. No. 55 ¶ 22). This is not true, as it is well-established in North Carolina that deputy sheriffs are employed at will. See Spencer v. Byrd, 899 F. Supp. 1439, 1442 (M.D.N.C. 1995); see also Young v. Bailey, 368 N.C. 665, 668, 781 S.E.2d 277, 279 (2016) (citing Garner v. Rentenbach Constructors, Inc., 305 N.C. 567, 569, 515 S.E.2d 438, 439-40 (1999), and Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331, 492 S.E.2d 420, 422 (1997) (citations omitted)) ( "North Carolina is an employment-at-will state," which means that "[p]arties to a contract may end their relationship at any time for any reason when that agreement does not establish a defined term of employment.").

Moreover, under North Carolina law, only sheriffs have exclusive control over the employment of their deputies. See Spencer v. Byrd, 899 F. Supp. 1439, 1442 (M.D.N.C. 1995). Indeed, the sheriff, as part of his statutory and official duties, determines who to hire, promote, and terminate. N.C. Gen. Stat. § 153A-103.

The sheriff's exclusive control over his deputies extends to all deputies, including those who hold the rank of chief deputy and captain, as defendants Lawrence Bullock and Weldon did during their tenure at the Vance County Sheriff's Office. As such, defendants Lawrence Bullock and Weldon Bullock had no control over plaintiff's at-will employment, including former sheriff's White decision to terminate him. Thus, they cannot be a party to any purported employment contract he may have had. Spencer, 899 F. Supp. at 1442. As a matter of law, because only former

14

sheriff White was plaintiff's employer, plaintiff cannot recover against defendants Lawrence Bullock and Weldon Bullock for breach of contract, and these claims should be dismissed. Id.

V. **Plaintiff's Cause of Action for "Ratification" Should Be Dismissed Because Ratification Is a Legal Theory, Not an Independent Cause of Action.**

Count XIV of Plaintiff's cause of action is titled "ratification," and is asserted against only Sheriff White and Chief Deputy Bullock. (D.E. No. 55 ¶¶ 276-280).

Ratification is a legal theory under which a plaintiff may seek to hold the ultimate decision maker liable under § 1983 for ratifying the acts of its agents. *Franks*, 2020 WL 424946, at *4; see, e.g., Leach v. Shelby Cty. Sheriff, 891 F.2d 1241, 1248 (6th Cir. 1989). It is not, however, a cognizable or independent cause of action under federal or North Carolina law. Id. To the extent that Plaintiff argues that Sheriff White and/or Chief Deputy Lawrence Bullock should be liable under a theory of ratification, Plaintiff's Amended Complaint fails because it contains no more than conclusory allegations regarding any alleged ratification. See Darden v. Wayne Cty. Bd. of Educ., No. 7:17-CV-84-BO, 2018 WL 4778046, at *3 (E.D.N.C. Oct. 3, 2018) (dismissing complaint when the plaintiff failed "to offer more than conclusory allegations that the WCBOE was aware of any alleged constitutional violation and either participated in or condoned it"). Specifically, Plaintiff's Complaint merely alleges that Sheriff White and Chief Deputy Lawrence Bullock ratified the actions of Lieutenant Campbell because they "knew or should have known of Lieutenant Campbell's discriminatory conduct towards Mr. White," and that Sheriff White and Chief Deputy Lawrence Bullock's "words and conduct indicate[] approval of or acquiescence to Lieutenant Campbell's conduct towards [ ] Mr. White." (D.E. No. 55 ¶¶ 276-280).

As alleged in his Amended Complaint, Plaintiff's cause of action of ratification is no more than a legal theory of liability and not an independent cause of action. Accordingly, this purported claim should be dismissed as such against all defendants, including Western Surety.

15

## VI. Plaintiff's Claims for Punitive Damages Against the Defendants in Their Official Capacities Fail as a Matter of Law and Should Be Dismissed Because Neither Federal Not State Law Allows Such Claims.

Count XVI of plaintiff's Amended Complaint alleges punitive damages against all defendants (D.E. No. 55 ¶¶ 287-289). Defendants move to dismiss the official capacity claims for punitive damages against former sheriff Peter White, former chief deputy Lawrence Bullock, and former captain Weldon Bullock because neither federal nor state law allows such claims.

### A. Claims Under Federal Law

With respect to claims under 42 U.S.C. §§ 1981 and 1983 and Title VII, punitive damages may only be awarded in certain circumstances, but not against local governments. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) (municipalities are immune from punitive damages under § 1983). Thus, by extension, punitive damages may not be awarded against a municipality or a municipal officer acting in his official capacity, because a lawsuit against an officer in his official capacity equates to a lawsuit against the municipality itself. Staley v. Lingerfelt, 134 N.C. App. 294, 299–300, 517 S.E.2d 392, 396 (1999); see Iglesias v. Wolford, 539 F. Supp. 2d 831, 841 (E.D.N.C. 2008) (citing City of Newport and stating that municipal officials are not liable for punitive damages in their official capacities under 42 U.S.C. § 1983).

Because a cause of action against an against an officer in his official capacity is essentially a claim against the government entity, plaintiffs may not seek punitive damages against officers in their official capacities. See Kentucky v. Graham, supra, at 165–66; Crain, 419 F. Supp. 2d 785 (under North Carolina law, plaintiff could not recover punitive damages against the sheriff, an officer of local government, in his official capacity).

As discussed, plaintiff has sued all defendants in both their official and individual capacities. In light of the aforementioned reasons, the claims for punitive damages against the defendants in their official capacities must be dismissed.

B. Claims Under State Law

Additionally, under North Carolina law, a plaintiff may not recover punitive damages against a unit of local government unless such damages are expressly authorized by statute. Baucom's Nursery Co. v. Mecklenburg Cty., 89 N.C. App. 542, 545, 366 S.E.2d 558, 560 (1988); Long v. City of Charlotte, 306 N.C. 187, 206-08, 293 S.E.2d 101, 113-15 (1982) (holding that, absent specific statutory authorization, such as North Carolina's wrongful death statute, punitive damages cannot be asserted against local governments); Jackson v. Hous. Auth. of City of High Point, 316 N.C. 259, 341 S.E.2d 523 (1986). This applies to official capacity suits against public officials as well since "official-capacity suits are merely another way of pleading an action against the governmental entity," not the individual official. Mullis v. Sechrest, 347 N.C. 548, 554-55, 495 S.E.2d 721, 725 (1998).

The defendants are unaware of any statutory authority that would allow for punitive damages under state law against the defendants in their official capacities in this case, and the plaintiff offers none. Thus, Plaintiff's state law claims for punitive damages against the defendants in the official capacities should be dismissed.

## CONCLUSION

For the reasons and authorities cited herein, the defendants respectfully request that this Court grant their partial motion to dismiss with prejudice.

17

Case 5:19-cv-00467-BO   Document 58   Filed 01/20/21   Page 17 of 19

Respectfully submitted, this 20th day of January, 2021.

/s/ Erin H. Epley
Christopher J. Geis, N.C.S.B. No.25523
Erin H. Epley, N.C.S.B. No. 50690
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: Chris.Geis@wbd-us.com
Erin.Epley@wbd-us.com
*Attorneys for defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an attorney at law licensed to practice in the State of North Carolina, is attorney for defendants in this matter, and is a person of such age and discretion as to be competent to serve process.

I hereby certify that on January 20, 2021, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such to the following CM/ECF participant:

Sharika M. Robinson
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: 704-561-6771
Facsimile: 704-561-6773

*Attorney for Plaintiff*

/s/ Erin H. Epley
Erin H. Epley, N.C.S.B. No. 50690
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: Erin.Epley@wbd-us.com
*Attorney for defendants*