IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:19-cv-00467-BO

JUSTIN J. WHITE,

    Plaintiff,

v.

VANCE COUNTY, NORTH CAROLINA, VANCE COUNTY SHERIFF'S OFFICE, PETER WHITE, in his official and individual capacities, LAWRENCE D. BULLOCK, in his official and individual capacities, WELDON WALLACE BULLOCK, in his official and individual capacities, CURTIS R. BRAME, in his official and individual capacities, WESTERN SURETY COMPANY a division of CNA SURETY.

    Defendants.

**PLAINTIFF JUSTIN WHITE'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

---

Comes Now Justin White, Plaintiff in the above-styled action, by and through counsel, to respond to Defendants' Partial Motion to Dismiss.

## I. Introduction

Defendants, in their Partial Motion to Dismiss, raise issues with a number of Plaintiff's pleadings. Certain of these arguments, such as Defendant's arguments regarding claims under the Government Employee Rights Act ("GERA") of 1991 and under Title VII of the Civil Rights Act ("Title VII") were pleaded in the alternative and so Plaintiff would conditionally agree to their dismissal at a later stage. That being said, Plaintiff maintains that other points of liability raised in his Complaint are well pleaded

and should not be dismissed. Furthermore, should Defendants' motion be granted in its entirety, this would not destroy Plaintiff's case as significant claims against Defendants would survive.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") permits a court to dismiss an action which fails to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). To satisfy the pleading requirements, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Factual allegations are taken to be true and must be sufficient to raise the right to relief above the speculative level. *Id.* Accordingly, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S., 129 S. Ct. 1937, 1949 (2009). The Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly* at 570; *see also*, *Sanchez v. Truse Trucking, Inc.*, 74 F. Supp. 3d 716, 720 (M.D.N.C. 2014).

## III. Argument

<u>1. Claims Asserted Against Defendants Lawrence Bullock and Weldon Bullock in Their Official Capacities Illustrate Different Acts Within The Case.</u>

Defendants seek dismissal of all claims against Defendants Bullocks in their official capacities. Defendants contend that Plaintiff's allegations against Bullock Defendants are duplicative claims against Defendant White in his official capacity.

Plaintiff's allegations against Defendants in their official capacity are not duplicative. Different individuals acted in each of their official capacities and contributed to the discrimination suffered by Plaintiff in different ways. Even if charges in official capacity can be considered as claims against the office or the entity represented by an individual who is acting in his official capacity, this does not make Plaintiff's charges duplicative. Ultimately, if the acts and omissions of each Defendant who acted in an official capacity may be imputed to Sheriff White, in his official capacity, it is still appropriate to present charges in this manner due to the different acts or omissions carried out by each individual named in this case. Furthermore, Defendants' earlier position in this litigation was that the Sherriff in his official capacity was the entity that was responsible for the actions of deputies, in their official capacities. One is not mutually exclusive to the other and the claims alleged in the Complaint are not duplicative of one another.

The majority of Plaintiff's charges against Individual Defendants in their official capacities speak to different sets of conducts. For example, it is alleged that Defendant Lawrence Bullock, in his capacity as the investigator of Plaintiff's use of force, failed to carry out a thorough and unbiased investigation conforming to notions of due process. This is not alleged against Defendant Weldon Bullock, who did not carry out this investigation. Defendant Lawrence Bullock's actions can be imputed to Sheriff White through ratification, but Sheriff White, upon information and belief, did not take part in

the actual investigation. Therefore, the act was carried out by Defendant Lawrence Bullock in his official capacity.

In addition, the claims are not duplicative because, although there is some overlap in the exact nature of the charges, different individuals in their official capacities carried out different parts of the scheme which resulted in Plaintiff's termination. Therefore, it is appropriate to charge Defendants separately in their individual capacities in order to clearly articulate which individuals are responsible for which conduct. Whether, through a process of ratification, all of these actions are attributed to Sheriff White, is separate from the fact that different individuals carried out these actions.

Additionally, and in the alternative, Plaintiff is comfortable, through a theory of ratification, to consider these counts as against Sheriff White, in his official capacity. However, Plaintiff would strenuously object to the complete removal of the official capacity claims against Defendants Lawrence Bullock and Weldon Bullock. If the Court, considers these Defendants' actions as the actions of Sheriff White in his official capacity, this is acceptable to Plaintiff but not to exclude them all together.

2. Plaintiff's Title VII Claims

Defendant claims that all claims against Defendants should be dismissed in their individual capacities. Plaintiff is entitled to recover under Title VII against Defendants in both their individual and official capacities. Should the claims brought in Plaintiff's individual capacities be dismissed, the claims against Defendants in their official capacities is still proper. Furthermore, Plaintiff's pleadings under Title VII and the GERA are properly pleaded and should be considered as alternatives to one another.

Plaintiff has pleaded claims under both Title VII and the GERA. Defendants seek to claim that the GERA exists to cover individuals who are not covered under Title VII

and, therefore, Plaintiff cannot recover under both. For reasons discussed below, Plaintiff agrees that he cannot recover under both theories, but this does not mean that both theories cannot be pleaded as alternatives to one another, as is done in Plaintiff's Complaint.

Defendants, in their motion, maintain that Plaintiffs claim under the GERA should be dismissed because Plaintiff meets the definition of employee, and Sheriff White meets the definition of an employer, under Title VII. To the extent that Defendants agree with Plaintiff that he is entitled to bring a suit under Title VII and, therefore, does not need to sue under the GERA, Plaintiff agrees.

Plaintiff is entitled to damages under Title VII as relating to Defendants in their individual capacities. Defendants claim that, because Sheriff White in his official capacity is subject to Title VII and Plaintiff may sue Defendant White under Title VII, charges against Defendant White in his individual capacity should be dismissed. Plaintiffs do not agree with this conclusory and seemingly disconnected statement at this point. The idea that one cannot sue under Title VII and also charge a defendant in their individual capacity does not seem to follow from the cases which they have stated. Further, there is nothing to suggest that a Title VII claim against an employer cannot be in regards to that employer's individual capacity, especially in this matter where Defendants have not provided a concrete statement related to Defendant White's role.

<u>3. Plaintiff is willing to set aside his claim under the GERA to the extent that Defendants admit that Sheriff White is an employer under Title VII and that Plaintiff is an employee under Title VII.</u>

Plaintiff pleaded alternative theories of liability in his Complaint, which included claims under both Title VII and the GERA. To the extent that Defendant agrees that Sheriff White was an employer of Plaintiff during his tenure with the Vance County

Sheriff's Office ("VCSO"), Plaintiff acknowledges that he would not be covered under the GERA. Therefore, while Plaintiff has pleaded that he has standing to sue under the GERA, this is in the alternative to Plaintiff's assertion that he has standing to sue under Title VII. Thus, to the extent that Defendants admit that Plaintiff has standing to sue under Title VII, Plaintiff agrees to dismiss his claims under the GERA.

4. Plaintiff Had Contracts With Lawrence Bullock and Weldon Bullock.

Defendants contend that Plaintiff had a contract of employment with Defendant White, not the Bullocks. Plaintiff had separate contracts with Lawrence Bullock, Weldon Bullock, and, indeed, every deputy of the VCSO, in addition to his employment contract with Sheriff White. These contracts, implied by law, stem from Plaintiff's rights, among others, to be evaluated fairly and free from judgments based on race and to be treated with dignity. Under North Carolina law, a contract need not be in writing.

In this case, Plaintiff's contract with Defendants Lawrence Bullock and Weldon Bullock was not one directly concerning his employment, as his contract with Sheriff White was. Instead, Defendants Lawrence Bullock and Weldon Bullock owed Plaintiff the obligation of fair evaluations and reviews. There are policies directed at how these officials would act. Defendants have a none discrimination policy. Thus, discrimination is a breach of that contract. Furthermore, there are other constitutional norms that materialize into viable contract rights. And every contract has in it the duty to act in good faith. There need not be a typical writing to be recognized by law.

5. Regardless of whether ratification is a charge that Plaintiff can collect on, Plaintiff may allege ratification of Defendants actions by the VCSO and Sheriff White.

Ratification, as a legal theory which is necessary to tie together the actions of Defendants, and which has its own set of criteria and factors, is properly pleaded in

Plaintiff's Complaint and ought not be dismissed. Defendants claim that, because ratification is not a standalone cause of action, this count of Plaintiff's Complaint should be dismissed. Plaintiff disagrees. Ratification in Plaintiff's Complaint is pleaded as such as to illustrate the responsibility of Sheriff White for the actions of his subordinates and to outline assert the facts and criteria which must be considered when one makes a determination regarding whether ratification took place. The fact that ratification, as a standalone cause of action, does not lead to recoverable damages is separate from its status as an allegation of specific acts and omissions by Defendants which lead to liability for other torts. As such, there is good reason to maintain this count and it the court should not dismiss it.

Ratification, as a theory or cause of action, is described as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account and may be inferred from failure to repudiate an unauthorized act . . . or from conduct . . . inconsistent with any other position than intent to adopt the act." *Boggess v. Roper*, No. 3:04cv92, 2006 U.S. Dist. LEXIS 63057, at *46-47 (W.D.N.C. Sep. 1, 2006) (citation omitted).

Plaintiff includes ratification as a Count in his Complaint in order to demonstrate the manner in which the liability in the Vance County Sheriff's Office flows from the acts of deputies within the VCSO, to their supervisors and, ultimately, to Sheriff White. Whether this is a theory that contains a cause of action which would allow Plaintiff to collect an award at trial is immaterial. It is an important aspect of Plaintiff's claim, deserving of its own Count such that Plaintiff can fully explain the mechanisms through which Defendants are liable for their actions against him.

Despite the protestations of Defendants, Plaintiff's allegations of ratification are also far from merely "conclusory." "[W]here a complaint alleges the existence of municipal policies, alleges that officials with final policymaking authority condoned and ratified unconstitutional conduct of subordinates, and alleges that the policies proximately caused the alleged constitutional violation, the allegations are sufficient at the motion to dismiss stage[.]" *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 899 (M.D.N.C. 2011). This language demonstrates three conditions which would give rise to a sufficient allegation for the purposes of a surviving a motion to dismiss. The case law does not establish that these factors are all necessary, nor does it establish that these are the only factors that may be considered. Nevertheless, Plaintiff's pleadings address each of these factors. In the case before us, Plaintiff asserts that under a theory of *Monell Liability*, there existed a policy, custom, practice or procedure at the Vance County Sheriff's Office that deprived Plaintiff of his rights under the constitution. Plaintiff further alleges Sheriff White, who had final policymaking authority, condoned and ratified such unconstitutional conduct in that, at a minimum, he was fully aware of Plaintiff's complaints and chose not to take action to correct those practices and/or procedures which resulted in discrimination towards Plaintiff. Additionally, Plaintiff has pleaded that Defendant White took specific actions which advanced the discrimination against him, both as perpetrated by others and ratified by Defendant White, such as adopting Defendant Lawrence Bullock's recommendation to terminate his employment, or carrying out specific violations on his own. Thus, these allegations are well pleaded and hardly conclusory.

Plaintiff receives the benefit of its Complaint being taken as true and accurate for the purposes of pleading. Plaintiff maintains that, because Plaintiff complained

numerous times through the proper chain of command, including communications with Sheriff White, and his complaints went unheeded, at best, or led to retaliation, there was a clear ratification of the conduct occurring at lower levels of the VCSO. Plaintiff did in fact state that Defendants "knew or should have known of Lieutenant Campbell's discriminatory conduct towards Mr. White," but this was hardly the only connection that Plaintiff drew in his complaint.

Even if Plaintiff had only stated his case as the two lines quoted by Defendants in their memorandum, this would still not be merely conclusory. However, the behavior of all parties and non-parties which had a hand in the discrimination against Plaintiff are well detailed and serve to support the statements that Defendants cite.

### 6. Plaintiff is entitled to punitive damages under federal and state law.

Defendants contend that no matter how egregious a defendant's actions are, punitive damages cannot be awarded in this matter under federal law because the suit is against officials in their individual and official capacities. First, Defendants cite to Section 1983 cases, and without explanation, attempt to link in Title VII. Such a position is concerning, because Defendants concede that Defendant White is an employer and that Plaintiff White is an employee of an employer. Because of that employment relationship, Title VII expressly provides for punitive damages.

Plaintiff is entitled to plead recovery for punitive damages under Title VII because punitive damages may be awarded if there is actual malice or reckless indifference on the part of the Defendants. *Kolstad v. ADA*, 527 U.S. 526, 529 119 S. Ct. 2118 (1999). Plaintiff alleges such malice and/or reckless indifference in his complaint and, therefore, the basic criteria for receiving punitive damages is met.

Plaintiff's case is distinguished from Defendants' argument because Defendant White is not a municipality. The fact that he is being sued in his individual capacity as Sheriff is not the same as suing a municipality.

Furthermore, and to the extend Defendants are asserting governmental immunity, per the Complaint, they are not entitled to it. First, Defendants abrogated any immunity by entering into a contract with Plaintiffs. *State v. Smith*, 289 NC 303 (1976) ("We agree with those courts which say the State, by entering into a contract, agrees to be answerable for its breach and waives its immunity from suit to that extent. To hold otherwise, these courts say, is to ascribe bad faith and shoddy dealing to the sovereign. They are unwilling to do so; and we are too."). Defendants are liable for their breaches, even in their governmental capacities.

Moreover, and simply put, Defendants do not have immunity from their torts as a result of performing proprietary functions.[1] Immunity protects government employees who perform governmental functions. These were not governmental functions. Directly discriminating against someone because of race is not a government function. Falsely reporting employment activity is not a government function. Terminating an employee for a pretextual reason, is not a government function. Conducting bias investigations, is not a government function. Allowing homophobic conduct is not a government functions. These Defendants are not protected by immunity. Governmental immunity is not a bar to this action.

As a final matter, Defendants maintain that—despite the allegations in the Complaint—and although they provide no legal support for their position, Plaintiff is not

---

[1] Immunity is waived with the purchase of insurance, too, even if the functions are governmental.

entitled to punitive damages under state law. That is not true. North Carolina has a specific punitive-damages statute that provides for the recovery of punitive damages on the several state-law claims. Defendants attempt to make an immunity argument and conclude that these employees, in their official capacities are governmental entities, but at the same time, Defendants claim that they are not entities. Defendants cannot have it both ways. These Defendants are not municipalities. Nevertheless, such dismissal would not impact the fact that Plaintiff is entitled to recover punitive damages, the questions just becomes from whom.

## IV. Conclusion

For the reasons identified above, Plaintiff requests that the Court **DENY** Defendants' Partial Motion to Dismiss. Respectfully submitted, this 9th day of February, 2021.

*/s/ Sharika M. Robinson*
Sharika M. Robinson
The Law Offices of Sharika M. Robinson
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561-6771
Telefax: (704): 561-6673
Email: srobinson@sharikamrobinsonlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing **DEFENDANTS' PARTIAL MOTION TO DISMISS** with the Clerk of Court using the court's CM/ECF system, which will send electronic notice to all counsel of record, as follows:

Christopher J. Geis
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: Chris.Geis@wbd-us.com
*Attorney for Defendants*

Respectfully submitted, this 9th day of February, 2021.

*/s/ Sharika M. Robinson*
Sharika M. Robinson
The Law Offices of Sharika M. Robinson
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561-6771
Telefax: (704): 561-6673
Email: srobinson@sharikamrobinsonlaw.com
*Attorney for Plaintiff*