6. W. Bullock – B.8 Treatment of Prisoners

# Treatment of Persons In and Out of Custody      Directive B.8

I. **POLICY**

This policy establishes guidelines, procedures for deputies and other personnel with regards to the treatment of persons in and out of custody. It shall be the policy of the Vance County Sheriff's Office to take the precautions necessary while transporting prisoners to protect the lives and safety of personnel, the public, and the person taken into custody. All persons under arrest or in custody shall be searched and handcuffed prior to transportation.

II. **TREATMENT OF PERSONS IN CUSTODY**

Personnel shall not mistreat persons who are in their custody. They shall handle such persons in accordance with established Sheriff's Office procedures, applicable laws, and regulations.

III. **VEHICLE STOPS**

- Vehicle stops may be based on any of the following:
    - Probable cause to believe that a crime or traffic violation has occurred or is about to occur
    - Reasonable suspicion that a crime or traffic violation has occurred or is about to occur (Deputies must be able to articulate their suspicions)
    - In connection with a lawfully conducted checking station

IV. **FOOT PURSUIT (JUMP AND RUN)**

If a suspect jumps and runs the escape must be reported immediately to the Vance Central. The reporting deputy/personnel shall give a physical and clothing description of the suspect, the location of the jump and run, any weapon information, and the last known method and direction of travel. Vance Central personnel shall promptly dispatch information concerning the escape to the other deputy patrols, and affected law enforcement agencies (i.e. Sheriff's Department, Police Department, the North Carolina Department of Corrections, or the North Carolina State Highway Patrol).

The safety Vance County Deputies is paramount in these circumstances. A deputy may not pursue a suspect on foot prior to contacting Vance Central and providing the required information and request back-up.

If the escapee is not apprehended, the affected deputy may have the violator's vehicle towed and stored (if applicable), only when authorized by law and Sheriff's Office policy.

## V. DETENTION

Motorists stopped for investigation of routine criminal or traffic violations may be detained for a reasonable period of time sufficient to conduct those duties normally associated with traffic stop investigations. Such investigations include, but are not limited to; checking the status of the driver's license, vehicle registration, vehicle identification number (VIN), completing any related paperwork, and use of a Canine Team to conduct a vehicle sniff for controlled substances or other contraband.

Deputies shall not conduct violator/suspect interviews in the patrol car unless extenuating circumstances exists. Violator/suspect interviews shall be conducted with the violator/suspect seated in his/her own vehicle or in a safe location outside the patrol vehicle. Deputies shall not check the status of a violator's/suspect's license and registration, or make any criminal inquiries while the violator is seated in the patrol vehicle unless the violator/suspect is properly handcuffed as described in Section X below. Exceptions may be made during minor traffic, or criminal violations during inclement weather or when the violator/suspect is elderly, frail or has an obvious medical condition that necessitates an accommodation.

If a deputy determines that, under the circumstances, it is necessary to handcuff a violator/suspect or vehicle occupant prior to determining whether an arrest is warranted, the deputy shall inform the violator/suspect or occupant that he/she is not under arrest and that he/she is being temporarily detained and handcuffed for his/her own safety and for the safety of the deputy. The violator, vehicle occupant, or other suspect(s) shall be handcuffed with his/her hands behind his/her back as more fully described in Section X below.

## VI. INTERROGATION

Deputies shall be thoroughly familiar with and comply with all Federal and State Laws, and Regulations as it relates to the interrogation of suspects.

Violators/suspects are not normally considered to be "in custody" for Miranda purposes during an investigative stop. Accordingly, deputies are not normally required to give Miranda warnings prior to formally arresting apprehending a violator/suspect. If a violator/suspect is handcuffed for any reason, he/she should not be questioned or otherwise interrogated without first being given Miranda warnings; this includes a suspect who is handcuffed during detention for the safety of the officer.

## VII. VEHICLE / PROPERTY SEARCHES

### Consent Searches

- Voluntary consent to search by the owner/operator of the vehicle, other owner of property confers authority to conduct such a search. Consent to a search

must be voluntary and freely given rather than a mere submission to expressed or implied authority, duress, or coercion. Although consent to search need not, as a matter of law, be written, deputies shall in accordance with this policy, attempt to obtain written consent whenever practical. In those cases where an individual indicates a willingness to consent to a search of the vehicle but desires not to sign the Consent to Search form, the deputy shall document the verbal consent on the Consent to Search and proceed with the vehicle/property search. In all cases where a consent search is conducted, a copy of the Consent to Search shall be furnished to the person consenting to the search. Once consent to search is obtained, deputies shall, as expeditiously as possible, either confirm or dispel their belief that controlled substances or other contraband are present in the vehicle or at the property in question. In no case shall any person or vehicle be detained for a period of time longer than is reasonably necessary under the existing circumstances. When searching for a controlled substance, whenever available, a Canine Team will be requested to assist in the search of the vehicle/property unless use of the Canine Team would delay rather than expedite the search. While conducting a vehicle/property search, deputies shall, at all times, treat the motorists/suspect in a courteous and considerate manner and provide for their comfort and safety. Prior to conducting any vehicle/property search where there is a potential safety threat, or multiple occupants or persons at the property, the deputy shall contact Vance Central and request the assistance of another deputy or an officer from another law enforcement agency.

### Probable Cause Search

- Deputies may search a vehicle if he/she has probable cause to believe controlled substances, contraband or other evidence of criminal activity will be found in the location searched.

### Search Incident to Arrest

- Deputies shall search the entire passenger compartment of all vehicles incident to the arrest, if any occupant of the vehicle is arrested. The only exception to this policy is when the safety of the deputy(s) and prisoner(s) is in jeopardy due to extenuating circumstances.

### Vehicle Frisk

- Deputies may frisk the passenger compartment of a vehicle for weapons with the consent of the driver or other person having lawful possession of the vehicle, or when the deputy has a reasonable suspicion to believe there may be a dangerous weapon(s) concealed in the passenger compartment of the vehicle. (The deputy must be able to articulate their suspicion)

## VIII. SEARCH OF PERSONS IN CUSTODY OR UNDER ARREST

Deputies may frisk or search persons in accordance with the Constitution, State law, regulations, and this policy. A canine shall never be utilized to conduct a sniff of a person for controlled substances or other contraband.

Persons who are detained may be frisked for weapons provided the deputy either obtains consent from the person to be frisked or has a reasonable suspicion to believe the person being frisked may be armed and dangerous. Consent to search a vehicle does not authorize a deputy to frisk the occupants of the vehicle. (The deputy must be able to articulate their suspicion).

Deputies may search detained persons with their consent or if the deputy has probable cause to believe contraband or other evidence will be found.

Deputies shall search all prisoners incident to arrest prior to transporting and take possession of all weapons and/or evidence. The only exception to this policy is when the deputy(s) and prisoner(s) safety is in jeopardy due to extenuating circumstances.

Deputies shall search any prisoner whose custody is turned over to them by another deputy or law enforcement officer from another law enforcement agency.

Search of Prisoners of the Opposite Sex:

- A deputy shall search a prisoner of the opposite sex only when an immediate search is necessary to ensure the safety of the prisoner, deputy, or others or to preserve evidence which otherwise might be destroyed. If a deputy of the same sex as the prisoner is not available, only a pat-down search will be conducted unless circumstances warrant an immediate, thorough search.

- A pat-down search may be delayed until the arrival of a second officer. If a second officer is not available and/or there is a safety issue, the pat-down search will not be delayed.

- Searches made under such conditions shall be made with all possible regard for decency and a witness should be present.

**Strip and Body Cavity Searches**

- The use of strip and body cavity searches may under certain conditions be necessary to protect the safety of deputies, civilians, and other prisoners; and to detect and secure evidence. Such searches shall be conducted only with proper justification and in accordance with the procedural guidelines for conducting such searches as set forth in this policy, and with the approval of the Sheriff.

- Strip searches are defined as any search of an individual requiring the removal of all clothing to permit the visual inspection of skin surfaces

including genital areas. Strip searches may be conducted only by law enforcement or other personnel of the same sex as the person being searched and under conditions that provide privacy from all but those authorized to conduct the search.

- Field strip searches of a suspect may be conducted only if there are exigent circumstances and the deputy has probable cause to believe that the life of the deputy or another may be at risk, or evidence will be lost if the strip search is not performed. If a field strip search is conducted, it must be done discreetly and out of the view of the public. All strip searches shall be documented as follows:

    - If evidence is found as a result of a strip search, it shall be documented on the appropriate Seized Property Report

    - If no evidence is found as a result of a strip search, the deputy shall complete an incident report detailing the strip search, which is submitted to the deputy's immediate supervisor. This report shall be retained in the appropriate file at the Sheriff's Office for one (1) year or for a length of time at the discretion of the Sheriff for record keeping purposes only.

- If a deputy believes a strip search is necessary to locate contraband and the person under arrest will be committed to a jail, the deputy may choose to inform the jail personnel of potential contraband and allow them to perform the strip search as part of jail procedures.

- Body cavity searches are defined as any search involving not only visual inspection of skin surfaces, but also the internal physical examination of body cavities, such as the rectal or vaginal cavity.

- Should visual examination of a suspect during a strip search and/or other information lead the deputy to have probable cause to believe that a suspect is concealing a weapon, evidence, or contraband within a body cavity, the following procedures shall be followed:

    - The deputy shall consult with his/her immediate supervisor to determine whether probable cause exists to arrest the subject and seek a search warrant for a body cavity search. A subject can consent to a body cavity search by medical personnel.

    - A body cavity search shall be performed pursuant to a search warrant or consent by a physician or other medically trained personnel at the physician's direction. Only a law enforcement officer or other personnel of the same sex as the person being searched shall be present when the search is conducted.

    - Body cavity searches shall be performed with due recognition of privacy and hygienic concerns.

- o The authorized medical personnel conducting the search shall furnish a copy of his/her report to the deputy serving the search warrant.

## IX. PROPERTY OF PRISONERS

Deputies shall take all reasonable measures to protect the personal property in the possession of prisoners at the time of arrest or detention.

When a deputy stores or takes possession of a vehicle containing a domesticated animal or arrests an individual that has a domesticated animal in his/her possession, the deputy shall make reasonable efforts to ensure the safety and wellbeing of the animal. Reasonable efforts may include contacting the animal's owner or an immediate family member of the owner. If these efforts fail, an animal shelter or an animal control officer should be contacted to remove the animal.

## X. SECURITY AND TRANSPORTATION OF PRISONERS

### Positional Asphyxiation

- Positional asphyxiation may occur when the position of the body interferes with respiration. The deleterious positional effect may result from either interference with the muscular or mechanical component of respiration or both. Medical evidence has shown in all cases of positional asphyxia that one or more contributory factors provide an explanation for the inability of the victim to correct the injurious and potentially lethal position; for example, alcohol/drug intoxication, concussive head injury, entrapment, restraint or physical disability.

- An arrestee who engages in strenuous physical activity while intoxicated or under the influence of drugs and is then placed facedown for any reason will possibly suffer death. The facedown position prevents adequate breathing because the abdomen chest walls and diaphragm muscles are hyperextend or otherwise prevented from functioning normally due to the arrestee's prone position. The combination of these factors can lead to a fatal inability of the arrestee to breathe.

- Deputies shall not transport anyone in a facedown prone or facedown bound (hog-tied) position. Deputies experiencing an arrestee who may be uncontrollable requiring them to be restrained and transported shall ensure the person is properly seated. If the person transported must be restrained by being bound or strapped down with plastic ties, it is the arresting deputy's responsibility to ensure the person is not placed in a facedown position.

### Procedures

- Prior to transportation, deputies shall handcuff all persons under arrest or in custody regardless of the charge (If a deputy's safety is threatened, the deputy may transport a prisoner to a safe location prior to handcuffing).

Prisoners are to be handcuffed with their hands behind their backs, with the cuffs only tightened to the extent necessary to prevent escape and "double locked". Prisoners are not to be handcuffed to any part of the vehicle (deputies may use discretion in handcuffing a violator with the hands in front if there is a compelling reason such as obesity, physical, or other condition that precludes applying the handcuffs behind the violator's back). Restraining measures in addition to handcuffing may be necessary when dealing with combative persons (e.g. flex-cuffs, leg-irons, or full hand-leg restraints) may be used as restraints and should be applied in the proper manner.

- Suspects should always be handcuffed in a safe location outside the deputy's patrol vehicle.

- In extraordinary circumstances, deputies may use their discretion to make exceptions to the handcuffing policy. These exceptions may include the sick, injured, disabled, handicapped, elderly, or other persons whose physical condition may be aggravated by handcuffing. Sound professional judgment should be used when exceptions are made and alternate safety precautions should be taken to guard against injury and/or escape. When possible do not handcuff parents in front of their children.

- Physically or mentally handicapped persons require special care and attention. Deputies shall use their own discretion in determining what, if any, restraining devices will be used on handicapped prisoners and whether or not a patrol vehicle is appropriate for transporting purposes. Deputies should request the assistance of EMS, or the appropriate city or other law enforcement agency when it becomes necessary to transport a person suffering for a mental illness.

The transportation of prisoners is a constant and frequent activity with a potentially high degree of violent confrontation requiring appropriate safety and security measures.

- Deputies shall examine their patrol vehicle at the beginning of each shift to assure that it is safe, properly equipped, and free of weapons or evidence. An additional search shall be completed immediately after transporting a prisoner(s) or other person(s), including under the seats, to ensure that no weapons are accessible and that no weapons or evidence was left in the vehicle.

- When transporting a prisoner of the opposite sex, two deputies will be used when available. When only one deputy is available, Vance Central shall be notified and provided the description of the prisoner, location, destination, and odometer reading. Upon arrival at the intended destination, the deputy will repeat the odometer reading and location.

- Deputies operating patrol vehicles shall transport all prisoners in the rear seat, behind the prisoner transport partition. It is strongly recommended that one deputy not transport more than two (2) prisoners. When it is necessary

Case 5:19-cv-00467-BO   Document 71-6   Filed 04/01/21   Page 8 of 13

to transport more than two (2) prisoners the arresting deputy will request a second deputy to assist. Both prisoners shall be handcuffed and the seat belts fastened.

- The safety belt will be applied and the door locked to secure the prisoner. Restraining devices will be used on all prisoners when physically possible. Mental patients, sick, injured, or handicapped persons will be restrained in the deputy's patrol vehicle or other provisions shall be made for transportation in an ambulance.

- Communications by the prisoner with persons other than the transporting or arresting deputy will be restricted until the prisoner has reached the booking location. Under no circumstances will the prisoner be allowed out of sight of the arresting or transporting deputy. If a deputy must leave the vehicle, the keys will be removed from the vehicle.

- A transporting deputy should only stop or respond to law enforcement needs, when the risk to third parties is clear and grave and the risk to the prisoner is minimal. Deputies shall not engage in any extraordinary vehicle operation, such as vehicle pursuits, while transporting prisoners unless a life-threatening situation occurs, and after approval of the shift supervisor.

- If a prisoner being transported escapes from custody, the escape shall be reported immediately to the appropriate shift supervisor and Vance Central. The reporting deputy shall give a physical and clothing description of the prisoner, the location of the escape, any weapon information, and the last known method and direction of travel. Vance Central personnel shall promptly dispatch information concerning the escape to other law enforcement patrols and affected law enforcement agencies (i.e. Sheriff's Department, Police Department, the North Carolina Department of Corrections, or the North Carolina State Highway Patrol).

- If the escapee is not apprehended, the affected deputy shall consult with the Magistrate to initiate any criminal proceedings. The patrol shift supervisor shall document the facts of the escape and any pertinent follow-up information he/she deems necessary on an incident report.

- Prior to entering any detention facility, deputies shall secure their duty firearm, ammunition and asp in accordance with the rules or guidelines established by the detention facility, the Sheriff, or in the trunk of the deputy's patrol vehicle.

- Prisoners turned over to detention personnel become the detention center's responsibility and deputies are free to resume duty after completing the required booking procedures and any other required paper work. However, deputies shall notify the detention facility or court deputy/bailiff when a prisoner turned over to their custody is a security risk.

Handcuffs are not to be removed from arrestees until they are delivered to the detention facility unless the following exceptions apply:

- Handcuffs may be removed upon entry into a secure location

- Handcuffs may be temporarily removed at other locations:

    o  When necessary during medical treatment

    o  When performing psychophysical tests for driving while impaired (DWI)

    o  Other purposes deemed necessary by the arresting officer

Handcuffs should be removed only until the necessary function is completed. If the subject is combative, the handcuffs shall not be removed and test(s) omitted. Deputies shall advise detention facility personnel of any potential medical or security hazards.

Deputies shall consider their safety and that of the passenger(s) when deciding upon the transportation of authorized passengers (e.g. crime victims, stranded motorists, witnesses, or other persons required in the line of duty) in a patrol vehicle.

The transportation of a passenger and a prisoner at the same time is discouraged. If the situation requires transport of a passenger while transporting a prisoner, the deputy shall exercise every reasonable precaution to ensure his/her safety, the safety of the prisoner, the passenger, and other users of the highways. Prior to making the decision to transport a prisoner and a passenger at the same time, the deputy should call another officer for assistance.

## Security and Control of Prisoners Transported to Medical / Mental Health Facilities

- Prisoner custody and well being is solely the responsibility of the arresting deputy. If a prisoner becomes sick or is injured incidental to the arrest, the deputy will immediately seek medical attention through Vance Central. The deputy shall be governed by the decision of the Emergency Medical Services personnel regarding the need for hospitalization. The deputy shall remain with the prisoner unless urgent medical circumstances exist or relieved by a patrol shift supervisor. In the event the prisoner is admitted to the hospital, the deputy shall contact the patrol shift supervisor concerning additional security measures with the assistance of on duty deputies. When it becomes necessary to transport a prisoner to a mental health facility for the purpose of treatment or evaluation, the arresting deputy must secure an "Involuntary Commitment Order" from the Magistrate's Office prior to the prisoner being transported. The arresting deputy shall request assistance from EMS or the appropriate law enforcement agency when transporting a mentally ill prisoner pursuant to an Involuntary Commitment Order. In the event the mentally ill prisoner requires additional security, the arresting deputy shall be responsible to ensure that the prisoner is transported to a facility that is equipped and

staffed, to accommodate the additional security measures request, after consulting with the patrol shift supervisor.

## XI. MONITORING A PERSON'S PHYSICAL CONDITION

The physical and mental condition of the prisoner must be monitored during the time that he/she is in the deputy's custody. A prisoner who appears to be sick or injured must be provided medical attention from medical personnel.

When a deputy arrests a person who is unconscious, semiconscious, or otherwise apparently suffering from some disabling condition, and who is unable to provide information on the cause of their condition, the deputy shall make a reasonable effort to determine if the person is wearing a Medic Alert bracelet or necklace containing the emergency alert symbol indicating a condition or illness which could cause loss of consciousness. Upon finding such a symbol, the deputy shall make a reasonable effort to obtain the appropriate medical care for the individual.

A prisoner who exhibits any of the following characteristics must be taken for immediate medical attention:

- Loses consciousness (this does not include an obviously intoxicated person who goes to sleep)

- Sweats profusely without reason

- Appears very sick

- Engages in deranged or irrational conduct or speech without any obvious reason, such as impairment from alcohol or drugs

- Has an obvious injury

- Complains of significant injury or illness and requests medical attention

A prisoner who exhibits any of the following characteristics must be particularly monitored for potential physical problems:

- Old or frail

- Known diabetics or asthmatics

- Have a known history of heart or lung problems or seizure disorder

- Are substantially impaired by drugs or alcohol

- Have run or fought with officers or violently resisted arrest

- Are breathing very rapidly, sweating heavily, or exhibiting pale skin
- Engage in deranged or irrational conduct or speech
- Are very obese
- Complain of health problems

## XII. HANDLING THE MENTALLY ILL

### Recognition

- Deputies may occasionally be called upon to control or restrain an individual when mental illness provokes anti-social behavior. Suicide attempts, violent behavior, imaginary persecution, hallucinations, illusions of grandeur, and other deviations from what is considered normal or expected behavior are indications of mental illness. Careful observation of the victim, including how he/she talks, what he/she says, and how they behave can lead you to believe they are suffering from some type of mental illness. This visual observation may also be supplemented by information obtained from friends or relatives of the victim. The information gathering process will be a great aid on how to handle the situation. Some specific indicators to look for and note are:

    - Determine if Injured or Ill – Is the person physically ill or injured? There are a great many physiological reasons that can cause a person to act abnormally. A blow to the head, a high fever, shock from a crash or reaction to medication can cause a person to appear disoriented. On the other hand, a person who is mentally ill may not react to pain as we would expect a normal person to react. If there is an injury and first aid is required, do what you can for the person, but do not force treatment unless it involves a life-threatening situation.

    - Obtain Past History – Attempt to learn as much as possible about the past history of the person. Have they previously been confined? If a past record of mental illness is discovered, they should be returned to the institution where they were treated or their attending physician should be contacted.

    - Consider Hospitalization – When a deputy feels that a person should be hospitalized due to mental illness, the local mental health facility shall be contacted. Necessary arrangements can be made for evaluation and commitment to the nearest state hospital or medical facility for treatment or detention. The deputy must feel that the person is a risk to themselves or others.

    - Identify Any Criminal Behavior – Has the person committed a crime? If a crime has been committed, especially a felony, the magistrate should be contacted for advice. The past record of the person and the willingness of the hospital to accept him/her will have some direct bearing on this

problem. In any case, the person must be removed from contact with the community until he/she can be stabilized. If a felony has been committed, the deputy has the responsibility to guard the person until secured, either in a mental facility or a jail. It still remains a function of the court to determine guilt, innocence or insanity.

### General Guidelines

- **Be Sympathetic** – Do not argue or antagonize the person. Most likely they will not respond to logical arguments. Take your time, keep cool and use a quiet conversational tone of voice when dealing with them. The tone of voice, more often than the words spoken, will have a great influence on the person. You must try to convince them that you are on their side and are there to help them.

- **Avoid Physical Contact** – Do not touch them unless it is absolutely necessary. The mentally ill person may be inclined to interpret this as an attempt to restrain him and overreact.

- **Do Not Mislead** – Do not mislead or try to trick a mentally ill person. It may work for you temporarily, but can cause more serious problems later.

- **Use Available Assistance** – It may be necessary to summon medical assistance and have the person sedated if he/she is exceptionally violent. Obtain assistance whenever possible. It is always best to call for assistance from another officer even if things appear to be normal. A friend or relative may be most valuable in controlling the person. Any person that appears to agitate the mentally ill person should be removed from the scene as soon as possible. Deputies should contact EMS or the appropriate law enforcement agency for assistance when a mentally ill person requires transportation to a treatment facility if necessary.

Peter White
Sheriff
Vance County