# 8. W. Bullock – BLET Use of Force



# Subject Control/Arrest Techniques

ELET 171

## TITLE: SUBJECT CONTROL/ARREST TECHNIQUES

| | |
|---|---|
| Lesson Purpose | To present to the student basic, practical, and effective arrest techniques and subject control methods for **combative and resistive behavior encountered in the law enforcement profession.** |
| Training Objectives | At the end of this class of instruction, the student is be able to achieve the following objectives in accordance **with information received during the instructional period** |

    1. List and explain the levels of resistance displayed

    2. **Demonstrate the use of pressure points to control** certain levels of resistant behavior

    3. Demonstrate techniques of control for various **levels of assaultive and resistive behavior.**

    4. Demonstrate the use of impact weapons to control defend attacks

    5. **Demonstrate the ability to control, handcuff, and** search an individual subsequent to arrest.

    6. Demonstrate weapon retention and weapon **disarming techniques.**

    7. **Explain the use of aerosol chemical sprays to** control subjects or animals.

| | |
|---|---|
| Hours: | Forty (40) |
| Instructional Method: | Lecture Demonstration Practical Exercise |
| Training Aids | Gymnastic Mats<br>Training and Collapsible Batons<br>Padded Striking Shields Bags<br>Handcuffs with Keys<br>Training Handguns Red Guns with Duty Belt Holsters<br>VCR Monitor |

---

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 2 of 35

Notes.
**Subject Control and Arrest Techniques, NCJA (2006)**

References.

Advanced Defense Technologies. *Capsicum Aerosol Weapons Training Program.*

**Archambault, Thomas.** *Oleoresin Capsicum Aerosol Spray Instructor Certification Training Manual.* Bennington, VT: Mace Security International, 1995.

*ASP Instructor Certification.* Appleton, WI: Armament Systems & Procedures, Inc., January 1996

Blauer, Tony. *Spontaneous Protection Enabling Accelerated Response (S.P.E.A.R.) System, Instructor Development Program.* Montreal, Canada: Blauer Tactical Systems, 2004

Cloutier, Dave F. *The Non-Escalation of the Use of Force.* Salemburg, NC: N.C. Justice Academy, 1993. 3-11.

*Defensive Tactics: Basic Law Enforcement Training Manual.* Salemburg, NC: N.C. Justice Academy, 1993. 18-21.

Floyd, Craig W. "It Felt Exactly Like What You see in the TV Universe." *Police Marksman.* November, March 2003.

**Headquarters, Department of the Army, Navy and Air Force.** *Potential Military Chemical Biological Agents and Compounds.* Washington, DC: Department of the Army, Navy and Air Force, December 12, 1990.

*Krav Maga Worldwide, Force Training Division, Series 1 Instructor Manual.* Sherman Oaks, CA: Krav Maga Association of America and the Krav Maga Worldwide, Inc., 2006

**Logman, Cameron.** *Cap-Stun Weapons Systems.* Camden, SC: Zarc International, 1991. 1-22.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 3 of 35

McGuinness, Michael J. "Judging Split Second Decisions." *Police Magazine*, January 2000.

Nowicki, Ed. "Spray Day." *Police*, January 1995, 36.

Reay, Donald T., Corrinne L. Flugner, Allan D. Stilwell, and Judy Arnold. "Positional Asphyxia During Law Enforcement Transport." *The American Journal of Forensic Medicine and Pathology* (1992): 90.

Siddle, Bruce. *PPCT Defensive Tactics Instructor Manual.* Milstadt, IL: PPCT Management Systems, 1994, 2-29.

Trimmer, Reece. "Pepper Spray After Concord: Legal Issues for Policy Makers." Salemburg, NC: N. C. Justice Academy, July 1993, 1-7.

Trimmer, Reece. "Safe Use of Pepper Spray." Salemburg, NC: N. C. Justice Academy, 1993.

U.S. Department of Homeland Security. *Use of Force*. Glynco, GA: Federal Law Enforcement Training Center, January 2006.

U.S. Department of Justice. *FBI Defensive Tactics Manual*. 1996.

U.S. Department of Justice. *Use of Force*. Washington, DC: U.S. Department of Justice, 1999.

Ward, Thomas W.W., Wayne Weaver, and Monty B. Jett. *Chemical Agent Research: Oleoresin Capsicum*. Quantico, VA: FBI Academy, 1989.

*Bell v. Wofish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

*Monroe v. United States*, 257 F.2d 740, cert. denied, 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586 (1958).

*Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 1065 (1983).

---

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 4 of 35

*State v. Smith*, 118 N.C. App. 106, 454 S.E.2d 680 (1995); *rev'd*, 342 N.C. 407, 464 S.E.2d 45 (1995).

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed 2d 889 (1968)

**United States v. Bazy**, 1994 WL 539300 (D.Kan. 1994) (unreported decision).

Prepared By:   Howard Volkman
**Instructor/Coordinator**
**North Carolina Justice Academy**

Sgt. Philip Etheridge
Dare County Sheriff's Office

**Scott Futrell**
Charlotte/Mecklenburg Police Department

MPO Ozzie Holshouser
**Charlotte/Mecklenburg Police Department**

Sgt. John Kissinger
Apex Police Department

**Sgt. Kevin B. Leonard**
Winston-Salem Police Department

Dennis McIntyre
**Shelby Police Department**

John Moore
Chapel Hill Police Department

**Teia Poulin**
N. C. State Highway Patrol

Capt. Jerry Sennett
Charlotte/Mecklenburg Police Department

**Bob Stocks**
N. C. Alcohol Law Enforcement

Jody Taylor
**Southeastern Community College**

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 5 of 35

John Trogdon
Sampson Community College

Lt. Phillip M. Williamson
Wilmington Police Department

MPO Floyd Yoder
Hickory Police Department

Officer Troy Young
**Garner Police Department**

Date Prepared                January 1995

**Date Revised:**            March 1995
                             **June 1998**

Reviewed By                  Kathy Moore
                             Agency Legal Specialist
                             **North Carolina Justice Academy**

Date Reviewed:               December 1998
                             November 1999
                             October 2001

**Date Revised:**            **February 1999**

Revised By                   Dave Cloutier
                             North Carolina Justice Academy

**Date Revised:**            **September 1999**
                             September 2000

Revised By                   Don Blum
                             **Instructor/Coordinator**
                             **North Carolina Justice Academy**

Date Revised                 November 2001

**Revised By:**              **John Combs**
                             Instructor Coordinator
                             North Carolina Justice Academy

**Date Revised:**            **May 2002**

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 6 of 35

# Subject Control/Arrest Techniques

| | |
|---|---|
| Revised By: | Jon Blum |
| Date Revised: | October 2002 |
| Revised By: | John Combs |
| | Instructor/Coordinator |
| | North Carolina Justice Academy |
| Date Revised: | February 2003 |
| | **April 2004** |
| | **January 2005** |
| | July 2005 |
| | July 2006 |

Case 5:19-cv-00467-BO    Document 71-8    Filed 04/01/21    Page 7 of 35

## *Subject Control/Arrest Techniques*

TITLE: SUBJECT CONTROL/ARREST TECHNIQUES - INSTRUCTOR NOTES

1.  **This lesson requires lecture and demonstration on the part of the instructor and practice on the part of the student.** It is recommended the student practice techniques until deemed proficient by the instructor.

2.  **This lesson requires performance testing. Performance testing should be documented on the attached evaluation form.** The instructor should look for factors why a student performs or does not perform a technique satisfactorily. Criticism should be given in a positive and productive manner. Pass/Fail criteria is listed on the evaluation form.

3.  **Arrangements must be made for an area suitable for this type of activity** complete with protective mats to reduce the chance of physical injury.

4.  It is recommended that students participate in a physical conditioning **program prior to self-defense training. In addition, self-defense classes should be preceded by a period of "warm-up" and "stretching" exercises.**

5.  It is recommended that this lesson is taught in two four-hour blocks of instruction.

6.  **The NCJA *Subject Control /Arrest Techniques* video is designed to be viewed** in segments as indicated by lesson plan instructor notations. The video is not to be shown in its entirety at one time. Instructors are encouraged to use the video as a reference more than once. They should also consider having a **TV/VCR immediately available during practical exercises to view the video as needed.**

7.  A collapsible baton should be used in teaching the drawing, improper and opening of the baton. Practice batons that may be used in teaching strikes are **easily constructed out of ½" PVC pipe wrapped in foam insulation and then wrapped in duct tape.** The length of the ½" PVC pipe should be cut approximately 22". It is recommended that the ends of the pipe be capped with a piece of the foam insulation prior to taping.

8.  **Students should wear loose fitting clothing with long or three-quarter length** sleeves.

9.  The amount of time allotted to this block of instruction limits the amount of **training that can be presented. Therefore, techniques to be taught are limited and carefully chosen with regard to job-relevancy.** This approach is felt to be superior to that of choosing a wide array of techniques and being able to treat them only superficial.

---

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 8 of 35

10. It is recommended that special training handguns be used for that relative portion of the block of instruction, i.e., plastic red guns or other realistic facsimiles incapable of firing. If service handguns are used, it is imperative that these weapons be checked and no live ammunition is to be allowed on or near the students, instructors, or training area. Periodic re-checking of these weapons is encouraged to ensure continued safety.

11. The lesson plan typically outlines procedures utilizing the suspect's right side. All techniques can be reversed and should be practiced going left or right. Movement against the right side of the suspect is taught because the right is usually the dominant side.

12. During student skills testing, instructors should make sure that the student can demonstrate all of the steps in each of the techniques in a smooth, fluid, and continuous motion, for acceptable performance. Students must demonstrate to instructors that they know the technique and can perform it without stopping at each step.

13. **Subject Control Arrest Techniques Safety Rules:**

    Subject control techniques to be learned and practiced are potentially injurious and if performed in a haphazard manner, could result in serious injury. To minimize the risk of injury, the following health and safety precautions should be observed in training situations.

    a. Remove all watches, rings, glasses, earrings, necklaces, etc., that might be snagged during training.

    b. All use of mats and pads must be cleaned using a 10:1 water bleach solution after every use. **Refer to OSHA requirements for more information.**

    c. No horseplay. Practice only what is taught and demonstrated.

    d. All techniques must be practiced slowly at first. Speed and proficiency will come with continued practice.

    e. In those situations of the various techniques, showing the student will cause the student to be taken down or thrown, only passive resistance should be offered. Active resistance can enhance injuries and impede training.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 9 of 35

1. Each technique should be divided into two steps. The technique can be mastered with comparative safety by practicing the steps separately and then in sequence

    (1) Step One - This step consists of all the actions required to place your opponent in a position where he can be thrown or placed in pain by the application of pressure.

    (2) Step Two - This step consists of actually throwing your opponent or applying pressure, so as to inflict pain

14. To promote and facilitate law enforcement professionalism, three (3) ethical dilemmas are listed below for classroom discussion. At their discretion, instructors <u>must</u> provide students with each ethical dilemma listed below. Sometime during the lecture instructors should "set the stage" for the dilemma prior to taking a break. Instructors are encouraged to develop additional dilemmas as needed

    a. A subject is very verbally abusive and aggressive. While handcuffing he is actively resisting and he will not get in the car. Pressure points do not seem to work. Your partner strikes the suspect in the abdomen with a baton. What will you do?

    b. Following a high speed chase you observe the driver of the primary chase car approach the suspect and begin to extract him by his hair pulling him out through the window. He is striking him in the head and face with his fists. What will you do?

    c. A subject known to you and your family begins to make lewd and profane remarks about your wife and threatens your children. What will you do?

**Effective August 2000, this topic area is required to have a 1 to 8 instructor-trainee ratio in the related practical exercises. The Administrative Code reads as follows:**

> **12 NCAC 9B .0202(b)(4) RESPONSIBILITIES OF THE SCHOOL DIRECTOR: *there shall be one specific certified instructor for each eight trainees while actively engaged in a practical performance exercise.***

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 10 of 35

TITLE:  SUBJECT CONTROL/ARREST TECHNIQUES

I. INTRODUCTION

NOTE:  Show slide, "Subject Control/Arrest Techniques."

A. During the course of their normal duties law enforcement officers encounter from time to time various levels of subject/offender resistance. The reasons for this resistance may well vary and are associated with its physical, verbal, and non-physical aspects, etc. The following material will give the student basic and practical information and skills in subject control methods and arrest techniques. Even though the methods and techniques are basic and generally reliable, continued resort to beyond the Basic Law Enforcement Training level is recommended.

B. Training Objectives

NOTE:  Show slide, "Training Objectives."

C. The number of law enforcement officers killed or injured has seen a general increase in recent years. Many of the injuries received resulted from some type of confrontational encounter. Being able to effectively control a resistive subject/offender with minimal risk of injury to the officer and subject is of paramount concern. Additionally, officers need to be trained in effective methods of preventing and controlling physical attacks upon their person with techniques that will produce confidence, as well as, minimize injury to officer and subject.

II. Body

A. Use of Force in Arrest, N.C.G.S. 15A-401

1. Subject to the provisions of subdivision (2), a law enforcement officer is justified in using force upon another person when and to the extent that he reasonably believes it necessary:

NOTE:  Show slide, "Non-Lethal Force."

"A less-than-lethal force option is one which is *highly unlikely* to cause death or serious injury to a suspect when *properly applied* by a law enforcement officer."

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 11 of 35

. . . To prevent the escape from custody . . . . . . . . . . . . **of a person who he reasonably believes has committed a criminal offense, unless he knows that the arrest is** unauthorized, or

b) To defend himself or a third person from what he **reasonably believes to be the use or imminent use of** physical force while effecting or attempting to effect an **arrest or while preventing or attempting to prevent an** escape.

**The use of force by law enforcement officers is an issue** of great concern to society, individual officers, and law enforcement administrators alike. The determination of the propriety of the use of force is very much **often an after-the-fact, subjective judgment based on not** very specific standards. State laws and departmental rules and procedures are intended to define more clearly the circumstances under which force may be used, to **benefit the public and the law enforcement officer.**

**Despite what may be the public's perception, use of force** situations involving law enforcement officers are very uncommon. According to a recent Bureau of Justice **Justice study, in all of the millions of contacts**, arrests, **traffic stops, and other contacts between law enforcement and the public during 1999, in more than** 99 percent of these encounters no force was used at all.

2. <u>For the law enforcement officer, the amount of force which may</u> <u>be employed in attaining the law enforcement purpose will be</u> <u>determined by individual circumstances. The U.S. Supreme</u> <u>Court has established three objective standards for judging</u> <u>the propriety of an officer's use of force, which takes into</u> <u>consideration all surrounding circumstances.</u>

*Graham vs Connor* . . . . . . . . . . . . .

**NOTE: Show slide, "Reasonableness ... Graham v. Connor."**

*The test of reasonableness under the Fourth Amendment . . .*

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 12 of 35

*proper application requires careful attention to the facts of each particular case, including the severity of the crime at issue ... attempting to elude arrest by flight ...* ⌟

[ *"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene ...* ⌟

[ *"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and particular situation."* ⌟

a) <u>Reasonableness must be judged from the perspective of a reasonable officer on the scene, acting with a tense ...</u>

b) <u>Decisions must be based on the totality of the circumstances and how they are evolving at the time of the incident.</u>

c) <u>Determining the amount of force required to control a subject requires sound decision making by the officer. Crucial to this ability is the officer's understanding of ...</u>

**NOTE: Show slide, "Perception."**

[ Essential to the officer's understanding is an examination of "perception." In selecting a force option, an officer's perception of what is taking place is critical. Officers must look at each situation or the "totality of the circumstances" and continually assess them ... is dependent upon a number of factors. This means that when the reasonableness of an officer's actions is being questioned, we must place ourselves in the position of that officer at the moment of decision. ⌟

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 13 of 35

Reasonableness is not determined by any particular force option(s) but rather all of the surrounding circumstances that caused the officer to make the decision on the force option(s).

The elements of "objective reasonableness" are listed below and are based on the officer's perception of the subject's actions.

a) <u>Ability/Capability</u> – Addresses the ability/capability of a subject to carry out the action or threat. This must be a logical perception.

b) <u>Opportunity</u> – Indicates that the action or threat perceived by the officer is imminent. The subject must be in a position in which they can use their *ability, capability* to carry out the act or threat.

c) <u>Intent</u> – Indicates the mental state initiating an overt act (words or deeds). Intent is initiating an overt act in furtherance of a crime or threat.

4. Under no circumstances should the force used be greater than necessary, and in no instances will deadly force be used except in the situations provided by statutory law and departmental regulations. A law enforcement officer is justified in using deadly physical force upon another person:

**NOTE: Show slide, "Deadly Force."**

a) To defend himself/herself or a third person from what he/she reasonably believes to be the use or imminent use of deadly physical force.

b) To effect an arrest or to prevent the escape from custody of a person who he/she reasonably believes is attempting to escape by means of a deadly weapon, or who by his/her conduct or any other means indicates that he/she presents an imminent threat of death or serious physical injury to others unless apprehended without delay.

c) To prevent the escape of a person from custody imposed upon him/her as a result of conviction for a felony.

The rules on use of deadly force under North Carolina law will not permit the use of deadly force against a person accused or suspected of committing a crime who

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 14 of 35

is attempting to escape from custody, and if such use of his/her conduct **presents an immediate threat of death or serious injury. Nothing in this subdivision constitutes** justification for willful, malicious, or criminally negligent conduct by any person which injures or **endangers any person or property, nor shall it be construed to excuse or justify the use of unreasonable or** excessive force.

NOTE: This situation would primarily apply to **correctional officers in preventing an escape from a prison unit.**

B.    Force Option Model

1.    A force option model should be used as a *guide* for officers in their use of force decisions. These decisions should be based upon generally accepted responses to their type of action.

Determining the appropriate amount of force to use when confronting a resistive subject can be problematic for the officer. Frequently, policies are ambiguous in directing the officer to the appropriate response for the situation.

While it is certainly advantageous for an officer to resolve a confrontation with verbal direction, it is at the point where words no longer serve to dissuade the continuation of resistance or attack that these policies and guidelines become vague.

**NOTE: Show slide, "Force Options."**

**NOTE:** Instructors should *thoroughly* explain the force option model. In particular, instructors should explain **this model from the inside-out, taking care to point out that there is not a clear line distinguishing when a** suspect moves from one level of resistance to another. And, that the color areas representing force options **overlap one another based on the same premise.**

Most use of force options are listed from the least life threatening to the most life threatening. The appearance of hierarchy in specific areas of the model, although unintentional, can sometimes mislead an inexperienced officer. The systematic delineation is primarily used to clarify and illustrate the variety of applications. The

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 15 of 35

"continuum," as it is sometimes called *IS NOT* a specific path for officers to follow in every situation. Any perceived pecking order or tier has nothing to do with the officer's individual thought processes for choosing the most reasonable option. In *Scott vs. Henrich* (39 F.3d. 912; 9th Circuit - 1994) the court said:

*"Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment.*

*Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."*

Simply stated, officers do not have to exhaust other lower levels of force options before moving to another, so long as it is justified.

*Remember:* The evaluation tool used by the court is, *"Did the officer act as other reasonable officers would have acted in a similar situation?"* (*Graham vs. Connor* [490 U.S. 386, 1989])

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 16 of 35



a)  <u>Control levels</u>

**NOTE: The instructor should provide various
examples of the involved factors of each level of
the continuum as they are presented to the
student.**

**NOTE: Show slide, "Control Levels."**

(1)  <u>Presence:</u>  psychological force established
through the officer's arrival on the scene and
symbols of authority (badge, uniform, etc.)

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 17 of 35

Officer positioning, stance, and use of a reaction zone aid in the control of confrontations and facilitate officer safety.

**(2)** **Verbal Direction/Control**: conversation, advice, commands, or instructions utilized by the officer to control or de-escalate a confrontation. Verbal communication, when applicable, should accompany officer actions, including the officer's identification and announcement of arrest as outlined in N.C.G.S. 15A-401(c)(2).

**(3)** **Physical Control**: use of physical contact to include touching, assisting, grabbing, joint manipulations, kicking, or striking. Such contact includes empty hand techniques and does not include the use of intermediate weapons.

 **(a)** **Soft hand control** - Techniques which have a low probability of injury, such as joint locks and pressure points.

 **Note:** Stunning techniques to the neck (brachial plexus origin, suprascapular nerve) are appropriate in cases of aggressive assault and high level resistance of a manner that approaches a threat to the officer's life.

 **(b)** **Hard hand control** - Techniques which have a higher probability of injury, such as punches, kicks, or stuns.

**(4)** **Aerosol Chemical Agents**: The use of Oleoresin Capsicum (OC) or other agents to control suspect resistance. Agents typically target suspect's facial area, cause moderate discomfort, activate mucus membranes and reduce resistance.

Case 5:19-cv-00467-BO Document 71-8 Filed 04/01/21 Page 18 of 35

(5)    Electronic Impulse Device (EID):  Also known as "stun gun" or TASER, these devices deploy electronic currents (low watt, high volts) into a suspect's body.  This affects the central nervous system and causes muscles to involuntarily contract, whereby decreasing or eliminating suspect resistance.

Note:  The use of an electronic impulse device (EID) has a legitimate place in the Force Continuum.  Exact placement on this continuum is dictated by departmental policy.  Individual agency policy may provide for the use of an electronic impulse device before any touching or "soft hand" techniques under specified circumstances, or may require the use or attempted use of "soft hand" techniques before deploying if circumstances permit.

(6)    Intermediate Weapons:  weapons which when utilized according to recognized training methods reduce the probability of serious bodily injury.

(a)    Low-level intermediate weapons - Weapons used with slow pressure not requiring dynamic impact or physical exertion (Example: using a baton to effect a joint lock).

(b)    High-level intermediate weapons - Weapons which involve strikes or could cause temporary physical incapacitation when applied (Example:  baton strike).

Note:  Placement of particular intermediate weapons in the Force Continuum may vary from agency to agency depending upon respective guidelines.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 19 of 35

(7) <u>Deadly Force</u>: actions which would likely result in death or serious bodily injury including the use of lethal weapons.

Note: The force continuum is a guide. An officer's use of force is a response to the subject's behavior and does not specifically follow a preset order of escalation. An officer must continually assess a subject's behavior to allow for appropriate escalation/de-escalation in the use of force.

**NOTE: The instructor should provide practical examples or relate actual situations in which sequential use of levels are not followed. Example: An officer encounters a subject armed with a handgun. Officer presence has been established and the officer might begin utilizing verbal commands. The officer would not engage in physical controls, nor would he employ the use of an intermediate weapon such as a baton strike. The officer should seek appropriate cover and prepare to utilize lethal force as assessed from the subject's behavior.**

b) Subject behavior/resistance levels

**NOTE: Show slide, "Subject Resistance Levels."**

(1) A subject may exhibit various types of behavior during the arrest process. The subject may respond to arrest by the following types of behavior:

(a) <u>Compliance</u>: the subject may comply with officer directions and voluntarily submit.

(b) <u>Noncompliant resistance</u>: the subject may offer **passive** or **active** resistance in an attempt to thwart the officer's arrest actions. In this type of behavior the subject is not actively attempting to injure the officer, but attempting to prevent physical restraint or control. These actions might include behavior such as holding onto a steering wheel, lying prone

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 20 of 35

on the ground with both hands under the body, pulling away or attempting to flee from the officer. (This latter type of defensive resistance is the most common noncompliant behavior.)

(c) Assaultive: the subject may engage in assaultive behavior through actions such as strikes, kicks, or balance disruption, which would cause injury to the officer. (Over 80% of assaults involve subject's use of personal weapons, i.e., hands, elbow, feet, etc.)

NOTE: Show slide, "Personal Weapons."

(d) Aggravated assaultive: the subject engages in assaultive behavior with the use of a weapon which could lead to serious injury or death. This would be considered a lethal/deadly force encounter.

Note: Officers are likely to encounter a combination of types of behavior. Although the subject might be attempting flight or exhibiting resistive behavior, he may begin striking the officer to effect his release, thus changing to assaultive behavior.

c) Force continuum factors/variables

NOTE: Show slide, "Force Variables."

The amount of force an officer employs in effecting control or defending himself/herself is generally guided by surrounding circumstances, including, but not limited to, the following:

(1) Subject behavior - physical and verbal actions, signs of impairment

(2) Totality of the circumstances - known factors

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 21 of 35

    c)    Shin kick - The officer steps across the subject at a 45 degree angle from a Zone 2 or Zone 4 position, turning the hips toward the direction of the strike. The officer brings the rear leg forward with a slight bend in the knee and strikes the common peroneal or femoral nerve point with the front part of the shin.

3.    Quick takes

NOTE: Show NCJA video, *Subject Control/Arrest Techniques*, "Quick Takes" (2 minutes). Show video before demonstrating each technique.

"Quick takes" are general control methods and have many applications and uses. A most important factor is the simple hand position relationships when using the various "quick takes."

    a)    Bent wrist (officer approaches subject from Zone 4-5)

        (1)    The student should grab the subject's right wrist with his/her right hand and simultaneously grab the subject's right elbow bend with his/her left hand.

        (2)    Lift the wrist upward (toward the student) and push elbow downward. Subject's elbow should be tucked in tightly against student's left side and under student's armpit as much as possible.

        (3)    Place right thumb on top of subject's right hand. Student's left hand is placed under the right hand with thumb on top of subject's right hand. Using the student's left hand, apply downward pressure and away from the subject. This downward pressure is centralized over subject's index and middle finger knuckles.

        (4)    Using student's right hand (palm edge of hand), apply slight pressure upwards on subject's right hand.

        NOTE: Officer reverses procedure if he/she is left hand dominant.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 22 of 35

**NOTE: Use caution--practice slowly. It only takes minimal torque pressure to injure the wrist.**

**NOTE: One thumb may be placed under suspect's wrist to counter suspect attempts to pull hand free.**

b) Arm bar

**NOTE: This technique may be initiated from the interview (Zone 2) position or rear escort (Zone 4) position. The instructor should demonstrate the transition from Zone 2 to Zone 4.**

(1) The officer, facing in the same direction, grabs the subject's left wrist with his left hand and simultaneously grabs the subject slightly above the left elbow with his right hand.

(2) Rotate (flip) the subject's left hand (palm) up and place at point of officer's left hip.

(3) The officer's right elbow should be against his side. The officer can then push the subject's arm slightly above the elbow (using either the palm of the hand, a "knife" hand, or the forearm) in a downward position. The officer will simultaneously step with his/her left foot at an approximately 45° angle, pivot and drop to his/her right (inside) knee. This will force subject to a prone position.

(4) Follow-up with appropriate handcuffing technique.

**NOTE: Officer reverses procedure if he/she is left hand dominant.**

c) Multiple officer take down

Two officers: This subject control technique can be used when two or more officers are present. It can be used for various levels of resistance by an individual or to control

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 23 of 35

a mental subject. Before the on-set of this technique, the officers must communicate with each other. That is, decide which officer will give ALL verbal commands until the individual is handcuffed.

Determine which officer will give commands: this may be the primary officer. the ranking officer. etc. However. the officer giving commands should take the HIGH position and deliver all commands to the subject and assisting officer.

(1) Officers, moving on cue and at the same time from positions of tactical advantage. verbal command giver goes HIGH at or near the subject's chest. The officer may grab the subject's arm/shoulder, clothing, or wrap his/her arms around the subject's chest/shoulder area. The other officer takes the LOW position and grabs the subject at and around the knees, securing same with a firm grip to immobilize the subject's legs.

**Note: In cases of "extremely aggressive behavior" or in situations where the officers were unable to gain immediate tactical/positional advantage. the HIGH position officer may grab the subject behind the neck and/or head. This method would be used as a means to disrupt the balance of the subject and to bring the subject to a prone handcuffing position through leverage and control.**

(2) The subject is taken to the ground in a controlled manner and maneuvered to a prone handcuffing position

(3) The officer grabbing the subject's legs around the knees <u>must</u> maintain a tight grip around the subject's legs and act accordingly to the HIGH officer's commands.



COMMUNICATION between the two officers is of the utmost importance.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 24 of 35

Note: If more than two officers are present, and if applicable, subsequent officers should scan the environment and keep other participants away. They should maintain a security perimeter and aid the engaged officers as needed.

**NOTE: Instructors must maintain close and strict supervision of students while practicing this technique and ensure that it is <u>never</u> practiced in a full contact manner.**

d) Close quarter control

The biggest problem here is that in close proximity, if an attack comes too quickly the brain does not process it fast enough for a tactical response. The following techniques described are derived from the Blauer Tactical Confrontation Management S.P.E.A.R. (Spontaneous Protection Enabling Accelerated Response) System.[1]

(1) Here are some of the main issues:

(a) Human nature! Behaviorally, we move <u>away</u> from danger, but tactically we should be taught to move <u>towards</u> danger (this is relevant for a close-quarter attack).

(b) This paradox is what creates hesitation and anxiety during confrontation.

(c) When the <u>emotional</u> system and the <u>cognitive</u> system run conflicting messages, the result is hesitation. Our training needs to rely on sub-conscious triggers to initiate action. In other words, really stressing understanding the verbal/non-verbal cues that lead to an attack.

(d) In extreme close quarters, trying to move <u>away</u> or disengage may place the officer in more danger. When we retreat from danger, the propensity for the body to collapse is huge.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 25 of 35

    Bring the leading arm up, wrapping attacker's arm, and **bring your fist tightly to your chest to** secure the forearm holding the gun.

(4)    With your rear hand, deliver an elbow strike to **the gunman's face. As you deliver the elbow strike, you can slide your arm back to secure the** wrist rather than the forearm.

(5)    **Follow with knee and/or shin strikes to the lower body closest target areas of the attacker (thigh,** lower leg, groin, abdomen).

(6)    With your free hand, reach over the weapon, **pinky up, and grab the barrel. Snap down hard with your elbow to break his grip, while pushing** your shoulder not whole upper body forward. Lift the gun up (to get it off the finger in the trigger). Deliver an elbow strike and move out creating distance, and evaluate force options.

**Additional Notes:**

- **Be sure your hold on the wrist is strong. Press your fist to your chest. Push your shoulder forward (not your whole upper body). There** should be no gaps or spaces which would allow **the gunman to pull the weapon away from your control ("handcuff principle").**

_2.   Aerosol Chemical Sprays_

**NOTE: Show slide, "Aerosol Sprays."**

Law enforcement encounters resulting in serious injury and death have increased dramatically in recent years. This has been attributed to drug usage, an over-burdened criminal justice system, and a general lack of respect for authority.

The need for less than lethal types of weapons for law enforcement officers is a recognized reality. With the use of aerosol sprays, the officer has at his disposal a less than lethal weapon which is effective at controlling noncompliant subjects.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 26 of 35

1.  Canister types

    It is possible to dissolve CN, CS, or OC in a suitable solvent and place it in a sealed aerosol canister. The liquid containing CN, CS, or OC is projected in the form of liquid stream, dust, foam, or mist. The liquid evaporates rapidly leaving the chemical agents to produce their normal effects.

    a)  Full Cone Spray - wide dispersion of spray which has a short range. The disadvantage of this pattern is that it contaminates a wider area which can affect other subjects and officers present. Officers should wait at least 15 seconds before entering the area. This pattern is also affected by wind conditions.

    b)  **Fogger Spray** - utilizes large amounts of chemical spray, has a long wide range of dispersion which is commonly used in riot and crowd control situations.

    c)  Ballistic Stream - has a powerful concentration stream which **will penetrate** the wind with a tight pattern, but may not have a great effect on the respiratory system. This pattern hits the subject with a splatter effect. Due to the ballistic nature of the stream the officer should **disengage from the subject.**

    d)  Foam - more difficult to remove from the affected area, has an immediate effect on the eyes, concentrates the effect on the subject being sprayed which reduces contamination to others in the area.

    e)  **There are various weights and sizes of canisters** available. The effective range of the aerosol spray depends on the make and model of the product.

    f)  Parts of aerosol canister - safety, actuator, nozzle, valve, canister, and tube.

2.  Spray patterns

    a)  Circular pattern - is best used if a subject is advancing by bobbing and moving. It covers a wide area of the face.

---

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 27 of 35

b) Vertical pattern - one on one, good for attacking animals.

c) Horizontal pattern - is best used for multiple targets, side to side.

3. Other considerations for use of aerosols

a) Most aerosol canisters may burst if exposed to prolonged 120°F heat or sunlight.

b) Prolonged exposure to temperatures below 32°F may result in slower discharge.

c) The canisters should be stored in a cool, dry place at comfortable room temperatures.

d) Some aerosol manufacturers recommend that the canisters be shaken periodically if not used regularly.

e) Be familiar with the type of canister you carry, safety precautions, and the operation of the spray top mechanism.

f) Carrying capability or type of holster should be considered for proper deployment.

g) Training and practice with inert units are periodically recommended. It is also recommended that you be familiar with the effects of and decontamination procedures for the product you are using. You should also have the Material Safety Data Sheet of your product available to give to hospital personnel if your sprayed subject should require any medical treatment.

h) Application techniques for aerosol products may vary depending on the product being used and the purpose of its use. Some units are manufactured to discharge in a spray/mist pattern, while others use a stream.

i) The element of surprise can work best to the officer's advantage. The suspects will gasp thus inhaling more of the aerosol product, causing the subject to exhibit considerably more severe reactions than witnessed under normal conditions.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 28 of 35

j) Remember that it can be used on you if taken away. PROTECT YOUR AEROSOL SPRAY!

4. Oleoresin Capsicum

**NOTE: Show slide, "Oleoresin Capsicum."**

a) Oleoresin - as defined by *Webster's Dictionary*, is a mixture of an essential oil and resin found in a natural state or prepared for pharmaceutical purposes.

b) Capsicum - any solanaceous plant of the genus Capsicum occurring in many pepper varieties of the garden, that has pungent seeds, ranging from mild to hot, enclosed in a podded or bell shaped pericap.

c) Oleoresin Capsicum – oil of capsicum.

d) Capsaicinoids (cap-SAY-a-noids) – a group of compounds naturally occurring within the fats, oils, and waxes of the pepper plant. The amount of these compounds determines the pungency of the pepper.

e) Capsaicin (cap-SAY-a-sin) – the most prevalent of the 7 compounds found within the Capsaicinoids, and considered to be the <u>active ingredient</u> in OC.

f) The heat or pungency of the capsicum uses the "Scoville Organoleptic Test of 1912" and is expressed in Scoville Heat Units (SHUs). The SHU is a measure of heat as perceived from the burning sensation when peppers are placed on the tongue (perception of heat from taste). For example, a green bell pepper has zero SHU, while a jalapeno pepper has 5,000 SHU.

g) Testing has shown that 1% Oleoresin Capsicum is sufficient, but the F.B.I. requested a concentration of 5% Oleoresin Capsicum for testing. The 5% Oleoresin Capsicum concentration is rated as having 1,000,000 SHUs.

h) The FAA rules regarding aerosol products and weapons prohibits carrying these on board commercial aircraft and is a federal offense that carries a stiff penalty.

---

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 29 of 35

used as a shield. As the officer is moving out of the line of attack he will slam the flat side of the clipboard into the face of the attacking dog, then use the edges or corners of the clipboard as a striking weapon (aiming for the targets discussed earlier, mainly the snout or side of neck). As the dog is distracted, or possibly even incapacitated, the officer may take advantage of other options.

**(b)** Furniture

Indoor or outdoor furniture may be used as a defensive or offensive weapon against a dog attack. For instance, a chair may be used as a shield and tool to guide the dog into a room or fenced-in area and out of the way. Remember, avoiding further contact with the animal may be in the best interest of the officer.

Note: These are only a couple of objects that could be used in defense against a canine attack. Be resourceful and be prepared for the unexpected.

III. Conclusion

A. Summary

During this block of instruction students have been introduced to several important areas of subject control and arrest techniques. Additionally, students have participated in practical exercises utilizing various control and arrest techniques. Specifically, the following areas were addressed:

1. The force continuum concept.

2. Pressure points as a control for certain levels of resistant behavior.

3. Subject controls for various levels of assaultive and resistant behavior.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 30 of 35

4. Use of impact weapons.

5. Use of aerosol/chemical weapons.

6. Handcuffing and search techniques.

7. Weapon retention and disarming techniques.

**NOTE: Show slide, "Training Objectives."**

B. Questions from Class

C. Closing Statement

Students should remember that law enforcement training in the area of defensive tactics is a high risk, as well as a potential high liability area. The various escapes, counter measures, controls, and strikes are designed as a means of self-defense and a means of subject control. They are not to be used as a method of punishment nor as a means to abuse any individual.

It is advised that all techniques instructed and demonstrated should be practiced slowly until the technique is mastered. Continual and on-going training in these techniques is also encouraged. This will enhance the confidence of the individual, especially if ever faced with a physical confrontation.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 31 of 35

Register (https://www.t.........n/Request-Signup?returnurl=https%3a%2f%2fwww.tasanet.com%2fKnowledge-Center%2fArticles) Login (https://www.tasanet.com/Login?returnurl=........

Center%2fArticles%.........2fArticleID%2f1251175%2fPolice-Use-of-Force-Part-1-%e2%80%93-Understanding-the-Use-of-Force-Continuum) (https://www.tasanet.com/)

The Best Source for
Experts Worldwide



(https://www.tasanet.com/Search-Experts)

tasa-
group-
(https://

800-523-2319     experts@tasanet.com (mailto:experts@tasanet.com)

About Us     Expert Specialties     Products     Knowledge Center

(https://www.tasanet.com/)(https://www.tasanet.com/Expert-Witness)(https://www.tasanet.com/Products)(https://www.tasanet.com/Knowledge-Center)

Contact Us

(https://www.tasanet.com/Contact-Us)

Knowledge Center (https://www.tasanet.com/Knowledge-Center) / Articles (https://www.tasanet.com/Knowledge-Center/Articles)

Clement
Exhibit #2

Categories: Articles (https://www.tasanet.com/Knowledge-Center/Articles/PID/477/ev/1/CategoryID/52/CategoryName/Articles), Law Enforcement & Corrections (https://www.tasanet.com/Knowledge-Center/Articles/PID/477/ev/1/CategoryID/85/CategoryName/Law-Enforcement-Corrections), Resources for Attorneys (https://www.tasanet.com/Knowledge-Center/Articles/PID/477/ev/1/CategoryID/102/CategoryName/Resources-for-Attorneys), Safety (https://www.tasanet.com/Knowledge-Center/Articles/PID/477/ev/1/CategoryID/104/CategoryName/Safety)

# Police Use of Force Part 1 – Understanding the Use of Force Continuum

TASA ID: 321 (Search-Experts/Advanced-Expert-Profile/TasaID/321)

We are living in a time when our police force is coming under great scrutiny and criticism for their actions. One question that keeps coming up is "was the use of force utilized by the police justified?" While the public may not understand or even agree, law enforcement agencies do have policies and guidelines that cover their use of force. Officers who find themselves in a situation where they are required to take a criminal into custody or defend themselves must determine how to handle a potentially dangerous rapidly changing split second situation. These policies, known as the *Use of Force Continuum*, outline the correct actions that should be taken by a law enforcement officer if a situation should arise that requires the use of force.

The *Use of Force Continuum* was designed for the police who appeared before police review boards. It was originally used as an objective guideline to determine if the force utilized was "proper" and "justified." It provides a standard for finding out the answers to questions like "Did the police follow the use of force steps in the proper order when escalation of use of force was utilized? Were any steps skipped and if so why?" While every situation may have many variables, the *Use of Force Continuum* is regarded as the gold standard to be utilized when determining the appropriate level of force for the situation. The *Use of Force Continuum* consists of many levels of escalating actions and allows an officer to move from one level to another level as necessary, even skipping a level if specific circumstances warrant it. Under the guidelines of the *Use of Force Continuum* officers are justified and permitted to use equal force to what they are encountering or even one level above the force they are encountering to de-escalate or neutralize the force that is being used against them.

## *Use of Force Continuum Levels*

**Officer Presence** - No force is used. This is always the preferred method of resolving a situation or conflict. The mere presence of a police officer in uniform or in a marked police car is often enough to stop a crime in progress or prevent a situation from escalating.

**Verbal Commands** - If the physical presence of police is not enough, verbal commands can be added to achieve the desired results. A verbal command can be as simple as "stop" or "don't move" or even "you're under arrest." When using verbal commands, the content and the tone of voice used are very important. It should be non-threatening and calm, but firm.

**Empty Hand Control** - This is basically the use of bare hands and no weapons. If words and an officer's presence are not enough, then the officers may need to get physically involved. This level usually involves what is called "soft empty hand techniques" or "hard empty hand techniques." There is no use of weapons or equipment at this level. Instead, an officer may use "soft empty hands techniques" by using his or her hands to hold or restrain in order to achieve the desired results. If the need arises for "hard empty hands technique," they may use punches or kicks to subdue a suspect.

**Less Lethal Alternatives** - This is a level of force that many police forces have added to their *Use of Force Continuum* policies and procedures. It involves using less-lethal weapons as an alternative to lethal force. These weapons are designed to temporarily incapacitate, confuse, delay, or restrain an adversary in a variety of situations. They are often used in riots, prison disturbances, and hostage rescues. They can include pepper spray, batons, and Tasers. If soft or hard empty hand techniques don't work, and if the suspect is violent or threatening, more extreme but non-deadly measures may be used to bring the suspect under control or to arrest them. These should only be used when other methods have failed. Less-lethal weapons are valuable when the use of lethal force is not appropriate and the hope is that lesser force will work. It is also used if lethal force is justified but its use could cause injury to bystanders or damage to property and environment.

**Deadly Force** - If a police officer believes that a suspect poses a significant threat of death or serious physical injury to the officer or to others, then the use of deadly force is justified. Police officers must believe that they have no other option but to discharge their firearm in order to protect their life or the lives of others.

(https://www.tasanet.com/)
(https://www.tasanet.com/Expert-Witness)
(https://www.tasanet.com/Products)
(https://www.tasanet.com/Knowledge-Center)

Webinar Calendar

(https://www.tasanet.com/Knowledge-Center/Events-Calendar)

Archived Webinars

(https://www.tasanet.com/Knowledge-Center/Archived-Webinars)

Articles

(https://www.tasanet.com/Knowledge-Center/Articles)

The TASA Times

(https://www.tasanet.com/Blog) (https://www.tasanet.com/Contact-Us)

## Categories

\tasanet.com/Knowledge-Category/ID/53/CategoryName/Accident-s-Reconstruction)

Accident Analysis / Reconstruction (h Center/Articles/PID/477/ev/1/f Analysis-Reconstruction)

tasanet.com/Knowledge-category/ID/159/CategoryName/Animals)

Animals (https://www.tasanet.cc Center/Articles/PID/477/ev/1/(

tasanet.com/Knowledge-category/ID/54/CategoryName/Appraisals-

Police officers put their lives on the line every day and their main objective is to keep the peace without using aggressive tactics or force. However, depending on the situation, they can and do use justified force when necessary. The Use of Force Continuum is a wonderful training tool and guideline to help them keep a situation from escalating. It is also utilized to clarify to law enforcement officers, the courts, and the general public the standards and justifiable use of force by officers was followed. (https://www.tasanet.com/)

*This article discusses issues of general interest and does not give any specific legal or business advice pertaining to any specific circumstances. Before acting upon any information, you should obtain appropriate advice from a lawyer or other professional. (https://www.tasanet.com/Search-Experts) Experts Worldwide*

*This article may not be duplicated, altered, distributed, saved, incorporated into another document or website, or otherwise modified without the permission of TASA.*

🐾 About Us　　　🐾 Expert Specialties　　　🐾 Products　　　🐾 Knowledge Center

Previous
(https://www.tasanet.com/)(https://www.tasanet.com/Expert-Witness)(https://www.tasanet.com/Products)(https://www.tasanet.com/Knowledge-Center)

Next

🐾 Contact Us

Share　　Share　3　　Print

(https://www.tasanet.com/Contact-Us)

## Let Us Find Your Expert

Note: This form is to be completed by legal and insurance professionals ONLY. If you are a party in a case that requires an expert witness, please have your attorney contact TASA at 800-523-2319 (tel 8005232319).

Name

Phone

Affiliation (if applicable)

Use this space to provide some details about the expert you require, and a TASA referral advisor will contact you.



## Search Experts

TASA provides a variety of quality, independent experts who meet your case criteria. Search our extensive list of experts now.

## Testimonials

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 33 of 35

U.S. Department of Justice. Office of Justice Programs. National Institute of Justice - NIJ.gov



## The Use-of-Force Continuum

Most law enforcement agencies have policies that guide their use of force. These policies describe a escalating series of actions an officer
may take to resolve a situation. This continuum generally has many levels, and officers are instructed to respond with a level of force appropriate to
the situation at hand, acknowledging that the officer may move from one part of the continuum to another in a matter of seconds.

An example of a use-of-force continuum follows:

* **Officer Presence** — No force is used. Considered the best way to resolve a situation.

  * The mere presence of a law enforcement officer works to deter crime or diffuse a situation.

  * Officers' attitudes are professional and nonthreatening.

* **Verbalization** — Force is not-physical.

  * Officers issue calm, nonthreatening commands, such as "Let me see your identification and registration."

  * Officers may increase their volume and shorten commands in an attempt to gain compliance. Short commands might include

* **Empty-Hand Control** — Officers use bodily force to gain control of a situation.

  * *Soft technique.* Officers use grabs, holds and joint locks to restrain an individual.

  * *Hard technique.* Officers use punches and kicks to restrain an individual.

* **Less-Lethal Methods** — Officers use less-lethal technologies to gain control of a situation.

  * *Batons.* Officers may use a baton or projectile to immobilize a combative person.

  * *Chemical.* Officers may use chemical sprays or projectiles embedded with chemicals to restrain an individual.

  * *Conducted Energy Devices (CEDs).* Officers may use CEDs to immobilize an individual. CEDs discharge a high-voltage, low-
amperage jolt of electricity at a distance.

* **Lethal Force** — Officers use lethal weapons to gain control of a situation. Should only be used if a suspect poses a serious
threat to the officer or another individual.

  * Officers use deadly weapons such as firearms to stop an individual's actions.

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 34 of 35

U.S. Department of Justice, Office of Justice Programs, National Institute of Justice - NIJ.gov

## The Use-of-Force Continuum

Most law enforcement agencies have policies that guide their use of force. These policies describe an escalating series of actions an officer may take to resolve a situation. This continuum generally has many levels, and officers are instructed to respond with a level of force appropriate to the situation at hand, acknowledging that the officer may move from one part of the continuum to another in a matter of seconds.

An example of a use-of-force continuum follows:

- **Officer Presence — No force is used. Considered the best way to resolve a situation.**
  - The mere presence of a law enforcement officer works to deter crime or diffuse a situation.
  - Officers' attitudes are professional and nonthreatening.

- **Verbalization — Force is not-physical.**
  - Officers issue calm, nonthreatening commands, such as "Let me see your identification and registration."
  - Officers may increase their volume and shorten commands in an attempt to gain compliance. Short commands might include "Stop," or "Don't move."

- **Empty-Hand Control — Officers use bodily force to gain control of a situation.**
  - *Soft technique.* Officers use grabs, holds and joint locks to restrain an individual.
  - *Hard technique.* Officers use punches and kicks to restrain an individual.

- **Less-Lethal Methods — Officers use less-lethal technologies to gain control of a situation.**
  - *Blunt impact.* Officers may use a baton or projectile to immobilize a combative person.
  - *Chemical.* Officers may use chemical sprays or projectiles embedded with chemicals to restrain an individual (e.g., pepper spray).
  - *Conducted Energy Devices (CEDs).* Officers may use CEDs to immobilize an individual. CEDs discharge a high-voltage, low-amperage jolt of electricity at a distance

- **Lethal Force — Officers use lethal weapons to gain control of a situation. Should only be used if a suspect poses a serious threat to the officer or another individual.**
  - Officers use deadly weapons such as firearms to stop an individual's actions.

*Date Created: August 4, 2009*

Case 5:19-cv-00467-BO   Document 71-8   Filed 04/01/21   Page 35 of 35