48. Martin Stat. re. Appr. Rebut.

RECIEVED
7-1-18

ON THE DATE AND TIME IN QUESTION DEP. J. WHITE CAME TO ME REQUESTING TO KNOW WHAT HE SHOULD DO IN REGARD TO HIS PERFORMANCE EVALUATION HE RECEIVED FROM SGT. ALEXANDER. I SPOKE TO DEP. WHITE AND ADVISED HIM TO WRITE A LETTER AND REQUEST FOR IT TO BE PLACED IN HIS PERSONAL FILE ALONG WITH THE EVALUATION. THE REASON FOR THIS IS IF SOMEONE ELSE REVIEWED THE EVALUATION THEY WOULD ALSO BE ABLE TO READ HIS OPINION OF WHY HE RECEIVED THE SCORE HE DID. I TOLD DEP. J. WHITE TO MAKE SURE HE SPOKE WITH THE SHERIFF ABOUT HIS SITUATION.

SGT. B. C. MARTIN

July 18, 2018

Statement regarding accusation made by Dep. J.J. White.

On Monday July 16, 2018, I was contacted by Capt. Watkins and requested to write a statement in reference to the previous incident involving Dep. White and myself from back in January.

The specific accusation was that I told Dep. White "didn't I tell your ass not to do that anymore and I will take care of your ass when I get to work". This conversation took place about six months ago, and I did not copy down word for word what was said, but I do remember being quite angry with him that morning over continued defiance of instructions given to him to stop taking out criminal summons on people he encountered for every little thing he saw. I do not remember the specific wording I used during that conversation, nor can I deny that as upset as I was I did not say that either.

As for the incident in the Sheriff's office later in the day, I did not say anything initially. I overheard a conversation taking place in the patrol room that was getting heated between Dep. White, Poole and Sgt. Alexander. I stepped out into the room just to see what was going on and Dep. White then began making statements to me. Dep. White got up from his seat, and started walking toward me making verbal and hand gestures, but then stopped. There was a heated exchange between us as well, but I do not remember using any specific foul language toward him while addressing him.

Durwood Lee Campbell
*Durwood Lee Campbell* (signature)

On the date in question I and Sgt. Alexander were discussing problems on our shift when we got through with the discussion. Lt. Campbell and Deputy White started arguing. Deputy White told Lt. Campbell that I respect you but you are not going to talk to me any kind of way. Lt. Campbell stated I have told several times and Sgt. Roberson has told you we do not do criminal summons on traffic matters. Deputy White replied you was not there I did was right in that situation if I would not have acted she could have killed someone. Lt. Campbell replied are you state trooper the answer is no. Deputy White stated look my father is a big black man and even he do not talk to me and disrespect me like this I am the only one that has defended you when everyone in the department calls you dirty soup I say you the best training officer we got but I am done with this conversation and Deputy White got up and left.

Signed: Andre Poole *[signature]*

07-18-18

# Vance County   EMPLOYEE PERFORMANCE APPRAISAL (VC-2016)



| NAME JUSTIN WHITE | DEPARTMENT PATROL DIVISION |
|---|---|
| TITLE PATROL DEPUTY | DATE IN POSITION 6/5/2017 |
| SUPERVISOR SGT. M. ALEXANDER/ SGT. C. WELBORN | REVIEW PERIOD   From: 6/2017   To: 6/2018 |

**PERFORMANCE/JOB FACTORS**: At the beginning of the performance period, review the job description and responsibilities of the position with the employee. At the end of the period, assess the individual's performance for each factor listed by selecting the appropriate rating. Use the comment section to provide supporting details.

1 = Below Standard (Needs improvement; performance is inconsistent; some counseling and documentation needed for this score)

2 = Standard (Fully meets requirements; adheres to County and Department policies)

3 = Above Standard (Occasionally exceeds requirements)

| Performance/Job Factors | Rating | Comments |
|---|---|---|
| **Job Knowledge/Skills** The application of technical skills and procedural knowledge displayed in performing the basic job responsibilities. The degree of understanding of the operations, practices and procedures relating to one's job. | 2 | |
| **Quality** Consider the accuracy, completeness, and acceptability of the work/service provided relative to defined or generally acceptable standards, policies, guidelines, etc. | 2 | |
| **Productivity** Consider the amount or quantity of work produced as well as how efficiently time, material, or other resources are utilized in performing the duties and responsibilities of the job. | 3 | Deputy White normally has all of his work completed by the end of each work period and stays on task with each of his assignments. |
| **Public Relations** Presents positive image and impression to public; is courteous and responds to questions/phone calls timely and with accuracy. | 2 | |
| **Interpersonal Skills/Teamwork** The ability to interact effectively with co-workers and supervisors to build rapport and foster teamwork. The degree to which one is a team player. The support and cooperation given to others in order to achieve common goals and objectives. | 2 | |
| **Initiative/ Motivation** The degree of self-directed action, independence and resourcefulness displayed in accomplishing work assignments. The willingness to go beyond the basic job requirements. | 2 | |
| **Communication Skills** The ability to express oneself clearly both orally and/or in writing. The degree of effectiveness in communicating with co-workers and supervisors on issues/problems relating to one's job or department. | 1 | Deputy White sometimes speaks to the citizens and other co-workers with a very nasty attitude. |
| **Flexibility/Adaptability** The ability to apply one's skills and knowledge to a variety of tasks and assignments. The willingness to accept and adjust to changes in the work environment; learn new skills, processes or procedures. The ability to utilize skills (current and new) to gain efficiency and improve one's productivity in carrying out basic job requirements. | 2 | |
| **Safety Performance** Complies with Safety Program Policy and Procedures. Shows willingness to participate in safety program activities. | 2 | |
| **Dependability/Attendance** The extent to which an employee follows County policy. Is punctual, observes prescribed work breaks/meal periods, and maintains a solid overall attendance record. | 3 | Deputy White attends work each day, never calls out and reports to work on time each day he is scheduled to work. |

Case 5:19-cv-00467-BO   Document 71-48   Filed 04/01/21   Page 5 of 15

|  | 21 |  |
|--|----|--|
|  |    | ≈ Total Score |

**UNIQUE CONTRIBUTIONS/ACCOMPLISHMENTS**   Use this section to describe extraordinary contributions or accomplishments which occurred during this review period and should be considered in the overall assessment of performance.

**OVERALL PERFORMANCE RATING**   Check the appropriate performance rating box below to indicate the employee's overall level of performance during the performance review period. Consider your assessment of the performance/job factors and any unique contributions/accomplishments noted.

Look at the scale below and select the category for the Overall Performance Rating.
- ☐ Score is 10 – 14 - Below Standard – Does not meet the Performance/Job Factors; Supervisor needs to establish Performance Improvement Plan
- ☐ Score is 15 – 23 - Standard – Meets most of the Performance/Job Factors
- ☐ Score is 24 - 30 - Above Standard – Exceeded all or most of the Performance/Job Factors

**IMPROVEMENTS/ENHANCEMENTS/CAREER DEVELOPMENT**
Identify the type of training program, course work, or special projects/assignments that would be beneficial to employee to improve or enhance the skills required in the current position.

Deputy White needs to improve his attitude and learn to follow direct orders from his immediate supervisor. Enhance communication skills and continue to improve in learning his normal job duties as a deputy within his career.

**OUTCOMES/GOALS FOR NEXT REVIEW PERIOD.** These outcomes/goals are unique for this employee's responsibilities and may differ from other employees with the same title. Make sure they are specific, measurable, achievable, realistic, and tangible. Use back side of this page and additional sheets if needed.

1. DCI certification training

2. CJ Leads training and certification

3.

4. _____

**PERFORMANCE APPRAISAL COMMENTS**

Employee's Comments   Attach additional page (if required) Will do 99~

Employee Signature: [signature]   Date: 7-2-2018

Signature indicates only that contents have been reviewed with the employee and does not imply agreement or disagreement.

**Signatures**

Immediate Supervisor: [signature]   Date: 7/2/18 – 7/3/18

Department Head: [signature]   Date: [illegible]

Case 5:19-cv-00467-BO   Document 71-48   Filed 04/02/21   Page 6 of 15

# Vance County  EMPLOYEE PERFORMANCE APPRAISAL (VC-2016)



| | |
|---|---|
| NAME JUSTIN WHITE | DEPARTMENT PATROL DIVISION |
| TITLE PATROL DEPUTY | DATE IN POSITION 6/5/2017 |
| SUPERVISOR SGT. M. ALEXANDER/ SGT. C. WELBORN | REVIEW PERIOD From: 6/2017   To: 6/2018 |

**PERFORMANCE/JOB FACTORS** At the beginning of the performance period, review the job description and responsibilities of the position with the employee. At the end of the period, assess the individual's performance for each factor listed by selecting the appropriate rating. Use the comment section to provide supporting details.

1 = Below Standard (Needs improvement; performance is inconsistent; some counseling and documentation needed for this score)

2 = Standard (Fully meets requirements; adheres to County and Department policies)

3 = Above Standard (Occasionally exceeds requirements)

| Performance/Job Factors | Rating | Comments |
|---|---|---|
| **Job Knowledge/Skills** The application of technical skills and procedural knowledge displayed in performing the basic job responsibilities. The degree of understanding of the operations, practices and procedures relating to one's job. | 2 | |
| **Quality** Consider the accuracy, completeness, and acceptability of the work/service provided relative to defined or generally acceptable standards, policies, guidelines, etc. | 2 | |
| **Productivity** Consider the amount or quantity of work produced as well as how efficiently time, material, or other resources are utilized in performing the duties and responsibilities of the job. | 3 | Deputy White normally has all of his work completed by the end of each work period and stays on task with each of his assignments. |
| **Public Relations** Presents positive image and impression to public; is courteous and responds to questions/phone calls timely and with accuracy. | 2 | |
| **Interpersonal Skills/Teamwork** The ability to interact effectively with co-workers and supervisors to build rapport and foster teamwork. The degree to which one is a team player. The support and cooperation given to others in order to achieve common goals and objectives. | 2 | |
| **Initiative/ Motivation** The degree of self-directed action, independence and resourcefulness displayed in accomplishing work assignments. The willingness to go beyond the basic job requirements. | 2 | |
| **Communication Skills** The ability to express oneself clearly both orally and/or in writing. The degree of effectiveness in communicating with co-workers and supervisors on issues/problems relating to one's job or department. | 1 | Deputy White sometimes speaks to the citizens and other co-workers with a very nasty attitude. |
| **Flexibility/Adaptability** The ability to apply one's skills and knowledge to a variety of tasks and assignments. The willingness to accept and adjust to changes in the work environment; learn new skills, processes or procedures. The ability to utilize skills (current and new) to gain efficiency and improve one's productivity in carrying out basic job requirements. | 2 | |
| **Safety Performance** Complies with Safety Program Policy and Procedures. Shows willingness to participate in safety program activities. | 2 | |
| **Dependability/Attendance** The extent to which an employee follows County policy. Is punctual, observes prescribed work breaks, meal periods, and maintains a solid | 3 | Deputy White attends work each day, never calls out and comes to work on time each day he is |

|  |  | 21 | ≈ Total Score |
|---|---|---|---|

**UNIQUE CONTRIBUTIONS/ACCOMPLISHMENTS** Use this section to describe extraordinary contributions or accomplishments which occurred during this review period and should be considered in the overall assessment of performance.

**OVERALL PERFORMANCE RATING** Check the appropriate performance rating box below to indicate the employee's overall level of performance during the performance review period. Consider your assessment of the performance/job factors and any unique contributions/accomplishments noted.

Look at the scale below and select the category for the Overall Performance Rating.
- ☐ Score is 10 – 14 - Below Standard – Does not meet the Performance/Job Factors; Supervisor needs to establish Performance Improvement Plan
- ☐ Score is 15 – 23 - Standard – Meets most of the Performance/Job Factors
- ☐ Score is 24 - 30 - Above Standard – Exceeded all or most of the Performance/Job Factors

**IMPROVEMENTS/ENHANCEMENTS/CAREER DEVELOPMENT**
Identify the type of training program, course work, or special projects/assignments that would be beneficial to employee to improve or enhance the skills required in the current position.

Deputy White needs to improve his attitude and learn to follow direct orders from his immediate supervisor. Enhance communication skills and continue to improve in learning his normal job duties as a deputy within his career.

**OUTCOMES/GOALS FOR NEXT REVIEW PERIOD.** These outcomes/goals are unique for this employee's responsibilities and may differ from other employees with the same title. Make sure they are specific, measurable, achievable, realistic, and tangible. Use back side of this page and additional sheets if needed.

1. DCI certification training
2. CJ Leads training and certification
3.
4.

**PERFORMANCE APPRAISAL COMMENTS**

Employee's Comments Attach additional page (if required) Will do ppw

Employee Signature: _____ Date: 7-2-2018

Signature indicates only that contents have been reviewed with the employee and does not imply agreement or disagreement.

**Signatures**

Immediate Supervisor: _____ Date: 7/2/18 – 7/3/18

Case 5:19-cv-00467-BO Document 71-48 Filed 04/01/21 Page 8 of 15

Department Head: _____ Date: 7-3-18

June 15th, 2018

**Transmitted via Hand Delivery**

Sheriff Peter White
Vance County Sheriff's Office
156 Church Street, Suite 004
Henderson, NC 27536

**Personnel Sensitive, Confidential & Sworn File**

**Re: Title VII Civil Rights Act of 1964-Race & Gender Discrimination**

Dear Sheriff

I, Justin Jamel White, deputy sheriff at the Vance County Sheriff's Office, hereby file written complaint pertinent to race and gender discrimination.

On February 20th, 2018, I was written up and suspended for 5 days without pay, publicly humiliated by the department, having to walk out of the sheriff's office without a gun and badge and being stripped of my law enforcement credentials. On my way out, I encountered several deputy sheriffs, who saw me after the issuance of corrective action. **I was heavily lied on by Lt. Durwood Campbell (S-7) and no member of management seemed to care.**

Lt. Campbell is a Caucasian male and I am an African American male. Jamie Goss, Caucasian female, called and complained which triggered this entire ordeal despite me being in the performance of my job duties and responsibilities. My main duty is to answer calls, patrol the county, observe and enforce violations of law/county ordinances. It should be noted, On June 5th, 2018, Ms. Goss pled guilty. **It is going to be too late to correct someone's action when he or she and innocent third parties are tragically killed as a result of a motorist illegally gross decisions under the wheel.** I am happy to discuss the incidents involving this in the near future.

I was never given a chance to share my side in reference to providing verbal or written statement in reference to the deceptively egregious allegations by Lt. Durwood Campbell. Per Sheriff White, Chief Lawrence Bullock and Captain Watkins were directed to get my side of the story before corrective action was issued. **That did not happen.** {It should be noted, this is not the first instance of insubordination with Chief Bullock and Captain Watkins as the Sheriff directed both of them to put me back on Sgt. Roberson's (S-10) shift in December 2017 and January 2018. This is because the shift transfer was not approved by the High Sheriff nor was it submitted to the Chief Deputy for review and submission for approval to the Sheriff. Also, the Sheriff did not delegate authority to Capt. Watkins or Lt. Campbell to transfer staff}. No one talked to me about anything. Out of the blue, I walk in and is suspended over hot lies. It should be noted, Chief Bullock and Capt. Watkins were insubordinate to the Sheriff by not getting my take on the situation. **Based on mere appearance, the County of Vance, NC and Sheriff Office took the white man's word over the black man.** Same is a civil rights violation.

Lt. Campbell cursed, fussed & threatened me in the presence of third parties. The first time, Deputy Poole was present in the patrol room & the second time, Sgt. Alexander & Deputy Poole were present (patrol room). I am happy to discuss the incidents involving this in the near future.

I have direct evidence of both situations and look forward to presenting same. I believe we may be able to rectify this situation administratively. My pay check was docked 911.00 dollars and 28 hours of overtime went down the drain over lies and errors by management. It should be noted, the sheriff's office nor HR will not receive copies of my evidence. If the situation goes to trial in a federal court of competent jurisdiction i.e. EEO and or state court of competent jurisdiction i.e. defamation of character, libel and slander, negligence, then it will be provided during discovery as ordered by the courts.

It should be noted, there is a pattern of discrimination and negligence at the sheriff's office. Upon hire, I begged Lt. Ray Shearin (S-4) for a bullet proof vest for 3 weeks and was only given one after I approached the command staff while they were reading reports in late June 2017 and Captain W.W. Bullock (S-3) ordered him to find me a vest. I responded to emergency calls i.e. burglary in progress, no vest.

From late June 2018 until' August 2018, I begged for tires on my patrol vehicle to no avail for nearly 8 weeks. I followed the chain of command, Sgt. Roberson (S-10), Lt. Shearin and former Captain now Chief, L.D. Bullock (S-2) requesting tires. Sgt. Roberson eventually told me to stop asking and go to the sheriff because these people don't do their jobs. As I was going to see the Sheriff, Capt. Bullock asked what's wrong? (After I walked in his office for the third time) and where is your car? He saw the car and went to Lt. Shearin and I got some tires same day despite both of them knowing I needed tires prior to. The metal wires were showing on rear tires.

Last July 2017, Deputy Warren Durham (S-95) heard a bullet ricochet off of his vehicle on Breckenridge Street, near the jail and feared for his life. That was the same night that former Deputy Erik Sheftal (S-29) held a suspect at gun point in the city limits of Henderson by the library. Deputy Durham had previously asked Lt. Shearin for a vest to no avail.

In January 2018, Deputy Al-Wadeii (S-28) was responding to calls without a vest with Lt. Campbell and I questioned him being on the streets without a vest. Lt. Campbell called Lt. Shearin and he came to the sheriff's office and issued him a vest (speedily despite my situation).

It should be noted, Lt. Shearin is a Caucasian male and the parties listed above are minorities. This is a civil rights issues. Also, Lt. Shearin was directed by the High Sheriff to issue me equipment i.e. in September 2018 twice to no avail

While I serve at the pleasure of, I contend these issue do not fit the criteria as they would reasonably violate county and or departmental policy, federal civil rights laws, NC Public Policy Doctrine, NC Tort Law, etc. Also, taking adverse action against someone after reporting the aforementioned is reprisal and or retaliation. How can one write up, suspend and dock pay of the black man but the same alleged offenses are being committed by white deputies? How can one

write up, suspend and dock pay of subordinate but allow <u>other supervisory</u> or <u>managerial</u> deputies to get away with it? How can <u>the subordinate deputy be suspend for insubordination</u> & (conduct) the chief deputy, captain & lieutenant are not held to the same standard for being insubordinate?

*****SOMETHING IS WRONG WITH THIS PICTURE & NEEDS CORRECTING*****

It is to my recommendation that <u>Chief Bullock</u> be <u>issued a corrective</u> action and <u>suspended</u> for 10 days without pay in reference to insubordination by not returning me to Sgt. Roberson's shift and not obtaining statements for the allegations made by Lt. Campbell.

It is to my recommendation that <u>Capt. Watkins receive a lesser sanction</u> as the chief deputy had the overall responsibility as the manager with rank/seniority to <u>ensure my transfer back to Sgt. Roberson's shift</u> and that they met with me about the allegations by Lt. Campbell.

It is to my recommendation that <u>Lt. Shearin</u> be issued corrective action and <u>suspended</u> for 10 days without pay and demoted in reference to failing the issue the protective and necessary law enforcement equipment after being directed to do so by the Sheriff several times.

It is to my recommendation that <u>Lt. Campbell</u> be <u>issued corrective action, suspended</u> for 10 days without pay <u>& demoted</u> for his official misconduct & verbal/written deception pertinent to the write up.

I understand it will be difficult in disciplining members of your command staff but as you said in times past, we have to be fair.

**There were no legitimate non-discriminatory reasons to issue corrective action and authorize adverse action. There are no bona-fide reasons and or business necessity for the abovementioned. Even if responsibility laid with me, then the mixed motive legal theory would apply.**

I look forward in hearing from you and resolving this issue.

Sincerely,


Justin White, M.S., B.S
Jw  JW- 4-22-2018

Cc: File
Argretta Johen, HR Director
Peter White, High Sheriff
Justin White, Deputy Sheriff

_signature_ 6/22/2018

State of North Carolina
County of Vance

On this the 22nd day of June, 2018, before me a notary public, the undersigned party, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness hereof, I hereunto for the above-mentioned hereby set my hand and official seal.

_____
Notary Name

_____
Notary Signature

My commission expires: _____

(Seal)

[Notary seal: OCTAVIA LAMBERT, NOTARY PUBLIC, VANCE COUNTY, NC]

130 Chappel Lane • Kittrell, NC 27544 • (919) 961-3448 • Justinwhitencssd@yahoo.com

June 15th, 2018      **Transmitted via Hand Delivery**

Sheriff Peter White      **Personnel Sensitive, Confidential & Sworn File**
Vance County Sheriff's Office
156 Church Street, Suite 004
Henderson, NC 27536
Pwhite@vancecounty.org

**Re: Employee Performance Appraisal Rebuttal**

Dear Sheriff

I, Justin J. White, deputy sheriff, hereby file rebuttal in reference to the aforementioned done by Sergeant Myron D. Alexander (S-12), Patrol Supervisor. Same was done on June 1st, 2018, 4 months approximately after I was transferred from his shift. I was notified of this document on June 8th, 2018, at 6 p.m. by Sgt. Chris M. Welborn (S-13), Patrol Supervisor & presented with same to sign in which I noted being in strong disagreement with. I shared my dissent with Sgt. Welborn, in which Sgt. Bobby Martin (S-11) was present & I was told to appeal it. Attached is a copy of my performance appraisal.

Sgt. Welborn advised me, JJ (me) you are a good employee, you work & you got some know how. Sgt. Welborn stated, this report is biased because Myron have personal issues with you. He advised me, you are a team player & professional with the citizens & us but I do get a little carried away from time to time but not too much. Sgt. Welborn claimed, JJ we all get a little carried away from time to time, it's going to happen. Sgt. Welborn stated, you are not insubordinate, you follow orders & do your job. Sgt. Welborn stated, go to the sheriff & talk to him.

Sgt. Bobby Martin advised me to file a rebuttal with the High Sheriff so it can be reviewed & removed from my file & if it was not overturned then for the rebuttal to be attached to the performance evaluation. Also, Sgt. Martin advised me that he had the same situation happen with a supervisor in investigations. Sgt. Martin claimed to have prepared a rebuttal & presented same to you & asked to be transferred since he could not satisfy his supervisor. Sgt. Martin won his case.

First & foremost, I am a stern & firm individual. I am shocked that Sgt. Alexander portrayed me negatively especially when he claimed that he did not have a problem with my job performance and or personal conduct in early January 2018 during a meeting with management, supervision & subordinates. Also, I have not been written up several times for my attitude & work ethics, nor have I been very insubordinate towards supervisors. Based on those deceptive & frivolous allegations, I request to view & copy my complete personnel file. It should be noted, I asked to see the file that Chief Bullock had when I was suspended in February 2018, in which I was denied & told, you have everything you need.

**How can Sgt. Alexander adjudicate my performance or personal conduct when he does not show up to work on time & has been a no call no show on calls for service on various occasions with staff that have requested back up? He is the king of absenteeism & tardiness. In fact, he is the reason why a memo was issued 6-7 months ago for patrol to report to clock on at 5:30 and report to work at 5:45 & he does not adhere to same. Plenty of times, my supervisor & I waited for him to come to work & he would show up at 7 a.m. but his staff was on time. It is substantially rare for him to clock on on-time.**

For example, Sgt. Alexander failed to report to work on time for 1 ½ hrs approximately, leaving me to answer calls in county alone & without back up, he gave Deputy I. Greene (trainee at-the-time) & Deputy T. Terry permission to come in late by using comp time. A burglary call (10-62 in progress) was assigned to me which was later downgraded to a prowler (10-76). Both calls for service were/are priority. The caller stated someone was trying to break into her residence & hung up. Then, she called back saying someone was trying to come through her window & that she heard them outside. I determined it was not a burglary or prowler but the wind causing the metal antenna & electric wires on her trailer to mimic same. In fact, day shift who was already off provided back up without my request since I was by myself. Sgt. Alexander was not appropriately disciplined for lying to Lt. Campbell (insubordination) claiming he was at work, when he was not, neglecting duty and failing to report as scheduled.

Deputy Branch (S-34) went to the sheriff's office on his day off a few months ago & met with Chief Bullock & Captain Watkins in reference to complaining on Sgt. Alexander pertinent to him not answering calls, not backing up deputies & not being accessible. As a matter of fact, Deputy Branch reported to management, supervision & co-workers that Sgt. Alexander was clearing calls after riding past the house & not stopping. Deputy Branch requested to be transferred to another shift & management told him to tough it out until the guys were out of training in May.

Deputy Poole (S-40) complained on Sgt. Alexander & wanted to be moved. In fact, on a call in January 2018, in which we had a burglary in progress call during the winter storm & Sgt. Alexander & Deputy Greene (S-41) were closer. Deputy Poole & I were near U.S. 1 S by the Franklin & Vance county line & we got there first & handled same despite them being on Warrenton road near U.S. 1. That incident triggered Deputy Poole's 10 day suspension, however, no one got on Myron for threatening Deputy Poole on the radio, you want to put your life on it in reference to who was closer to Regina Lane. Also, Sgt. Alexander, told Deputy Poole on the phone, I don't have to answer call because I am the supervisor.

Deputy Burns had problems with Sgt. Alexander not working & was constantly complaining on him to the Chief Bullock & Capt. Watkins. Also, former Deputy Lauren Matthews had a host of problems with Sgt. Alexander & was complaining.

According to supervision, every person that goes to his shift, either gets transferred or quits.

As a matter of recent fact, Deputy Al-Wadeii (S-28) worked Sgt. Alexander's shift f & was complaining to supervision on the other shift that he called for backup on Vicksboro Road & no one came but Deputy Edwards (S-24), who was the Northside car. Deputy Edwards stated he diverted from a call (pending) because Deputy Al-Wadeii called for help. Deputy Al-Wadeii claimed that Sgt. Alexander & Deputy Greene are always together.

As you can see, Sgt. Alexander has a history of unacceptable personal conduct and or grossly inefficient job performance. These matters needed attention. It is to my recommendation that Sgt. Alexander be suspended for 15 days without pay & demoted.

I look forward in hearing from you & resolving this matter internally.

Sincerely,

*[signature]* 6-20-18

Justin J. White, M.S., B.S.

Enclosures: (1)
Performance Appraisal

Cc: File
Argretta Johen, HR Director
Peter White, High Sheriff
Justin White, Deputy Sheriff
Chris Welborn, Sergeant
Bobby Martin, Sergeant

State of North Carolina
County of Vance

On this, the __20__ day of __June__, 20__18__, before me a notary public, the undersigned party, personally appeared __Justin J. White__ known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness hereof, I hereunto for the above-mentioned hereby set my hand and official seal.

__Tiffany L. Ayscue__
Notary Name

My commission expires: __July 31, 2019__

__[signature] Tiffany L. Ayscue__
Notary Signature

(Seal)