| | | |
|---|---|---|
| JUSTIN J. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' REPLY BRIEF** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| VANCE COUNTY, NORTH CAROLINA; | ) | **FOR SUMMARY JUDGMENT** |
| VANCE COUNTY SHERIFF'S OFFICE; | ) | |
| PETER WHITE, in his official and individual | ) | |
| capacities; LAWRENCE D. BULLOCK, in his | ) | |
| official and individual capacities; | ) | |
| WELDON WALLACE BULLOCK, in | ) | |
| his official and individual capacities, | ) | |
| and WESTERN SURETY COMPANY | ) | |
| a division of CNA SURETY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to Local Rule 7.1(g), the Defendants reply to Plaintiff's Response to Defendants' Motion for Summary Judgment.[1] (D.E. No. 72.)

## INTRODUCTION

Plaintiff was fired from his job as a state prison guard. He went to work as a campus security officer and was fired from that job. He took another job as a campus security officer and was again fired. He applied to the Vance County Sheriff's Office and, against the recommendation of senior officers, was hired by Sheriff Peter White. He then repeatedly disobeyed orders, was disrespectful to his supervisor and was suspended for it, got into a car accident because he continued to disobey orders and then lied about the circumstances that led to the accident, and finally broke the arm of a woman on whom he was serving warrants for shoplifting and did not even bring the warrants to the scene. The woman threatened to sue the sheriff and plans to do so. For this last incident the plaintiff was fired. He then sued the sheriff and two

---

[1] The caption on Plaintiffs' Response Brief is incorrect because it contains the name of Curtis R. Brame, who was never named as a defendant in this case. See Amd. Compl (Doc. No. 56).

senior officers, and, when he tried to get another job but could not get hired, he filed discrimination complaints against every employer that would not hire him. This is a fair and accurate summary of the facts of this case. See Doc. No. 65, pp. 2-9.

In support of his claim of racial discrimination, Plaintiff notes that Sheriff White, who is black, allowed Elvis Presley songs and piano music to be played at office Christmas parties. (Pl.'s Brf., p. 3.) Plaintiff offers no legal or other justification for this absurd proposition, but this is the best he can offer.

Plaintiff goes on to claim that Sheriff White "knew how to destroy a deputy's career because he had done so before," when he had not appointed "a sheriff's deputy who he disagreed with." (Pl.'s Brf., pp. 9, 26.) He cites Sheriff White's decision not to re-appoint a white deputy who said he would never work for a black sheriff. (Id., citing P. White Dep. pp. 48-49.) Why Plaintiff would cite this example, in which Sheriff White would not allow an officer who was openly prejudiced toward African-Americans to serve under him, is bewildering. This is a lawsuit filed by a black plaintiff who claims that Sheriff White racially discriminated against him – the same sheriff who would not allow a prejudiced white deputy to work for him. Defendants agree that the Court should consider this evidence.

Plaintiff's strange logic continues with a reference to how Sheriff White dealt with black and Hispanic street gangs. (Pl.'s Brf., p. 7.) The gangs were not a concern to the sheriff's office unless they committed crimes. (P. White Dep. pp. 20-21.) It is unclear how a decision not to bother or charge racial minorities unless they violated the law is evidence of racial animus.

Because there is an utter lack of evidence of any discriminatory treatment of Plaintiff by the Defendants, they are entitled to summary judgment.

## ARGUMENT

### A. Disparate Treatment under 42 U.S.C. §§ 1981 and 1983

Plaintiff attempts to sidestep his requirements in bringing a disparate treatment claim under § 1981. (Doc. 72 at 19-20; Doc. 55 ¶¶ 163-176.) Section 1981 can only be violated by "purposeful discrimination." Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). A plaintiff must plead and prove that "but for race, [he] would not have suffered the loss of a legally protected right." Comcast Corp.v.

2

Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). He must plausibly show that "racial animus" was the but-for cause of any alleged adverse action, and alleging that "race played some role" in a decision is not enough. Id. at 1011. Defendants made no assertion that Comcast eliminated the mixed-motive framework or that it is applicable to Title VII. Rather, in order to bring a § 1981 claim, but-for causation is required.

Plaintiff asserts that he was "terminated for his race, complaints of discrimination and sexual orientation." (Doc. 72 at 20.) Yet, the evidence does not show that racial considerations caused the actions of which he complains. He claims disparities in receiving equipment and training; yet presents no evidence to link these disparities to race. The evidence shows that firearms were issued based on qualification and deputies were not sent on patrol without a firearm. (P. White 2nd Aff. ¶ 6.)

Plaintiff claims a violation of § 1981 based on Captain Weldon Bullock's investigation of excessive force and subsequent recommendation. (Doc. 55 ¶ 168.) However, Plaintiff does not deny that he used force on Latwanya Oliver or that he broke her arm. (P. White Dep. 151-53, 167-68.) He confirms that Ms. Oliver filed a complaint, that Captain Bullock investigated it and met with him, and that he was fired after that process. (Pl.'s Dep. 180-81.) His attempts now to assert that delayed receipt of equipment and an investigation warranting termination would not have occurred if he had been white are absurd.

**B.     Disparate Treatment under Title VII and § 1981**

Plaintiff's brief claims that he has direct evidence of discrimination. Direct evidence is evidence "from which no inference is required." Holley v. N. Carolina Dep't of Admin., N.C., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012). A plaintiff must show "discriminatory motivation on the part of the decision maker involved" in the adverse action. Id. Despite his assertions that Sheriff White's alleged policing practices were influenced by race or that there was a policy treating people differently based on sexual orientation (Doc. 72 at 15-16), those alleged practices, for which there is no evidence, are not direct evidence that racial or sexual animus related to his termination. There is no evidence that Sheriff White made any racially or sexually discriminatory comments toward Plaintiff, displayed any intentional discrimination towards him,

or told him not to report any alleged behavior, or that racial animus was connected to the decision to fire him. Plaintiff has not presented direct evidence of discrimination.

Even in the absence of direct evidence, as argued in the defendants' original brief, and despite his counter-arguments, Plaintiff cannot prove a prima facie case of discrimination. Specifically, despite his assertion that he received good performance evaluations and "excelled at the very inception of his employment," satisfactory performance is based on the perception of the decision-maker at the time of any alleged adverse action. Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019); see also Coleman v. Schneider Elec. USA, Inc., 755 F. App'x 247, 249 (4th Cir.), cert. denied, 140 S. Ct. 116 (2019) (holding that the decision-maker can determine an employee's performance is inadequate at the time of an adverse action, even if different supervisors did not reach the same conclusion). As is plain from the evidence, at the time of termination, Plaintiff was investigated for and found to have used excessive force on an unarmed woman who was being arrested for non-violent charges. Not only does Plaintiff not deny that he used force, which resulted in the woman's arm being broken; but his attempts to now argue that his performance was satisfactory, when that performance warranted investigation, are ridiculous. Plaintiff also ignores his prior poor performance.

In addition, his attempt to argue that he was similarly situated in relation to a white officer who may have received a firearm before him is inapplicable, especially because the evidence fails to show that it was a decision made based on race, or how that alleged action was adverse. Further, there is simply no evidence in the record to support this argument, which has been raised for the first time in Plaintiff's Response Brief, without any citation to evidence.

In addition, Plaintiff's attempts to assert an alleged "sexual assault" (a term that, as applied to the facts Plaintiff presents, is such a gross distortion of the law that it begs the question of whether Plaintiff even understands the term) go way beyond the scope of the incidents at issue and are of no comparison to the complaint against him. In order to be similarly situated, employees must be similar in "all relevant respects," including conduct. Rios v. City of Raleigh, 2020 WL 5603923, at *11 (E.D.N.C. Sept. 18, 2020). First, Plaintiff attempts to compare himself to a lieutenant, who occupied a higher-ranking position than he

4

did.  Id. (finding that plaintiff was a detective and could not compare himself to police officers in lower-ranking positions).  Second, the circumstances are far from similar; not only was there no formal complaint against the lieutenant for "sexual assault," which did not occur, but the lieutenant had no previous disciplinary problems or complaints.  (P. White Second Aff. ¶ 3.)

Plaintiff also compares an officer who was counseled, but not fired, for negligently allowing a police dog to bite someone.  (Pl.'s Brf., p. 12.)  But this example is flawed because the officer did not engage in excessive force; the dog, not the officer, bit someone.  And there is no evidence of any other problem by that officer.  Plaintiff was thus not similarly situated to this officer.  The plaintiff cannot compare himself to employees he was not similarly situated to, and thus he fails to prove a prima facie case.

## C.      Legitimate, Non Discriminatory Reason and Pretext

Plaintiff claims Defendants have "switched their story" and given various reasons for his termination. Yet the evidence and pleadings are clear:  Defendants have maintained that Plaintiff was terminated for a string of poor behavior which ended with his use of excessive force. This explanation has not only remained constant since the filing of his complaint, but the evidence shows that Plaintiff had been warned about his behavior and performance; that he used force which resulted in Ms. Oliver's broken arm, and that an investigation determined that the incident was not reasonable; that he could not identify the proper technique during the investigation; and that his actions warranted his termination. (W. Bullock Dep. Ex. 4, pp. 6, 48-49, 102-03; W. Bullock Aff. ¶ 3.)  Defendants have not wavered from this legitimate and nondiscriminatory reason.  Rather, Defendants have painted a clear picture that Plaintiff had previous poor performance and that, unfortunately, his use of excessive force played the final part in his termination.

Summary judgment is proper when a plaintiff fails to present sufficient evidence to show that the proffered reason is "unworthy of credence or that a racially discriminatory reason more likely motivated the decision." Jones v. Lowe's Companies, Inc., 2021 WL 457927, at *6 (4th Cir. Feb. 9, 2021).  Plaintiff's evidence fails to show that the reason is unworthy of credence.  Not only have courts held that termination for excessive force is a legitimate, non-discriminatory reason, but there is no evidence that race motivated the termination.  Rather, the same people that Plaintiff accuses of race discrimination are the people he

5

claims gave him good evaluations, told him he was a good officer with good potential, and immediately moved him from trainee to deputy. (Doc. 72 at 17-18.) See Jones, at *7 ("It seems paradoxical that someone who was responsible for promoting [the plaintiff] and consistently favoring his advancement would suddenly turn around and show him the door out of a sense of racial animus.").

There is no evidence that Defendants, through an independent investigation conducted by an officer who was unaware of Plaintiff's EEOC complaint, were dishonest when Plaintiff was fired for the use of excessive force or that this was a means to fire him based on his race, especially when the defendants are of the same race as the plaintiff.

**D.        Hostile Work Environment under Title VII and § 1981**

Despite Plaintiff's assertion, Defendants did not rely on Comcast in their argument concerning hostile work environment, although but-for causation is applicable to alleged violations of § 1981. Defendants' argument, as detailed in their brief, is that the plaintiff cannot point to any evidence of offensive conduct that caused "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive" and altered the conditions of his work environment. Irani v. Palmetto Health, 767 F. App'x 399, 415 (4th Cir. 2019).

Specifically, Plaintiff cannot point to any evidence that any alleged racial comments were directed towards him by the named defendants, that the alleged comments were frequent or severe enough to impact his workplace, or that Defendants failed to intervene when Plaintiff complained of any alleged discriminatory conduct. Rather, the evidence shows that the alleged comments were not made in connection with any employment decision or by the named defendants; that Plaintiff did not claim discrimination based on sexual orientation, nor does his complaint fully assert a claim for such; and that not only did Sheriff White never hear any alleged comments about his sexual orientation, but Plaintiff did not file a complaint about this. (Pl.'s Dep. pp. 88-89, 201, 238-39; P. White Dep. pp. 114, 156.)

Plaintiff claims that two incidents show Defendants' discriminatory attitude toward minorities: (1) the criminal summons issued to a Hispanic man for causing an accident and (2) the complaint made by a white woman who the Plaintiff charged for minor traffic violations. (Pl.'s Brf., p. 4.) The common thread

6

between these incidents is Plaintiff's incompetence – his failure to recognize that he should charge a man who was clearly at fault in causing damage to another car (P. White 2nd Aff. ¶ 4) and his pulling over of a motorist for, as Plaintiff calls it, "lane violations" (Pl.'s Brf., p. 4). The first incident had already occurred and the second involved the plaintiff's taking the initiative to do something that he had been told not to do.

Plaintiff also fails to note that, in the first example, the victims of the driver's actions were black women. (P. White 2nd Aff. ¶ 4.) The victim of Plaintiff's excessive force, Ms. Oliver, is also a black woman. (Doc. No. 56 ¶ 1.) Sheriff White handled these incidents appropriately and even-handedly, with due concerns for the merits of each case. But, if he had not done so, then he risked the accusation that he did not take the complaints of black women seriously, or that he was tolerating a deputy sheriff who disregarded the complaints of black women or treated them unfairly. This is the irony of Plaintiff's lawsuit. He asserts, without evidence, that Sheriff White "could have exhibited internalized racial animus" when, if anything, the evidence may suggest this is true of Plaintiff, at least as to black women.

Finally, Plaintiff claims that the Sheriff "enacted a policy that treated same-gender relationships differently than heterosexual couples," but cannot cite any such policy. The only evidence is that the opposite was true. See P. White Dep. pp. 72, 114-15.

Plaintiff also claims that isolated comments about his perceived sexual orientation are evidence of discrimination, yet he never filed a complaint about this and there is no evidence that Defendants even knew his orientation. Plaintiff now claims that, because Sheriff White did not know of any openly gay deputies in his office, this proves his case. (Pl.'s Brf., p. 3.) But there is no evidence that any openly gay person ever applied to serve under Sheriff White and thus no evidence that he ever declined to hire any such person. Thus, this "evidence" is useless. Carter v. Ball, 33 F.3d 450, 456-57 (4th Cir. 1994) ("mere absence" of members of a protected class on employment rolls "does not suffice to prove a prima facie case of discrimination without a comparison to the relevant labor pool.").

E.      **Retaliation under Title VII and § 1981**

Despite Plaintiff's assertion, the Fourth Circuit has said that said that two and a half months between the notice of complaint and the adverse action "weakens significantly the inference of causation."

King v. Rumsfeld, 328 F.3d 145, 151 n. 5 (4th Cir. 2003). While a longer time frame does not automatically remove an inference, pursuant to King, the particular facts of the case impact whether causal connection is established. Despite the timing between his EEOC charge and termination, Plaintiff fails to take into consideration his use of excessive force in October 2018, actions which Defendants found warranted his termination. Defendants did not take into consideration his EEOC Charge and Plaintiff has not refuted Captain Bullock's testimony that he had no knowledge of it at the time of the investigation and recommendation. (W. Bullock Dep. pp. 102-03; W. Bullock Aff. ¶ 3.) See Walton v. N.C. Dep't of Health & Hum. Servs., 2018 WL 5839377, at *4 (E.D.N.C. Nov. 7, 2018) ("An employer . . . cannot take action based on something of which it was unaware," and a plaintiff must establish that "relevant decision makers had knowledge of the protected activity at the time of the alleged retaliation.")

### F.    Qualified Immunity

Defendants do not argue that the right to be free from discrimination is not an established right, only that a reasonable officer under similar circumstances would not have believed he was violating Plaintiff's right to be free from discrimination. Johnson v. Caudill, 475 F.3d 645, 650 (4th Cir. 2007) (question is whether under the circumstances if the decision maker acted reasonably in termination). It was not unreasonable for Sheriff White to fire an officer after an investigation concluded that the officer used excessive force and the victim complained and threatened to sue. This is especially true in light of the fact that courts have said termination for excessive force is legitimate and nondiscriminatory. (Doc. 65 at 17.)

### G.    Breach of contract

Plaintiff claims that "the undisputed evidence is that Defendants offered a two-year contract" even though this evidence is not only disputed but false. (Doc. No. 65, pp. 19-21.) However, even if the Court were to accept this misrepresentation as true, the question becomes: Did Plaintiff breach the contract by his string of bad behavior? Without the contract, which Plaintiff claims he lost, it is impossible to determine whether either party breached it.

### H.    Tortious interference with employment opportunities

8

Plaintiff's arguments on this claim are so confusing and untethered to evidence or logic that Defendants are unable to respond to it.

## I.    Tortious interference with economic advantage

Plaintiff claims that Defendants "must have and are required to" have had knowledge of his prospective employment, but offers no evidence or duty under the law for either assertion.  He claims that prospective employers "reached out to" the sheriff's office, but fails to say what the sheriff's office did in response, fails to note that none of the defendants worked there when this occurred, and ignores the fact that the employers did this at Plaintiff's request.  Plaintiff also claims that Sheriff White "knew how to destroy a deputy's career" and then cites the time when he failed to reappoint a white deputy who said he would not work for a black sheriff.  (Pl.'s Brf., p. 26.) This example actually shows that Sheriff White knew how to keep openly prejudiced people from working in his office, which undermines Plaintiff's claims. Plaintiff cites his failure to be hired by other law enforcement agencies as proof of this claim.  (Pl.'s Brf., p. 12.)  Perhaps these agencies did not want to hire someone who had been fired from four previous jobs. (Doc. No. 65, p. 9.)

## J.    Intentional and negligent infliction of emotional distress

Plaintiff has offered no evidence that he suffered emotional distress.

## K.    Defamation and libel

Again, Plaintiff offers no evidence for one of his claims.  He does not cite a single statement for his assertion that "Defendants spread mistruths about Plaintiff[.]"  (Pl.'s Brf., p. 28.)  In addition, the defamation claim as it pertains to the F-5 form fails for the additional reason that the alleged defamatory statement – that he was the subject of a substantiated investigation –  was privileged because it was made only to the North Carolina Sheriffs' Standards Division, as required by law.  See Doc. 15-2.  Such statements cannot be defamatory.  Statements made to the state in response to official inquiry cannot be defamatory because they are "made in the course of a judicial proceeding and therefore are 'absolutely privileged and will not support a civil action for defamation, even if made with malice.' "  Lewis v. Durham Wellness and Fitness Inc., 2017 WL 4124278, *5 (M.D.N.C. Sept. 15, 2017)  The F-5 form was filed

pursuant to an official, continuing duty of the sheriff, imposed by law. This is the same as responding to an official inquiry. Thus, the statement on the F-5 form could not be defamatory.

## L.     Claims Against Western Surety

Plaintiff claims that Western Surety waived any issue as to service and claims that "Defendants did not raise lack of service in its [sic] Answer." (Pl.'s Brf., p. 29.) This is false. The Second Affirmative Defense of Defendants' Answer says: "The defendants plead insufficiency of process and insufficiency of service of process and, therefore, lack of personal jurisdiction. . . ." (Doc. No. 56, p. 31.) After filing this, Western Surety did not bring a motion to dismiss. The motion (Doc. No. 58) was brought by the individual defendants and only as to certain claims, none involving the surety. The surety could not be implicated on the federal claims in the motion because the surety bond claim is a state law remedy and applies only to state-law claims. The only state-law claims to which the motion was addressed were the official-capacity claims against Peter White, Lawrence Bullock, and Weldon Bullock on duplication grounds (Doc. 58, p. 5, Argument I); the breach-of-contract claim against Lawrence Bullock and Weldon Bullock since they could not be parties to a contract as a matter of law (Doc. 58, p. 13, Argument IV); the ratification claim, which is not a tort claim (Doc. 58, p. 15, Argument V); and the punitive-damages claim (Doc. 58, p. 16, Argument VI), which is not really a claim in its own right and does not apply to the bond claim since the bond applies to common-law torts. In sum, none of these applied to the surety, so the surety did not bring the motion.

Further, Plaintiff still has not served the surety since filing the Amended Complaint on December 31, 2021. Asking the surety to accept service over three months later, after the time for serving a party has elapsed, is inexplicable. See F.R.Civ.P. 4(m) (allowing 90 days to serve defendant with summons). This is especially true when the identity of the surety is a matter of public record and so it could have been sued or served at any time. See Mellon v. Prosser, 126 N.C. App. 620, 624, 486 S.E.2d 439, 442 (1997) (Wynn, J. dissenting), rev'd, Mellon v. Prosser, 347 N.C. 568, 494 S.E.2d 763 (1998) (adopting dissent).

## CONCLUSION

For the reasons and authorities cited herein, the defendants respectfully request that their motion for summary judgment be granted.

10

Respectfully submitted, this 3rd day of May, 2021.

/s/ Christopher J. Geis
CHRISTOPHER J. GEIS, NCSB No. 25523
BRIAN F. CASTRO, NCSB No. 53412
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336) 721-3600
Email:  Chris.Geis@wbd-us.com
            Brian.Castro@wbd-us.com
*Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of North Carolina, is attorney for defendants in this matter, and is a person of such age and discretion as to be competent to serve process.

I hereby certify that on May 3, 2021, I electronically filed the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such to the following CM/ECF participant:

Sharika M. Robinson
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: 704-561-6771
Facsimile: 704-561-6773
srobinson@sharikamrobinsonlaw.com
*Attorney for Plaintiff*

/s/ Christopher J. Geis
CHRISTOPHER J. GEIS
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3543
Facsimile: (336) 721-3660
Email: Chris.Geis@wbd-us.com
*Attorney for defendants*