IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-467-BO

JUSTIN J. WHITE,                              )
                        Plaintiff,            )
                                              )
v.                                            )          O R D E R
                                              )
PETER WHITE, in his official and             )
individual capacities; LAWRENCE D.           )
BULLOCK, in his official and individual      )
capacities; WELDON WALLACE                   )
BULLOCK, in his official and individual      )
capacities, and WESTERN SURETY               )
COMPANY, a division of CNA SURETY,           )
                        Defendants.           )


This cause comes before the Court on cross-motions for summary judgment. The appropriate responses and replies have been filed, or the time for doing so has expired, and the matters are ripe for ruling. Also pending before the Court is plaintiff's motion to strike, defendants' motion for extension of time, and plaintiff's motion to seal. For the reasons that follow, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Plaintiff's motion to strike is denied, defendants' motion for extension of time is granted, and plaintiff's motion to seal is granted.

## BACKGROUND

Plaintiff instituted this action by filing a complaint in this Court on October 23, 2019. [DE 1]. On December 31, 2020, and with leave of court plaintiff filed an amended complaint. [DE 55]. The following federal claims alleged in plaintiff's amended complaint remain following the Court's order on defendants' motion to dismiss entered June 8, 2021: disparate treatment, hostile

work environment, and retaliatory discharge in violation of 42 U.S.C. §§ 1981 and 1983 as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleged against Sheriff White in his official capacity. The following state law claims remain: breach of contract against Sheriff White in his official capacity; tortious interference with employment opportunities against the individual defendants; tortious interference with prospective economic advantage against the individual defendants; intentional and negligent infliction of emotional distress against the individual defendants; wrongful discharge in violation of North Carolina's Equal Employment Practices Act against individual defendant Sheriff White; negligent retention and negligent supervision against the individual defendants, Sheriff White, and Chief Deputy Bullock; and defamation and libel against the individual defendants. *Id.*

The following facts are taken from the parties' Local Civil Rule 56.1 statements of material facts. [DE 66 & 68-3].

Plaintiff was hired as a Vance County Sheriff's Deputy in June 2017 while defendant Peter White (hereinafter "defendant White" or "Sheriff White") was sheriff. Defendant Weldon Bullock served as Captain ("Captain Bullock") and defendant Lawrence Bullock served as Chief Deputy ("Chief Deputy Bullock"). Plaintiff is black, as are defendants Sheriff White, Captain Bullock, and Chief Deputy Bullock. Plaintiff was first supervised directly by Lieutenant Durwood Campbell, who is white.

From approximately June to August 2017, plaintiff repeatedly complained about the tires on his car until he was told to take his complaint directly to Sheriff White. In October 2017, plaintiff contends that Sergeant Bobby Martin made homophobic remarks directed toward plaintiff. In November 2017, plaintiff was transferred by Lieutenant Campbell from the shift

2

supervised by Sergeant Robinson to the shift supervised by Sergeant Alexander. In December 2017, plaintiff found a unicorn hat in his mailbox and complained to Sergeant Robinson.

Plaintiff was found to have spent an excessive amount of time stopping motorists for minor traffic offenses and was counseled by Lieutenant Campbell to refrain from doing so. It had been explained to plaintiff beginning in field training that his duties did not include issuing minor traffic violation citations, and thus he was not issued a citation book, and that the focus of the Vance County Sheriff's Deputies should be on investigating crimes, responding to calls, and serving papers. Plaintiff was instructed to make traffic stops only for serious traffic violations.

Several specific incidents which occurred during plaintiff's employment are highlighted by plaintiff and defendants. The first arose out of a traffic accident which occurred in December 2017. Plaintiff did not charge an Hispanic driver at the scene for causing the fender bender. The owner of the car that was damaged complained to Sheriff White, and Sheriff White directed plaintiff to serve the Hispanic driver with a criminal summons. Plaintiff did not feel the Hispanic man committed the violations with which he was charged.

On January 26, 2018, plaintiff observed a white woman, Jamie Goss, driving over the center line and driving erratically. Plaintiff initiated a traffic stop but could not issue a citation because he did not have a citation book. Plaintiff served Ms. Goss with a criminal summons the following morning at her home. Ms. Goss complained and Lieutenant Campbell called plaintiff to reprimand him for serving a criminal summons for a traffic violation almost twenty-four hours after the stop. Plaintiff and Lieutenant Campbell argued on the telephone and later at the Sheriff's Office. On the telephone, Lieutenant Campbell told plaintiff that he would deal with his "ass" when he got to the office. While arguing at the Sheriff's Office, plaintiff told Lieutenant Campbell that his (plaintiff's) father was a large black man and only he could speak to plaintiff in that way.

3

Lieutenant Campbell filed an official written reprimand against plaintiff citing insubordination and defiance of prior instructions regarding traffic matters. Plaintiff was suspended for five days without pay.

On March 27, 2018, plaintiff initiated a traffic stop after observing a vehicle without headlights illuminated. While plaintiff was backing up his patrol vehicle he collided with another vehicle. Plaintiff reported to his supervisors that he had his blue lights running but footage from a nearby surveillance camera showed that plaintiff did not activate his blue lights until after he collided with the vehicle. Plaintiff's supervisor recommended plaintiff be suspended but he was not.

In June 2018, plaintiff received a performance evaluation from Sergeant Alexander which he challenged; after his challenge plaintiff's evaluation was raised by four points. On June 15, 2018, plaintiff delivered to Sheriff White a written internal discrimination complaint regarding both Lieutenant Campbell's behavior following the Goss traffic incident as well as other race and sex discrimination concerns. Sheriff White responded to plaintiff's complaints in writing on July 19, 2018. On August 10, 2018, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, citing discrimination on the basis of race, gender, and in retaliation for taking part in a protected activity.

On Sunday October 21, 2018, plaintiff approached Latwanya Oliver at a gas station and informed her that he had observed her speeding while driving on the roadway just prior to her stopping at the gas station. They spoke briefly and Ms. Oliver walked away. After returning to the Sheriff's Office, plaintiff discovered that Ms. Oliver had two outstanding arrest warrants for obtaining property by false pretenses. On October 22, 2018, at approximately 2:00 a.m., plaintiff went to Ms. Oliver's home to arrest her. Ms. Oliver did not answer the door and plaintiff returned

4

at approximately 8:00 p.m. that night. Ms. Oliver answered the door and plaintiff informed her that there were two warrants for her arrest, although he did not have the warrants with him. Ms. Oliver began to walk with plaintiff to his patrol vehicle, and while plaintiff was attempting to handcuff Ms. Oliver, plaintiff contends that she "went crazy" and pulled away from him. Plaintiff contends he radioed for backup and ultimately performed a take-down maneuver, after which he was able to put Ms. Oliver in handcuffs. Ms. Oliver complained to plaintiff about her arm and plaintiff radioed for EMS, who later examined Ms. Oliver and confirmed her arm was broken. Ms. Oliver was transported to the hospital for treatment. Ms. Oliver filed a written complaint with Sheriff White the following day.

Ms. Oliver's complaint was investigated by defendant Captain Bullock. After interviewing plaintiff, Ms. Oliver, and other officers, Captain Bullock concluded that plaintiff's use of force appeared contrary to the Sheriff's Office use of force policy. Captain Bullock, in concurrence with Captain Watkins, Sergeant Goolsby, and Sergeant Welborn, recommended that plaintiff's service was no longer needed. Plaintiff's employment was terminated by Sheriff White on October 24, 2018. A Report of Separation form was completed and filed, as required, with the North Carolina Sheriffs' Standards Commission. The Report of Separation form does not indicate that plaintiff was terminated due to an excessive force incident.

Plaintiff thereafter applied for other law enforcement jobs and signed a release to allow prospective employers to obtain his personnel file from Vance County. Defendants Sheriff White, Captain Bullock, and Chief Deputy Bullock state in their affidavits that they have had no contact with plaintiff's prospective employers.

5

At the outset, the Court grants defendants' motion for extension of time to file a response to plaintiff's motion for summary judgment for good cause shown and due to excusable neglect. [DE 78]. Their response to plaintiff's motion for summary judgment is deemed timely filed. Plaintiff's motion to strike the response as untimely is therefore denied. [DE 77]. The Court further grants plaintiff's motion to seal documents containing personally identifying information. [DE 82]. Plaintiff has filed redacted versions of these documents, [DE 81], and no further action is required.

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

Defendants have moved for summary judgment in their favor on all of plaintiffs' remaining claims. Plaintiff's motion states that he seeks partial summary judgment, but he has moved for summary judgment in his favor on each of his remaining claims. [DE 68-2 at 2].[1]

I. Federal employment discrimination claims.

Plaintiff has filed claims alleging employment discrimination under three statutes: Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. "The *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate [] discrimination claims under [all] three statutes." *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, if the plaintiff can establish a prima facie case of discriminatory treatment, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, the plaintiff is given the opportunity to show that the presumptively legitimate reason offered by the defendant is in fact pretext for an underlying discriminatory motive. *Id.* at 804. "Although the evidentiary burdens shift back and forth under the *McDonnell Douglas* framework," the ultimate burden of persuasion to show that the defendant intentionally discriminated remains with the plaintiff. *Love-Lane*, 355 F.3d at 786.

---

[1] Unless otherwise noted, the Court addresses first defendants' motion for summary judgment and thus construes the facts and inferences in the light most favorable to plaintiff.

7

A plaintiff attempting to prove employment discrimination may also proceed under a mixed motive framework, which requires him to show that a reasonable jury could conclude that race or sex was the motivating factor for the employment practice. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003). The plaintiff must establish through direct or circumstantial evidence that discrimination motivated the adverse employment decision by the employer. *Id.*

A. *Disparate treatment*

Although in his response to defendants' motion for summary judgment plaintiff agrees that he is not proceeding under a mixed motive framework, [DE 72 at 14]; *see Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir. 2015), he does contend he has presented direct evidence of discrimination. "Direct evidence is evidence from which no inference is required. To show race or gender discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action." *Holley v. N. Carolina Dep't of Admin., N.C.*, 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012).

As direct evidence, plaintiff cites to Sheriff White's deposition testimony relating to black and Hispanic gang activity in Vance County, a Vance County Sheriff's Office policy relating to ex parte orders when making a warrantless arrest during same-sex relationship domestic incidents, as well as plaintiff's conclusory belief that there was no other reason for plaintiff's harassment or termination other than his race and sexual orientation. These are insufficient to show direct evidence of discrimination on the part of Sheriff White. Plaintiff further cites to distasteful comments regarding his sexual orientation made to him by co-workers and the presence of a unicorn hat in his mailbox.

> It is regrettable that any distasteful comments will arise in the workplace, but that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the

8

employment decision in question, the materiality of stray or isolated remarks is substantially reduced.

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010). There is no clear nexus between any of the comments made and Sheriff White's decision to terminate plaintiff's employment in the record before the Court.

In his motion for summary judgment, plaintiff further relies on his testimony and statements that training and resources were given to white deputies which were not given to black deputies, including plaintiff. Plaintiff cites the lack of bullet proof vests and the tires on his patrol vehicle that needed replacing. In his deposition, Captain Bullock testified that the Vance County Sheriff's Office had difficulty obtaining equipment because Vance County is a poor county. [DE 67-6] W. Bullock Depo. pp. 24-25. Captain Bullock stated that once a new deputy had been sworn in he might not have gotten a shift immediately because the Sheriff's Office may not have a uniform that fit or a patrol car for him to use. *Id.* Moreover, plaintiff did in fact receive the equipment he asked for, albeit after some delay, including a bullet proof vest and new tires for his patrol car. *See* [DE 67-5 p. 99]. Viewing these facts and inferences in the light most favorable to defendants, plaintiff has not demonstrated that the lack of equipment in the Vance County Sheriff's Office is direct evidence of disparate treatment.

The Court determines that plaintiff cannot proceed on a mixed-motive theory or by direct evidence on his disparate treatment claim.

A prima facie claim of disparate treatment requires a plaintiff to show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Even assuming, without deciding, that plaintiff has forecast sufficient evidence to make a prima facie case, defendants have proffered

9

a legitimate, nondiscriminatory reason for plaintiff's termination. Specifically, defendants have proffered evidence that plaintiff was fired due to a finding that he used excessive force when effecting an arrest, as well as his prior suspension and his having provided what was determined to be a false statement after he reversed his patrol car into another vehicle. [DE 67-7] P. White Aff. ¶ 4.

Thus, the burden is on plaintiff to forecast sufficient evidence which would show that defendants' proffered reason was a pretext for discrimination. *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 721 (4th Cir. 2013). "In order to succeed at this stage, the plaintiff must 'show both that the reason advanced was a sham *and* that the true reason was an impermissible one under the law.'" *Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016) (quoting *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1235 (4th Cir.1995)).

Proof that the employer's "explanation is unworthy of credence" will indeed provide persuasive evidence "that is probative of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). However, it is not the province of this Court to decide whether an employer's decision to terminate a plaintiff's employment was "wise, fair, or even correct," so long as it was not based on plaintiff's sex or race. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quotation and citation omitted).

Plaintiff has failed to proffer sufficient evidence to create a genuine issue of material fact as to whether defendants' proffered legitimate reasons for plaintiff's termination are mere pretext. Plaintiff argues that defendants' reasons for terminating him are shaky and that they have switched their story. Contrary to plaintiff's argument however, the record reflects that plaintiff had been counseled regarding his performance, specifically in regard to minor traffic citations, that he had been suspended, that it was determined he had made a false statement about a traffic accident in

his patrol car, and that an internal investigation determined that he had used excessive force while effecting an arrest. There is no evidence that defendants' reasons for terminating plaintiff's employment have changed over time. Plaintiff has further not come forward with any evidence which would tend to show that defendants' proffered legitimate reason is unworthy of credence. *Jones v. Lowe's Companies, Inc.*, 845 F. App'x 205, 214 (4th Cir. 2021).

In addition to being a prima facie element of a disparate treatment claim, evidence that an employer treated similarly situated individuals differently may also provide evidence of pretext to rebut a proffered non-discriminatory basis for adverse action against an employee. *See Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 211 (4th Cir. 2014) (citing *Laing*, 703 F.3d at 721). Plaintiff relies on a white deputy, Hight, receiving his firearm before black deputies, including plaintiff, as well a co-worker who allegedly sexually assaulted a civilian and was demoted but not terminated as comparators.

First, as defendants point out, plaintiff's citation to Hight receiving a firearm before other deputies is unsupported by evidence in the record. In his factual recitation in opposition to defendants' motion for summary judgment, plaintiff also discusses Hight as a potential comparator, noting that Vance County Sheriff's Office canine dogs had bitten civilians but the officer, Adam Hight, had not been sanction at the same level as plaintiff. Plaintiff has not brought forward sufficient evidence, however, which would support using Hight as a comparator. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) ("Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'") (citation omitted).

Following an incident where Hight's K-9 bit a civilian in a warehouse, Hight was instructed by his supervisor, Lieutenant Campbell, not to bring the K-9 to work and to keep him home and secured in his kennel unless exercising pending further training and certification. [DE 67-6 p. 138]. Hight was a K-9 handler, while plaintiff was not. There is further no information in the record regarding the extent of the civilian's injuries. *See id.* W. Bullock Depo. p. 87. Finally, defendants contend, and plaintiff has not demonstrated otherwise, that Hight had not had any prior suspensions or disciplinary action prior to this incident.

As to plaintiff's comparison to a Sheriff's Office employee to who sexually assaulted a civilian, defendants have proffered evidence by way of Sheriff's White's second affidavit which tends to show that there was not a sexual assault, but more importantly that the employee in question, who is white, was a lieutenant not a deputy and had an unblemished record with no disciplinary problems or complaints at the time of the incident. [DE 75-1] P. White Aff. ¶ 3. The employee who plaintiff contends sexually assaulted a civilian purportedly made a comment to a woman during a traffic stop about taking off her top. This comment was reported to the Sheriff's Office by a family member of the woman. Plaintiff served at a different rank, had previously been suspended, and was determined by the Sheriff's Office to have used excessive force resulting in a broken arm. Plaintiff's proposed comparator is sufficiently dissimilar that his lesser adverse employment action cannot serve as evidence of pretext. *See Martinez v. Constellis, LLC*, No. 3:19CV720, 2020 WL 4589194, at *4 (E.D. Va. Aug. 10, 2020).

Summary judgment is therefore appropriate in defendants' favor on plaintiff's disparate treatment claim as, even when viewing the facts and inferences in the light most favorable to plaintiff, he has failed to forecast sufficient evidence which would rebut defendants' proffered legitimate reasons for his termination.

12

B. *Hostile work environment*

To prove a hostile work environment claim under either Title VII or § 1981, a plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018); *see also Irani v. Palmetto Health*, 767 F. App'x 399, 416 (4th Cir. 2019). Isolated incidents typically do not create a hostile work environment, *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015), and whether the harasser was a co-worker or a supervisor is relevant to the inquiry. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998). Whether an environment is hostile is determined by considering the totality of the circumstances from "the perspective of a reasonable person in the plaintiff's position." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

Plaintiff alleges that his work environment was made hostile due to race and sex discrimination. Plaintiff testified at his deposition regarding three deputies who had used a racial slur, n*****, each on one occasion, a sergeant who made homophobic comments to plaintiff about which he later apologized, Lieutenant Campbell's treatment of black people with less respect than white people, and a purple unicorn which was left in plaintiff's mailbox. [DE 67-3] J. White Depo. pp. 190-200; 238-39].

Plaintiff has not come forward with sufficient evidence of severe or pervasive conduct to show that he was subjected to a hostile work environment. Even taking the evidence in the light most favorable to plaintiff, and recognizing that plaintiff was subjected to some highly inappropriate and offensive comments, what the record reveals is more consistent with offhand comments and isolated incidents, which do not support a claim for a hostile work environment.

13

*See Irani*, 767 Fed. App'x at 416 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). Plaintiff testified that after one deputy, Patel, used the word n***** in greeting another deputy, Poole, plaintiff told Patel he should not be using that word; Patel told plaintiff that he had black people in his family and did not mean to disrespect plaintiff, and plaintiff took him at his word. [DE 67-3] J. White Depo. 190-93. Another deputy, Martin, used the "N word" in response to Patel after Patel used it, but apparently without saying the word. *Id.* at 193. The third deputy, Welborn, used the "N word" once while reciting lyrics to a song. *Id.* at 194. Plaintiff also testified that Sheriff White never used discriminatory language against plaintiff. *Id.* at 195. Sergeant Martin apologized to plaintiff after making a homophobic remark.

Additionally, plaintiff has not demonstrated that his co-worker's conduct is imputable to his employer. "[A]n employer may be liable for hostile work environments created by co-workers and third parties 'if it knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action reasonably calculated to end the harassment.'" *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008) (alterations omitted)). There is no evidence that Sheriff White was aware of the comments made by plaintiff's co-workers or the purple unicorn hat in plaintiff's mailbox. For example, after Sergeant Martin made homophobic comments to plaintiff, plaintiff informed Sergeant Robinson who told plaintiff he could file a complaint, but there is no record evidence reflecting that plaintiff did file a complaint. [DE 67-3] J. White Depo p. 239. Sergeant Robinson also told plaintiff that as Sergeant Martin had apologized, that may be sufficient. *Id.* Sheriff White also testified that he was not aware of comments that had been made about plaintiff or his sexual orientation. [DE 67-5] P. White Depo. pp. 156-57.

There is further no evidence that plaintiff complained when his co-workers used racial slurs. In plaintiff's internal complaint to Sheriff White on June 15, 2018, raising race discrimination concerns, plaintiff does not identify any comments made by his co-workers. [DE 72-23 pp. 5-8]. Although in his internal complaint plaintiff complains about his treatment by Lieutenant Campbell, he does not cite evidence of Lieutenant Campbell's alleged discriminatory treatment, only noting that "based on mere appearance" the Sheriff's Office had believed Lieutenant Campbell, who is white, over plaintiff who is black, and that this amounts to a civil rights violation. *Id.* p. 5. While, as plaintiff argues, "[t]here can, it is true, be 'racial' discrimination within the same race," *Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008), it bears noting that the Sheriff White, Captain Bullock, and Chief Deputy Bullock are black. Plaintiff has failed to proffer sufficient evidence to create a genuine issue of material fact as to whether the Vance County Sheriff's Office was a racially hostile workplace. *Irani*, 767 F. App'x at 417.

In his own motion for summary judgment, plaintiff relies as well on his not being given a bullet proof vest as evidence that he was subjected to a dangerous work environment. Again, plaintiff received his bullet proof vest from Captain Bullock after he requested one. Plaintiff's lack of a bullet proof vest for three weeks does not amount to conduct which is sufficiently severe or pervasive to have created an abusive work environment.

In sum, plaintiff has failed to create a genuine issue of material fact as to his hostile work environment claim, and summary judgment in favor of defendants is appropriate.

C. *Retaliatory discharge*

A claim of retaliatory discharge requires a plaintiff to show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190. Plaintiff plainly engaged in protected activity

15

when he filed his EEOC complaint on August 29, 2018, and suffered adverse employment action when he was terminated from his employment on October 24, 2018.

Plaintiff testified that in June or July of 2018 Sheriff White told plaintiff to drop his complaints or he would be "dropped," and that plaintiff believes his termination was related significantly to retaliatory conduct of Sheriff White having threatened to fire plaintiff because plaintiff would not withdraw his protected activity complaints. [DE 67-3] J. White Depo. 177-78; 181]. Internal discrimination complaints constitute protected activity. *Thompson*, 312 F.3d at 650. However, plaintiff's termination was in October 2018, some three or four months later. For temporal proximity to show that termination was caused by protected activity, the time must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Three to four months is too long, absent other evidence of causation, to establish a causal relationship between protected activity and adverse employment action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021).

Plaintiff's EEOC complaint was filed two months prior to his termination. Two months is long enough to significantly weaken the causation inference. *Id.* (citations omitted). Moreover, "actual knowledge is required to establish a Title VII retaliation claim . . .." *Id.* at 125. Plaintiff relies on Vance County's receipt of notice of plaintiff's EEOC charge on September 12, 2018, [DE 71-44], but has presented no evidence which would create a genuine issue of material fact as to whether Sheriff White knew that plaintiff had filed a charge of discrimination with the EEOC.

However, even if plaintiff could demonstrate a prima facie case of retaliation, as discussed above, plaintiff has failed to rebut defendants' proffer of legitimate, nondiscriminatory reasons for plaintiff's termination. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 253 (4th Cir.

16

2015). Accordingly, his retaliation claim fails and defendants are entitled to summary judgment in their favor.

D. *Qualified immunity*

Defendants argue that they are alternatively entitled to qualified immunity on plaintiff's § 1981 discrimination claims. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). A court may exercise its discretion to decide which step of the analysis to decide first based on the circumstances presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As the Court has determined that defendants are entitled to summary judgment on plaintiff's § 1981 employment discrimination claims, the Court has thus determined that no constitutional violation has occurred and defendants are alternatively entitled to qualified immunity on plaintiff's § 1981 claims.

II. State law claims.

A. *Breach of contract*

Plaintiff has alleged a claim for breach of contract against Sheriff White in his official capacity. Plaintiff testified at his deposition that Captain Bullock offered plaintiff a two-year opportunity to work in the Sheriff's Office. Plaintiff testified that after he started his employment the contract was presented to him in writing and he signed it. Plaintiff does not recall the specific

17

terms but states that it was a two-year employment contract. Plaintiff testified that he no longer has a copy of the alleged employment contract. [DE 67-2] J. White Depo. 27-31.

North Carolina has long recognized the doctrine of employment at will, where either party can terminate the employment relationship at any time. *Edwards v. Seaboard & R.R. Co*., 28 S.E. 137 (N.C. 1897). The North Carolina General Assembly has also "made [Sheriff's] deputies at-will employees, who 'shall serve at the pleasure of the appointing officer.'" *Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir. 1997) (quoting N.C. Gen. Stat. 153A-103).

While parties can opt to remove the at-will presumption by contracting for different terms, plaintiff has failed to produce a contract demonstrating that any other contractual relationship was agreed to. *See also Houpe v. City of Statesville*, 128 N.C. App. 334, 344 (1998) ("A viable claim for breach of an employment contract must allege the existence of contractual terms regarding the duration or means of terminating employment."). Moreover, in order to be enforceable, any agreement to a definite term of employment that would overcome North Carolina's strong presumption of at-will employment "must be supported by consideration." *Franco v. Liposcience, Inc.*, 197 N.C. App. 59, 63 (2009).

In opposition to summary judgment, and in support of his own motion, plaintiff relies on his application for employment with the Vance County Sheriff's Office which asks whether the applicant would be "willing to sign a two-year contract for employment". [DE 67-6 p. 38]. Answering this question "yes" does not create an employment contract. Plaintiff did sign a tuition reimbursement agreement on June 5, 2017, [DE 67-4 pp. 229-230], in which the Vance County Sheriff's Office agrees to provide tuition to trainees for basic law enforcement training on the trainee's agreement to not seek employment from or work for any other law enforcement employer while still employed by the Vance County Sheriff's Office for a period of two years after becoming

a sworn officer. The trainee further agrees to work for the Vance County Sheriff's Office for two consecutive years after becoming a sworn officer. That document further expressly provides that the trainee recognizes that employment with the Vance County Sheriff's Office is at will and no guarantee of employment or contract for employment is created by the tuition reimbursement agreement. *Id.* Plaintiff agrees that the tuition reimbursement agreement was not an employment contract. [DE 67-3] J. White Depo. p. 232.

In the absence of any evidence of an employment contract the terms of which this Court could apply, defendants are entitled to summary judgment on plaintiff's breach of contract claim.

B. *Tortious interference*

Plaintiff has alleged a claim for tortious interference with employment opportunities and tortious interference with prospective economic advantage against the individual defendants.

To succeed on a claim for tortious interference with contract, a plaintiff must demonstrate:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Beck v. City of Durham*, 154 N.C. App. 221, 232 (2002). To succeed on a claim for tortious interference with prospective economic advantage, a plaintiff must show that

a party interferes with a business relationship by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, ... if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.

*Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701

(2016) (quotation and citation omitted).

In support of his tortious interference with employment and related opportunities claim, which the Court construes as a claim for tortious interference with contract, plaintiff alleges that

19

defendants Chief Deputy Bullock and Captain Bullock interfered with plaintiff's employment and related opportunities by discriminating against him, creating a hostile work environment, retaliating against him, and spreading lies about plaintiff's performance. [DE 55 ¶ 228]. There is no evidence Chief Deputy Bullock or Captain Bullock induced Sheriff White not to perform his contract with plaintiff, which appears to be plaintiff's theory on this claim. Summary judgment in favor of defendants is appropriate.

Summary judgment in favor of defendants is also appropriate as to plaintiff's claim for tortious interference with prospective economic advantage. At bottom, plaintiff's allegations concern his inability to be hired at other law enforcement agencies after he was terminated from the Vance County Sheriff's Office. Plaintiff alleges that defendants knew of plaintiff's attempts to secure new employment and knew that his prospective employers would examine his Vance County Sheriff's Office record. Plaintiff further alleges that defendants' interference was unjustified and amounted to harassment. [DE 55 ¶¶ 235-237].

The record does not reveal any evidence which would tend to show that defendants maliciously induced any prospective employer of plaintiff not to hire him. The only record evidence would show that defendants had no conversations with any prospective employer of plaintiff. *See, e.g.,* [DE 67-7] P. White Aff. ¶ 7. Although plaintiff testified that one prospective employer cited both his lawsuit against the Vance County Sheriff's Office and Captain Bullock's written report regarding plaintiff's use of force as grounds for not hiring plaintiff, that is plainly insufficient to create a genuine issue of material fact as to malice. Summary judgment in defendants' favor is appropriate on this claim.

### C. *Emotional distress*

To prevail on a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct; (2) which is intended to cause and does cause (3) severe emotional distress to another." *May v. City of Durham*, 525 S.E.2d 223, 230 (N.C. 2000). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 782 (N.C. App. 2004). Negligent infliction of emotional distress requires a showing that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause plaintiff severe emotional distress . . . and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Acosta v. Byrum*, 638 S.E.2d 246, 250 (N.C. App. 2006). Severe emotional distress is "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990).

Plaintiff has proffered no evidence that he suffered severe emotional distress. Plaintiff has not been diagnosed with a condition nor does he receive any treatment. *See also* [DE 67-3] J. White Depo. p. 204. Summary judgment in defendants' favor on these claims is appropriate as well.

### D. *Wrongful discharge*

Plaintiff has alleged a claim for wrongful discharge in violation of North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. 143-422.2. As plaintiff contends, this claim rises or falls with his Title VII claims. *See Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995) (North Carolina applies Title VII framework to wrongful discharge claims). As the Court has found

defendants are entitled to summary judgment on plaintiff's Title VII claims, so too does it find as to plaintiff's wrongful discharge claim.

E. *Negligent retention and negligent supervision*

Plaintiff has alleged a claim for negligent retention and negligent supervision against Sheriff White and Chief Deputy Bullock. Plaintiff alleges that Sheriff White and Chief Deputy Bullock knew or should have known of Lieutenant Campbell's discriminatory conduct toward plaintiff, and that despite having knowledge of such Sheriff White and Chief Deputy Bullock retained Campbell's employment and failed to properly supervise him, enabling a racially charged hostile work environment. [DE 55 ¶¶ 272-75].

Under North Carolina law, in order to establish a claim for negligent retention or supervision, a plaintiff must show: (1) a specific tortious act by the employee, (2) incompetency of an employee by inherent unfitness or previous specific acts of negligence from which incompetency may be inferred, (3) the employer's actual or constructive notice of the employee's incompetency or unfitness, and (4) injury resulting from the employee's incompetency or unfitness. *Medlin v. Bass*, 327 N.C. 587, 591 (1990); *see also Painter v. City of Mt. Holly*, 264 N.C. App. 249 (2019) (unpublished table decision).

Sheriff White was plaintiff's employer and is the proper defendant as to this claim. First, "North Carolina law requires a common-law tort to underly a negligent retention and supervision claim." *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009) (citing *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003)). Most courts to have considered this issue have held that Title VII violations, including harassment and retaliation, cannot support a negligent retention or supervision claim. *Bockman v. T & B Concepts of Carrboro, LLC*, No. 1:19CV622, 2020 WL 5821169, at *25 (M.D.N.C. Sept. 30, 2020). "[A]bsent a clear indication

22

from the North Carolina courts or legislature," *id.* at *26, and in light of Fourth Circuit precedent, the Court holds that Lieutenant Campbell's allegedly discriminatory conduct is not a tort for purposes of plaintiff's negligent retention and supervision claim.

In plaintiff's motion for summary judgment, he argues that he has alleged numerous torts against defendants and that he was injured by these actions. He relies specifically on being subject to homophobic insults and being treated disrespectfully by Lieutenant Campbell, who was demoted but not fired after he asked a woman during a traffic stop to expose her breasts. Plaintiff also contends that defendants should have known that Deputy Alexander, who had allegedly violated Vance County Sheriff's Office policy when members of the Sheriff's Office were called to his home following a domestic dispute, was unfit to give plaintiff a performance evaluation which plaintiff contends unfairly maligned him. At bottom, what plaintiff contends are torts which support his negligent supervision and retention claim are disparate treatment and harassment. These cannot support a claim for negligent retention and supervision. Even if Title VII violations could form the basis of a negligent retention and supervision claim, *see Efird v. Riley*, 342 F. Supp. 2d 413, 430 (M.D.N.C. 2004), the Court has determined that defendants are entitled to summary judgment on plaintiff's Title VII and § 1981 discrimination claims, and thus they cannot serve as the tortious acts required for plaintiff's negligent retention and supervision claim. *Id.*[2]

Plaintiff cannot maintain a claim for negligent retention or supervision, and summary judgment in defendants' favor is appropriate.

---

[2] The same is true for plaintiff's wrongful discharge, infliction of emotional distress, and defamation claims.

Case 5:19-cv-00467-BO   Document 85   Filed 12/07/21   Page 23 of 26

F. *Defamation*

Plaintiff alleges a claim for defamation/libel against the individual defendants. Plaintiff alleges that defendants defamed plaintiff in the report reflecting his termination and in the publication of his F-5 form. Plaintiff alleges that defendant's actions created the false impression that he is violent and untrustworthy and further that plaintiff, in fact, did not use excessive force. [DE 55] ¶¶ 282-284.

"In order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 29 (2002).

The F-5 form plaintiff relies upon does not reflect any statement that plaintiff is violent or untrustworthy. The F-5 form, or Report of Separation form, reflects only that the Sheriff was "aware of any on-going or substantiated internal investigation regarding this officer within the last 18 months". [DE 67-4 p. 228]. This form is required to be filed by the Sheriff with the North Carolina Sheriff's Standards Commission.

As there had been a substantiated internal investigation of plaintiff within the eighteen months prior to his termination, the statement is true, not false. Plaintiff has not come forward with any evidence which would show that the information contained in the Report of Separation form was false, his defamation claim fails. Moreover, this statement is also vague, as it does not allege the existence of any actual or specific misconduct, and is therefore not actionable. *Taube v. Hooper*, 270 N.C. App. 604, 612 (2020).

G. *Immunity defenses*

Defendants are further entitled to their state law immunity defenses. First, public officer immunity shields public officers from liability for individual capacity claims unless their actions

are "corrupt, malicious, or outside the scope of his official duties." *Estate of Burgess ex. rel. Burgess v. Hamrick*, 206 N.C. App. 268, 276 (2010). Sheriffs and their deputies are public officers. *Summey v. Barker*, 142 N.C. App. 688, 691 (2001). This record does not support a finding that defendants were malicious, corrupt, or acting outside the scope of their duties. Additionally, "[a]s a public official, if sued in his or her official capacity, a sheriff is protected against tort actions by governmental immunity unless the sheriff purchases a bond pursuant to G.S. § 58–76–5, and then, can only be liable on tort claims to the extent of the amount of that bond." *Hill v. Medford*, 158 N.C. App. 618, 623, (Martin, J., dissenting) *revd,* 357 N.C. 650 (2003) (adopting dissent).

It appears undisputed that at the time of plaintiff's termination there was only one insurance policy in place, and the terms of that policy expressly preserve governmental immunity. [DE 67-12]. Governmental immunity bars plaintiff's tort claims against defendants in their official capacities except up to the amount of the Western Surety bond, $10,000.00.

H. *Summary*

At bottom, the evidence in this case does not present a sufficient disagreement to require submission to a jury and defendants have demonstrated they are entitled to summary judgment in their favor. Defendants have offered admissible evidence sufficient to permit a jury to conclude that plaintiff's employment was terminated due to what defendants determined to be his use of excessive force when effecting an arrest, in addition to his prior suspension and his having provided a false statement to his supervisors about an accident plaintiff was in while using his patrol car.

Although plaintiff heavily disputes that his use of force was excessive, that is not the focus of this employment discrimination action. As noted above, it is not for the Court to pass judgment on whether the decision to terminate plaintiff's employment was correct, so long as it was not

made for discriminatory reasons. Plaintiff has ultimately failed to create a genuine issue of material fact as to whether defendant's proffered grounds for his termination are mere pretext or demonstrate that he is entitled to summary judgment on his discrimination claims. Defendants are also entitled to summary judgment in their favor on plaintiff's state law claims for the reasons discussed above.

CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motion to strike [DE 77] is DENIED, defendants' motion for extension of time [DE 78] is GRANTED, and plaintiff's motion to seal [DE 82] is GRANTED. Defendants' motion for summary judgment [DE 64] is GRANTED and plaintiff's motion for summary judgment [DE 68] is DENIED. The clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this ___ day of December, 2021.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE